## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THOMAS H. BATES,

        Plaintiff,

v.

STATE FARM FIRE AND CASUALTY
COMPANY,

        Defendant.

Case No. CIV-21-00705-JD

## PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT DEREK VANDORN WITH BRIEF IN SUPPORT

Pursuant to Fed. R. Evid. 402, 403, and 702, and the standards set forth by the United States Supreme Court in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and its progeny, Plaintiff, Thomas H. Bates ("Bates"), respectfully moves this Court to exclude the testimony of Defendant's retained "expert" witness, Derek VanDorn ("VanDorn"). VanDorn's opinions are not based on reliable principles, ignore material facts, and would not be helpful to the jury. The Court should therefore exclude VanDorn's testimony.

## STATEMENT OF THE CASE

Thomas H. Bates, after learning that his rental home sustained a hail loss damaging his roof, submitted a claim to State Farm. State Farm sent an inexperienced claims representative to inspect the property, who found and thereafter agreed to pay for the hail damage to the home's less costly appurtenances – the window screens, vent cover, pipe jacks, and garage door. Curiously, however, with regard to the shingles, the adjuster was required to submit photographs of the roof to her supervisor. Within a few short minutes,

her supervisor concluded that the damage was as a result of wear, leading to the denial of damages to the more expensive portion of the roof-- the shingles.

State Farm Fire and Casualty Company has identified Derek VanDorn as an expert witness. VanDorn has provided a report that lacks reliable methodology, fails to address the issues in this case, ignores key facts, and ultimately will not assist the trier of fact. Accordingly, Plaintiff moves the Court for the exclusion of his testimony.

## ARGUMENT AND AUTHORITIES

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony; it provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see also McCoy v. Whirlpool Corp., 287 F. App'x 669, 671 (10th Cir. 2008) ("Expert testimony must be both relevant and reliable to be admissible."). This Court, as a gatekeeper, determines whether the proffered expert testimony is relevant and reliable. *Id.* "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." Hollander v.

Sandoz Pharm. Corp, 289 F.3d 1193, 1204 (10th Cir. 2002) (internal citations omitted). The objective of the gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). When weighing admissibility under Daubert, the burden of proof lies with the party offering the witness. Daubert, 509 U.S. 579, 593, fn. 10 (1993). The party offering the witness "must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." Dodge, 328 F.3d at 1222.

## I.      VanDorn's Opinions are Unreliable.

In order to admit VanDorn's testimony, the Court must be assured that VanDorn's testimony is both relevant and reliable, meaning it "both rests on a reliable foundation and is relevant to the task at hand." Kumho Tire, 526 U.S. at 141 (citing Daubert, 509 U.S. at 597). Furthermore, "[p]roposed testimony must be supported by appropriate validation — i.e., 'good grounds' based on what is known." Daubert at 590. An expert's opinions must be based on the "methods and procedures of science," not on simply "subjective belief or unsupported speculation." Id. at 592-93.

Federal Rule of Evidence 702(c) explicitly dictates an expert's opinions must be "the product of reliable principles and methods." Further, "[i]n conducting its Daubert review of the reliability of expert opinions, the court must focus on principles and methodology, not on the conclusions that they generate." Lippe v. Howard, 287 F. Supp. 3d 1271 (W.D.

Okla. 2018). The Tenth Circuit has cited four factors district courts should apply when determining whether the methodology used by a proposed expert is reliable, namely:

> (1)   Whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (*quoting Daubert*, 509 U.S. at 593-94)). Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (*quoting* In re Paoli, 35 F.3d 717, 745 (3d Cir. 1994)).

For his opinions to be reliable, VanDorn should have demonstrated his use of a generally accepted, well-tested methodology or principle to reach his opinion. As his report and deposition testimony reflect, however, this is far from the case. VanDorn has ignored facts, leading to unreliable conclusions. "Many cases decided under Daubert have excluded opinion testimony from experts who ignored facts or considerations that must be considered under methods based on reliable principles." Ramsey v. Consol. Rail Corp., 111 F. Supp. 2d 1030, 1037 (N.D. Ind. 2000). This is one such case.

1.  VanDorn's opinions regarding sheathing are unreliable.

In Opinion #1 of his report, VanDorn applies incorrect facts and methodology to conclude that a new layer of roof sheet decking need not be applied over the Bates's existing nominal 1" (1-by) board (lumber) decking. *See* Exhibit 1, Supplemental Report of VanDorn, p. 13, ¶1. VanDorn acknowledges that sheathing (aka decking) needs to be

"solidly sheathed" in order to be code-compliant. *See* Exhibit 1, p. 14, ¶5. ("Asphalt shingles shall be fastened to solidly sheathed decks"). In order to be solidly sheathed, there would need to be "minimal spaces between the boards" which he expects to be in the range of an eighth to a quarter inch. *See* Exhibit 2, Deposition of VanDorn, 171:13-22. If the space between boards is too wide, it is no longer "solidly sheathed" and therefore not code-compliant. Exhibit 2, 173:18 – 24. With manufacturers that limit spacing with regard to one-by decking, VanDorn admits that the industry standard for manufacturers is that the spacing be no greater than one quarter of an inch. Exhibit 2, 175:4-12.

