

# Berryman

426 N.W. 5TH
Oklahoma City, OK  73102
Off: (405) 235-4646
Fax: (405) 235-3311

June 26, 2022

Paula Williams
Gable Gotwals
BOK Park Plaza
499 West Sheridan Avenue, Suite 2200
Oklahoma City, Oklahoma 73102

**Re:    Thomas H. Bates,**
**Plaintiff,**

**v.**

**State Farm Fire and**
**Casualty Company,**
**Defendant.**
**In the United States District Court**
**For The Western District Of Oklahoma**
**Case No.: CIV-21-705-JD**

Dear Ms. Williams:

The following revised report details to date my pertinent opinions. The revisions have been prompted by additional productions which have been made subsequent to the submission of my initial report. My opinions are based upon my review of the documentation provided to me and the observations made during my inspection of the subject property conducted on March 10, 2022.  In forming my opinions, I utilized my twenty-four (24) years of experience as an evaluator and estimator of property damage as well as my formal education, training, and knowledge previously acquired including but not limited to: building codes, governmental regulations, and construction standards.  I reserve the right to supplement this report to address additional information made available to me.

**EXHIBIT**

**1**

Case 5:21-cv-00705-JD    Document 44-1    Filed 07/08/22    Page 2 of 21

## <u>DOCUMENTS REVIEWED</u>

- Petition
- SF.BATES_000001-000367
- Bates 0001 – 0209
- Aegis 000001 – 000138
- Oklahoma County Assessor page for 2605 Elwood Dr in Edmond
- Malarkey 3-Tab Shingle Installation Instructions
- 2015 International Residential Code
- Oklahoma Uniform Building Code Commission – IRC Adoption Amendments Effective Date September 14, 2021
- Site inspection photographs taken March 10, 2022
- SF.BATES_000369-000487
- Swain 0001-0054

## QUALIFICATIONS

As a general contractor, I have performed numerous restoration projects for owners whose properties have sustained damages caused by storm activity including those which involved hail damage.  I have routinely examined structures for the extent and cause of damages and submitted construction proposals to the public for property restoration.  In the regular course of business, I have estimated the construction costs and outlined the scope of work that has been an integral part of the firm's offers to contract for needed property restoration. For the last twenty-four (24) years, I have utilized Xactimate, a computerized estimating program, to determine the estimated cost of property damage restoration.[1]

I have interfaced with insurance professionals in the course of business and have developed a keen understanding of the customary means, methods and pricing for the repair of damaged real property.  I regularly interact with engineers, architects, and building code officials when determining the extent of damages and developing the proper scope of repairs.

---

[1] Xactimate is considered to be an industry standard and is utilized by most restoration contractors and the majority of insurance carriers in the United States and Canada to estimate the anticipated cost to restore property damages, including those repairs needed to correct damages caused by storm activity.

## PROPERTY DESCRIPTION

The subject property is located at 2605 Elwood Drive in Edmond, Oklahoma. According to the Oklahoma County Assessor[2], the property was purchased by Gary W. and Marian K. Bates in October of 1977. The property deed was amended to remove Marian K. Bates and to add Thomas H. Bates and Thomas E. Bates in 2002. The residence was constructed in 1972 and contains 1,405 square feet (SF) of living space with an additional 500 SF within the two-car garage. The roof is framed into a gable style and is covered with 3-tab, composition shingles. The current shingles were reportedly installed in 2013. The exterior is mostly clad with brick veneer. The gable ends are covered with wood siding. The subject residence faces mostly the east.



---

[2] Oklahoma County Assessor Account #:R182811150

## BACKGROUND

Thomas Bates (T. Bates) obtained a Rental Dwelling insurance policy from State Farm Fire & Casualty (State Farm). The policy was given the policy #96-BJ-Q252-5. On or about February 4, 2021, a claim was submitted by Bates with a reported date of loss of July 3, 2020.  The claim was assigned #36-16D0-21W and to Claim Representative Tresa Dunnican-Jacome (Dunnican-Jacome) to inspect and prepare an estimate.  Other information pertinent to this matter includes:

1. T. Bates submitted a previous claim for hail damage on or about June 8, 2012. The claim was assigned claim #36-08H4-289. State Farm inspected the property on June 19, 2012 and found hail damage to all slopes of the roof, as well as to some exterior components. An estimate was prepared to replace all slopes of the roof including tear-off of the two existing layers of shingles.