VanDorn, however, opines that Malarkey, the manufacturer of the shingles on the Bates roof, does not address how large or small the spacing between boards can be in order to be considered solidly sheathed. Exhibit 2, 174:18 – 25, 175:1 – 3. This is incorrect. VanDorn failed to consider Malarkey's Technical Bulletin which states as follows:

> Malarkey has experience with shingle roofing systems installed directly over older wood board decks and given issues associated with them (cracks, warping, possible deck movement), *strongly recommends they be overlaid with code-compliant sheathing* (⅜"[10 mm] thick, exterior grade plywood or 7/16" [11 mm] thick oriented strand board) *or removed entirely for best performance and appearance*. It is critical the substrate be solidly sheathed, even, smooth, and capable of providing solid holding power for fasteners.
>
> Wood board decks are an acceptable substrate under Malarkey shingles, but failure to correct deficit conditions (gaps ¼" and greater, warped, split, cracked, deteriorated, or rotted boards) can result in damage to the roof covering and may void your warranty should a claim be filed.

*See* Exhibit 3, Malarkey Technical Bulletin (emphasis in original). It is undisputed that the Bates roof does not have what Malarkey calls in its first paragraph "*code-compliant sheathing* (⅜"[10 mm] thick, exterior grade plywood or 7/16" [11 mm] thick oriented

strand board." VanDorn has identified the Bates roof sheathing as 1-by board lumber decking. Exhibit 1, p. 13, ¶1. Though Malarkey further notes that wood board decks (such as 1-by decking) are acceptable substrates, Malarkey specifically instructs that gaps ¼" inch and greater are deficit conditions. Thus, though VanDorn admits industry standard is that gaps be no greater than ¼" inch, he failed to consider the Malarkey Technical Bulletin which confirms this standard. VanDorn has ignored pertinent materials demonstrating that gaps of greater than ¼" inch under Malarkey shingles render the decking non-code compliant because it is not solidly sheathed.

Furthermore, VanDorn does not even know the spacing between boards on the Bates roof. Exhibit 2, 171:8-12. VanDorn did not get up in the attic to look at the underside of the decking. Exhibit 2, 181:21 – 24. He did not even ask to go into the attic to look at the decking, which would have allowed him to determine the size of the wood decking and determine spacing. Exhibit 2, 181:25 – 182:1; 183:9-21. VanDorn admits that if spacing is greater than ¼" inch, this would warrant consideration for replacement. Exhibit 2, 172:8 – 17. Despite this, VanDorn did not undertake to go into the attic to measure the gaps to determine whether they are greater than ¼" inch.

It is a fundamental prerequisite that, for an expert opinion to be admissible, it must have an adequate foundation in fact. A lack of reliable facts itself renders an expert opinion inadmissible. Mitchell v. Gencorp., 165 F.3d 778, 781 (10th Cir. 1999). VanDorn has both assumed inaccurate facts and ignored other facts material to the case that should have been considered in order to render reliable opinions regarding sheathing. VanDorn's failure to consider the Malarkey Technical Bulletin and to measure the gaps in the decking confirm

6

that VanDorn cannot render a reliable opinion regarding the sheathing on the Bates roof. Accordingly, his testimony should be excluded.

2.   VanDorn's opinions regarding the damage to the Bates roof are unreliable.

VanDorn expresses certain opinions in his report regarding the damage to the edges of shingles on the Bates roof. Specifically, he notes in his report, based on photographs taken by others, that of the 62 blemishes pictured, 46 are at the edges. Exhibit 1, p. 18, ¶8. In defining the area that constitutes an edge, he considered only ½" inch from the tab's edge. Exhibit 1, p. 17. VanDorn admits, however, that there is no industry standard that identifies the face of the shingle to be everything apart from inside the ½" inch perimeter from the tab. There are no industry studies, journal articles or any sort of scientific study that would identify the measurement of the edge of a shingle. Exhibit 2, 129:5 - 12; 131:2-7. According to VanDorn, these parameters were set because "they were unique to this case." Id. at 129:11-12. When asked if he has seen anyone in all his experience, whether in training or HAAG material, in litigation or otherwise, where somewhere has attempted to conclude that something is or is not hail based on where the damage lays relative to the edge of a shingle, VanDorn again expressed that "this is all unique to this case." Exhibit 2, 131:8-19. In other words, VanDorn has expressed opinions following no principles or methodology, nor application of any theory or technique that has been peer-reviewed. He could not offer one piece of documentation to support his conclusions. Any step in the analytical chain of an expert's reasoning that is not reliable renders the entire analysis unreliable, and hence, inadmissible. Goebel v. Denver & Rio Grande Western R. Co., 346

F.3d 987, 992 (10th Cir. 2003). VanDorn's opinions are his subjective belief and are unsupported conjecture which should be excluded.