2. Aegis Roofing (Aegis) replaced the roof of the subject property in early 2013. Aegis reportedly tore-off the two layers of existing shingles and installed a Malarkey Duraseal 3-tab shingle over the existing board decking. Aegis also added two large attic vents which did not previously exist. The total cost of the roof replacement was $6,300.00.[3]

3. In May of 2019, Gary Bates (Bates), Thomas H. Bate's son, contacted Jonathan Marks (Marks) of Aegis requesting a roof inspection. At the time, Marks reportedly believed some hail damage existed but was not certain enough damage existed. A claim for storm damage was not submitted at that time. However, Marks did recommend that Bates add coverage to the policy which would cover upgrades required by the building code.

4. Marks initiated contact with Bates to inquire about inspecting the roof again in January of 2021. Marks inspected on or about January 29, 2021 and made a determination that the roof did have hail damage. Bates subsequently submitted a claim.

5. Dunnican-Jacome inspected the subject property on February 23, 2021. Reported damage included the overhead door, three (3) window screens, window beadings, roof pipe jack flashings, vent caps, and attic vents. Dunnican-Jacome noted "areas of extensive granule loss and wear" at the shingles edges. It was determined this was not indicative of hail damage.

---

[3] Bates 0159

2605 Elwood Drive
Edmond, Oklahoma

6. State Farm prepared an estimate dated February 23, 2021 which included the above-mentioned damage. The estimate totaled $2,020.18.

7. Aegis prepared an estimate with a print date of March 10, 2021. The estimate includes to replace the roof's shingles, as well as, repair/replace the items previously included in the State Farm estimate. The estimate also includes the cost to overlay ½" Oriented Strand Board (OSB) sheets over the existing board decking.

8. On March 29, 2021, Aegis noted that a signed contract had been entered into with Bates. As of the date of this report, the signed contract has not been produced by either Bates or Aegis.

9. On April 12, 2021, Corbin Swain, P.E. (Swain) briefly inspected the subject property.[4]  Swain has not provided a report in this matter.

10. By April 23, 2021, Bates was reportedly consulting with legal representation.[5] A petition was filed on June 18, 2021.


## DISCUSSION

Roofing materials, exposed to the weather elements as they perform their intended purpose(s), suffer cumulative wear and tear as they age.  Even in the absence of hail and wind, it is understood that roof materials naturally wear out over time and must be eventually repaired and/or replaced.  Over the duration of a roof's life span, some maintenance is expected. Other background considerations include:

## Hail

- Hail fall is almost always directional.  Hail of sufficient size, shape and density, etc. will tend to damage the roof coverings on those slopes which are facing the advancing hail and often not damage those roof coverings on the opposite slopes.  Since it is directional, it rarely impacts, or causes damage to the four elevations of a structure during the same hail event.

- All hail does not cause damage to residential asphalt composition roofs. Among other variables, the hail's size, direction, density, shape, angle of impact, and velocity play a role in the hail's propensity to cause damage. Simulating hail, ice ball impact testing research has shown that in order to damage a 25-year 3-tab, asphalt composition shingle the hail must be at

---

[4] Bates 0116
[5] Bates 0116

least 1.25" diameter and impact the roof surface at a 90-degree angle.[6] Damage to asphalt composition shingles often manifests itself as a puncture or damage to the shingle's fiberglass reinforcement mat.

- It is expected hail will damage the roof's shingles indiscriminately across the entire surface of the shingles. The observance of blemishes almost exclusively within the face of the shingles or only at the edges of the shingles would be unexpected. When either of the situations occur, the storm damage evaluator must question other causes, e.g., manufacturer defect, mechanical damage, patterns of wear and tear.