### II.    VanDorn is Unqualified to Render Claims Opinions and his Opinions are Not Helpful to the Trier of Fact.

For an expert's testimony to be admissible, it must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Helpfulness is the "essential condition of admissibility." Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 648 (10th Cir. 1991); Specht v. Jensen, 853 F.2d 805, 807 (10th Cir. 1988). "Whether testimony will be helpful is a question of common sense—i.e., is an average juror qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Morris v. Goodyear Tire & Rubber Co., CIV-03-655-C, 2004 WL 5522851, at *2 (W.D. Okla. Dec. 17, 2004) (internal citations omitted).

A Court must act as gatekeeper and exclude expert opinion testimony where it is not demonstrated that the conclusions offered are applicable to a particular set of facts. Goebel, 346 F.3d 987, 991 (10th Cir. 2003).

VanDorn is a construction consultant. *See* Exhibit 1, p. 20. He is not a licensed insurance adjuster. Exhibit 2, 176:23 – 25. Despite formerly being an adjuster for State Farm from 1998-2007, he acknowledges that he is not sure if insurance companies owe any additional duties to an insured as compared to any duties owed by a contractor to a customer. Exhibit 2, 31:5-12. He has never offered claim handling opinions. Exhibit 2, 22:9-13. He is not intending to provide opinions on good faith or bad faith claims handling.

Exhibit 2, 33:14-20. VanDorn acknowledges that going into the inspection of the Bates roof, he was aware there was "some sort of debate of whether there was hail damage or wear and tear." Exhibit 2, 135:8 – 13. Surprisingly, despite VanDorn being a construction consultant and having received training on hail recognition, he is not providing any opinion in this case as to whether the damage on the Bates roof is hail or wear and tear. VanDorn testified that he "did not attribute the blemishes to a specific cause." Exhibit 2, 149:9 – 13. VanDorn states that any cause, including that the damage is hail damage, remains a possibility. Exhibit 2, 149:16 – 150:14.

Despite his lack of any opinion as to what the damage to the Bates roof is, VanDorn summarily concludes in his report that "State Farm understandably concluded the granular loss was not related to hail impacts." Exhibit 1, p.19, ¶12. In an apparent contradiction, VanDorn expects to offer the opinion that though he could not identify the cause of the damage, State Farm's inspection was reasonable, State Farm's conclusions were understandable, and ultimately "the estimate reasonably represents the cost to repair the noted damages." Exhibit 1, pp. 15 and 19. VanDorn's opinion is not only wholly unsupported but is not helpful to the jury.

First, VanDorn is not a licensed adjuster and cannot even comment on the additional duties owed by an insurance company, such as the duty of good faith and fair dealing. By calling State Farm's actions reasonable and understandable, VanDorn is attempting to give an ultimate opinion that State Farm's conduct was not bad faith, all the while avoiding the words good faith and bad faith. VanDorn is simply unqualified to render an opinion

regarding "reasonableness" of conduct, when he does not even know or understand what duties or standard is owed by an insurance company to an insured.

Second, VanDorn's opinion that the State Farm estimate is reasonable when he can't even identify the damage is nonsensical. The amount of the estimate, and accordingly whether the estimate reasonably represents the cost to repair the damages to the Bates roof, clearly depends on a determination of whether the damage is hail. Since VanDorn cannot or will not offer an opinion on the cause of the damage, this infers that he cannot opine on whether the estimate is reasonable and whether it represents the cost to repair the damages.

Whether the damage to the roof is hail or wear and tear was clearly a cornerstone of VanDorn's understanding of the dispute because he knew before his inspection that there was "some sort of debate" over the nature of the damage. VanDorn's opinions do nothing to assist the fact-finder in this dispute. VanDorn's conclusion that the estimate is reasonable and State Farm's conduct understandable would not assist the fact-finder in understanding the evidence or determining any fact in issue. Where facts are before a jury that allows laypersons to form a conclusion, expert testimony is unnecessary. Sims v. Great American Life Ins. Co., 469 F.3d 870, 890 (10th Cir. 2006). Here, the jury, equipped with appropriate instructions, will be perfectly capable of assessing the reasonableness of State Farm's conduct.

## **CONCLUSION**

For all of the above reasons, Thomas H. Bates respectfully requests that his Motion to Exclude be granted in its entirety, such that State Farm is precluded from introducing any testimony and/or evidence from Derek VanDorn at trial.

10

MILLER JOHNSON JONES
ANTONISSE & WHITE, PLLC

By:   *s/Shawna L. Landeros*
        Brad Miller, OBA #11437
        J. Logan Johnson, OBA #12722
        Shawna L. Landeros, OBA #31637
        500 NW 6th Street, Suite 300
        Oklahoma City, OK 73102-1219
        Telephone: (405) 896-4388
        Fax: (405) 609-2995
        bmiller@mjjaw.com
        ljohnson@mjjaw.com
        slanderos@mjjaw.com
        ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

☑ I hereby certify that on July 8, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Lance E. Leffel, OBA #19511
Paula M. Williams, OBA #30772
GableGotwals
BOK Park Plaza
499 West Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Telephone: (405) 235-5500
Fax: (405) 235-2875
***Attorneys for Defendant***

        *s/Shawna L. Landeros*
        Brad Miller

11