- It is common when evaluating a roof for hail damage to inspect other collateral building components for indices of hail impact and hail size. Hail often leaves spatter and/or dents on metals and can offer historical evidence of the size of hail fall.[7] Scientific research has correlated these dent sizes with the size of hail that caused the dent. For instance, hail will leave a dent in a light gauge metal vent cap that is as much as three times (3x) the actual size of the hail stone. Hail can leave splash or spatter marks whose width is representative of the hail ball diameter that created it.[8]

## Wind

- As wind approaches and begins to negotiate a structure in its pathway, the roof is subjected to increasing pressure on the windward side (wind facing) and reduced pressure on the leeward side (side opposite to the wind's direction).

- Wind turbulence increases as the wind encounters changes in the roof's overall geometry; hence, pressures fluctuate and tend to increase along the roof's eaves, gable ends, ridges, and valleys. It is in these roof areas where the roof is most susceptible to damage. It is by this mechanism that the wind resistance characteristics of a shingle are challenged. One would expect to see wind damages at these more vulnerable areas before seeing wind damages to the field areas, i.e., the wider, open expanses of the roof system.

- Wind is usually directional and most often does not cause wind damage to all directional roof slopes during the same elevated wind event. Wind damage to shingles manifests itself when the shingles are creased, torn, folded back, ripped, dislodged or blown off of the roof.

---

[6] "Hail Damage Threshold Sizes for Common Roofing Materials," Marshall, et al., Haag Engineering.
[7] "Splatter" is not damage, but instead represents the removal of oxidation from a surface, usually a metal surface.
[8] Crenshaw, Vickie and Jim D. Koontz. "Hail: Sizing It Up" http://jdkoontz.com/articles/hailsize.pdf

2605 Elwood Drive
Edmond, Oklahoma

## OBSERVATIONS

The exterior and roof of the home were examined on March 10, 2022 for the identification of wind and hail damages utilizing industry standards and common practices.

## Exterior

1. An oblong dent was noted in the east facing overhead door. Based on the shape of this dent, the cause was likely mechanical in nature and not the result of hail damage.



Oblong dent in the overhead door.

2. Other mechanical damage was also noted to the overhead door.

3. Plastic window retainers were observed to be in poor condition with many of the retainers being warped, cracked or missing. Heat and exposure to ultraviolet (UV) radiation causes degradation of these materials. A few of the retainers did exhibit cracks that were consistent with hail impacts.

2605 Elwood Drive
Edmond, Oklahoma



Photo: Warped and deteriorated window retainers caused by heat and UV exposure. The issue is not related to storm damage.

4.  The wood siding and fascia board were observed for damage that would be indicative of hail damage. None was observed.



5. A mostly exposed light fixture above the garage was inspected for hail damage. No damage was found.



6. The heat and air condenser contained a full cover which protected the condenser's coil fins. No denting was noted in the metal, protective casing of the unit.



7. Three (3) screens at the rear elevation were noted to have dented frames. Two (2) other screens at this elevation were protected by the porch overhang and demonstrated no hail damage.



Photo: Denting, likely caused by hail, to the frame of a west facing window screen.

8. Other screens located on the north, south and east elevations did not exhibit hail damage.

9. The painted exterior wood door and trim located at the north elevation did not exhibit any evidence of hail damage.

10. The wood fence was inspected for damage and evidence of hail spatter. Some spatter was present with the largest marks being 3/8". Other building components, e.g., the electrical meter, HVAC condenser, were inspected and no spatter was observed to these components.

2605 Elwood Drive                                                      June 26, 2022
Edmond, Oklahoma                                                       Page 11



## **Roof**

11. The subject property's roof was examined with a test square created on each of the home's directional roof slopes.[9]   Each test square was examined for storm damage using industry standard methods which included visual inspection of the shingles and a tactile examination of noted blemishes.  The light gauge metal roof appurtenances, e.g., metal attic vents, HVAC ventilation caps, and plumbing pipe flashings were also examined for evidence of hail impact.

12. Within each of the test squares, observations were made of blemishes which exhibited granular loss. The great majority of the observed blemishes were at the edges of the shingles tabs. Rarely was a blemish observed within the face of the shingle's tab.

---

[9] A "test square" is routinely employed to assay a roof for evidence and number of hail strikes that damaged the roof.  It is developed by randomly selecting a 100 square foot area of the roof on a directional roof slopes.  The test square is examined using industry standard techniques to determine the presence and number of hail strikes within the designated test area.



A commonly observed blemish at a side edge of a shingle's tab.



A commonly observed blemish at the bottom edge of a shingle's tab.

13. The attic vents, HVAC vent caps, and pipe flashings were observed to have hail dents. It is understood that the HVAC vent caps were not replaced when the roof's shingles and other metals were lasted replaced in 2013. Denting

to these caps provides historical evidence beyond the age of the roof. Hail dents in the pipe flashings were noted to be 1" or smaller in size.

14. Spatter from hail was present on the attic vent covers. The largest spatter marks were 5/16" in size serving as an indication that hail larger than 5/16" had not recently fallen.

15. The entire roof was inspected for evidence of wind damage. No shingles which exhibited the expected characteristics, creased, torn, or blown off of the roof, were found. The shingle's tabs were observed to be fully sealed.

16. No interior leaks were reported at the time of the inspection.

## OPINIONS

***OPINION #1:*** *The March 10, 2021 Aegis Roofing (Aegis) estimate for the full replacement of the roof in the amount of $18,776.69 overstates the necessary cost to replace the existing roof system. The estimate includes unnecessary charges which serves to overstate the true cost of the intended repairs.*

1. In the code compliance section of the estimate, Aegis estimates to install a new layer of roof sheet decking over the existing nominal 1" (1-by) board (lumber) decking. In this instance, this is an incorrect assertion.

2. Confusion has permeated throughout the construction and insurance industry when interpreting the building code language regarding the use and acceptance of lumber decking. Some argue that 1-by decking is not permitted by the existing building code, 2015 International Residential Code (2015 IRC), where it states:

   **R905.2.1. Sheathing requirements.** Asphalt shingles shall be fastened to solidly sheathed decks.

3. The Oklahoma Uniform Building Code Commission (OUBCC) was created in 2009 to develop state-wide minimum building codes for residential and commercial construction. They have adopted nationally recognized base-model codes with modifications through the state's rulemaking process. Typically, local jurisdictions adopt the codes as developed and modified by the OUBCC.

2605 Elwood Drive                                                                    June 26, 2022
Edmond, Oklahoma                                                                Page 14

4. Proposed code changes submitted by the public to the OUBCC have been addressed and ruled upon.  Rulings made by the OUBCC have recognized that Section **R905.2.1** refers the user to **Section 803** when determining decking requirements.  The OUBCC's has ruled that based on this section, lumber decking is permitted and would not void shingle warranties.

**TABLE R803.1 MINIMUM THICKNESS OF LUMBER ROOF SHEATHING**

| RAFTER OR BEAM SPACING (inches) | MINIMUM NET THICKNESS (inches) |
|---|---|
| 24 | $5/8$ |
| 48[a] | |
| 60[b] | $1 1/2$ T & G |
| 72[c] | |

5. The most recent modifications to the 2015 IRC made by the OUBCC became effective September 14, 2021. The modification to Section 905.2.1 states:

> **R905.2.1. Sheathing requirements.** Asphalt shingles shall be fastened to solidly sheathed decks in accordance with Section R803 or to the asphalt shingles manufacturer's installation instructions.

6. Manufacturer's installation instructions vary from company to company. However, the shingle manufacturer in this instance is known. The 2013 proposal from Aegis to Bates[10], which also serves as "Paid in Full" invoice, shows the shingles to be Malarkey Duraseal. The installation instructions provided by Malarkey for this shingle states:

**Roof Deck:** The surface to receive the new roof should be in good shape and solidly sheathed, constructed of minimum 3/8" (10 mm) thick, exterior-grade plywood, 7/16" (11 mm) thick oriented strand board (OSB), or seasoned lumber, nominally 1" (25 mm) thick.

7. Malarkey's installation instructions do go on to recommend installing sheet decking over wood board decks. However, a manufacturer's recommendation is not the same as the previously noted installation instruction requirement, and therefore, is not a building code requirement.

8. Like State Farm, Aegis estimated to replace the overhead door. However, Aegis added the charge to "Detach and Reset Overhead (garage) door opener". It is not necessary to detach an opener from the ceiling or wall

---

[10] Bates 0159

2605 Elwood Drive                                           June 26, 2022
Edmond, Oklahoma                                           Page 15

when replacing the door. The allowance for the replacement of the overhead door includes the disconnection of the door from the opener. The following definition is provided by Xactimate for the overhead door line item utilized by State Farm and Aegis.





**Item Information for DOROH16 &**                                    ✕

**Definition:**

Includes: 16' x 7' overhead door, track, hardware, and installation labor. Labor cost to remove an overhead door and to discard in a job-site waste receptacle.
Excludes: Automatic door opener.
Quality: Woodgrain raised panel design with 3/4" or 7/8" polystyrene insulation bonded to steel skin, or flush panel wood door with woodgrain textured hardboard exterior and smooth interior surface.
Green: LEED considers aluminum and steel doors to be green for being manufactured with a minimum of 25% recycled product.
Note: Pricing reflects local code requirements. Includes connection to the opener when an opener is already installed. New overhead doors typically include the bottom panel weather seal but do not include weather stop for the sides or top (see item DOR OHDWS if needed).
Average life expectancy 35 years
Average depreciation 2.86% per year
Maximum depreciation 100%

**_Opinion #2:_** _State Farm appears to have followed industry standard methods when evaluating the subject property for storm-related damages. The file documentation demonstrates an evaluation was made of each directional slope of the roof and each exterior elevation. Based on the inspection's conclusions, the estimate reasonably represents the cost to repair the noted damages._

1. State Farm inspected the damages shortly after the claim was reported. An estimate was prepared on the same day of the inspection.

2. State Farm's claim representative used Xactimate to estimate the damages. Xactimate is the most widely utilized construction estimating software system developed by Xactware Solutions (Xactware). It provides a highly researched pricing database that is updated monthly.

3. The utilized pricing database, OKOC28_JUL20, was accurate based on the geographic locale and the reported date of loss. The applied material sales tax rate, 8.25%, accurately represents the sales tax for Edmond, Oklahoma.

4. The photo documentation shows State Farm conducted test square evaluations on each of the roof's directional slopes.

2605 Elwood Drive
Edmond, Oklahoma

5. State Farm noted areas of granular loss at the edges of the shingles' tabs. Photography taken by the claim representative shows that the blemishes are predominately at the shingles' edges. State Farm was right to consider other causes based on these observations.

6. Observations I made during my inspection confirmed that the majority of the blemishes occur at the shingles' edges. Further, Aegis and Swain have produced photography documenting that their observations were similar. Swain photographed most of the blemishes he documented with a tape measure. Each of the edge blemishes extended to ½" from the shingle's edge or less. To aid in furthering the discussion, the following diagrams demonstrate the dimensions of a Malarkey Duraseal 3-tab shingle's tab including the areas of the tab's edges and face.[11]



---

[11] As the name implies, each 3-tab shingle includes three (3) tabs all of the same dimensions as the one demonstrated in these diagrams.

2605 Elwood Drive
Edmond, Oklahoma



The area of the shingle outside of the boxed edges represents the **face** of one of the shingle's tabs. The area of the tab's **face** equals 55.76 square inches.

The boxed areas at the perimeter includes ½" from the tab's **edge**. The total area of the **edge** equals 11.08 square inches.

7. Knowing that hail fall is random, 17%[12] of the hail impacts should be at the shingle tabs' edges while 83% should be in the shingle tabs' faces. This is well represented in the following photograph taken from the 2012 claim[13] where six (6), or 86%, of the marked hail impacts are in the tabs' faces while one (1), or 14%, is in at an edge.

---

[12] 11.08 square inches of the 66.84 square inch total surface area
[13] SF.BATES_000479

2605 Elwood Drive                                                    June 26, 2022
Edmond, Oklahoma                                                    Page 18



8.  An analysis of the photography provided by Aegis and Swain finds that they appear to have identified and photographed sixty-two (62) individual blemishes to the roof's shingles.  Of the sixty-two (62) blemishes, sixteen (16), or 26%, are in the shingle tabs' faces while forty-six (46), or 74%, are at the tabs' edges. The results are in significant contrast to the expected damage caused by random hail fall.

9.  Swain made his inspection not long after the reported date of loss. Swain documented hail spatter to one of the attic vents. The size of the spatter was ¾" in diameter. As previously noted, scientific research has shown that hail with a ¾" diameter does not reach the threshold size to damage a 3-tab shingle.

10. The claim representative's log entry on the day of the inspection states:

    "Spatter was not observed to any surfaces (fencing, ele panel, exterior door)."

    The lack of hail spatter to these components is a strong indication that hail the size required to damage the roof had not recently fallen at the subject property.

2605 Elwood Drive
Edmond, Oklahoma

June 26, 2022
Page 19

11. When Bates made a request for a second inspection, State Farm asked that documentation be provided to show additional or other damage not previously observed by State Farm. Bates submitted to State Farm photos taken by Aegis which allegedly represented hail damage to the shingles. All of the submitted photos[14] show either: (1) dented soft metals already allowed for by State Farm or (2) blemishes at the edge of the shingles which were already noted and considered by State Farm.

12. With the observed granular loss being widely limited to the shingles' edges combined with the lack of spatter to metal surfaces and to the wood fence, State Farm understandably concluded the granular loss was not related to hail impacts.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I understand that discovery is in progress and I reserve the right to supplement this report to address additional information made available to me. Any document contained or referred to in this report may be used as an exhibit to illustrate my testimony. Please find attached as a part of this report my current Curriculum Vitae which list all cases in which I have given testimony, both at deposition and trial over the last four (4) years. It establishes my qualifications and my compensation.

Sincerely,

Derek VanDorn
BERRYMAN ENTERPRISES, INC.

---

[14] Bates 0141 - 0143

2605 Elwood Drive                                                                    June 26, 2022
Edmond, Oklahoma                                                                     Page 20

## CURRICULUM VITAE

**Name:**        Derek VanDorn
**Born:**        April 15, 1974
                 Shattuck, Oklahoma

**Occupation:**  Construction Consultant
                 Berryman Enterprises, Inc.
                 General Contractor / Consultant
                 426 N.W. 5th Street
                 Oklahoma City, Oklahoma 73102

**Education:**   M.B.A., Cameron University, 2004
                 Business Administration

                 B.S., Oklahoma State University, 1998
                 Finance

**Experience:**  General Contractor/Consultant, Berryman Enterprises 2017-Present

                 General Contractor, Phoenix Construction, 2015-2017

                 General Manager, Steve Breed Construction, 2007-2015

                 Claim Specialist, State Farm Insurance, 1998-2007

**Certifications:** Oklahoma Commercial Roofing Endorsement

**Compensation Structure:**

Expert services and review, study, estimation and written opinions shall be billed at a rate of $295/hour.

Expert services at deposition and trial shall be billed at $445.00/hour.

2605 Elwood Drive
Edmond, Oklahoma

**Previous Depositions and Court Appearances (Four Years):**

1) Steven T. and Kimberly Hoehner v. Craig Linsenmeyer, Linsenmeyer, Bogie & Varnell Insurance Agency, Tiffany Homes II, LLC, and Jason C. Harris. District Court of Oklahoma County, Oklahoma Case # CJ-2017-7001

2) Lisa West and Stormy Hopson, individually and as class representatives, v. ABC Oil Company, Inc., et. al. In the United States District Court For the Western District of Oklahoma Case # CIV-16-264-F

3) William and Rachel Marchant, v. Magnum Contemporary Housing, Inc., and Palm Harbor Homes, Inc. And Palm Harbor Village, Inc. In Private Arbitration

4) Jody and Jerry Bryant, v. North Star Mutual Insurance Company and Dome Insurance Agency, LLC, District Court of Oklahoma County, Oklahoma Case # CJ-2020-70

5) L. Duane Wilson and Helen L. Wilson, v. State Farm Fire & Casualty Company For the Northern District Of Oklahoma Case # 21-CV-00062

6) Eric and Micah Proe, v. Glenn Dennis Emery, Mike Emery, dba Diamond Homes District Court of Hughes County, Oklahoma Case # CJ-2019-63 Deposition Date: May 31, 2022

7) Johnnie L. Greer v. State Farm Fire and Casualty Company, and Robert W. Kawero District Curt of Canadian County, Oklahoma Case # CJ-2019-151 Deposition Date: June 7, 2022