# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS H. BATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-21-00705-JD |
| | ) |
| STATE FARM FIRE AND CASUALTY | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Lance E. Leffel, OBA No. 19511
Paula M. Williams, OBA No. 30772
Taylor J. Freeman Peshehonoff, OBA No. 33938
GABLEGOTWALS
BOK Park Plaza, Suite 2200
499 W. Sheridan Avenue
Oklahoma City, OK  73102
(405) 235-5500
(405) 235-2875 (facsimile)
lleffel@gablelaw.com
pwilliams@gablelaw.com
tpeshehonoff@gablelaw.com

***Attorneys for Defendant***

Date:  August 5, 2022

Pursuant to LCvR7.1(i), Defendant State Farm Fire and Casualty Company ("State Farm"), submits the following Reply in support of its Motion for Partial Summary Judgment [Dkt. 43] (the "Motion").

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT OF FACTS ("SOF")**

**SOF 3:** Plaintiff's denial is immaterial and, further, ignores that July 3, 2020 was also suggested by his contractor, Jonathan Marks. (*See Motion* Ex. 6, Text Bates 0194; *see also* Ex. 1, AegisRoofing_000081.)

**SOF 7:** Under oath, Marks recalled that the adjuster "didn't see any hail or wasn't going to pay for hail or something like that" when he arrived at Plaintiff's home for the inspection. (*See Response* Ex. 1, Marks Dep. 42:11–43:8.)

**SOF 8:** This denial is immaterial. It does not dispute that CS Dunnican-Jacome first concluded she did not believe there to be hail damage, as confirmed by Contractor Marks's testimony. (*See* SOF 7.) The text conversation's absence from the file is irrelevant.

**SOF 9, 11, 14–17:** Plaintiff "denies" these facts with unrelated facts or unsupported commentary, leaving State Farm's facts undisputed. *See* SOF 9 (recharacterizing the denial letter because Plaintiff believes a mailbox was missed); SOF 11 (speculating that photos were not "carefully" reviewed); SOF 14 (adding that Plaintiff's son also asked "how we proceed"); SOF 15 (denying based on dispute that photos showed hail damage, central issue to the breach of contract claim); SOF 16, 17 (denying facts not alleged by State Farm).

**SOF 10:** Whether or not there is hail damage to Plaintiff's roof is a disputed issue in this case, but it remains undisputed that Contractor Marks submitted photos, and State Farm considered them. (*Motion* Ex. 4, Claim File, SF.BATES_000280–000299.)

**SOF 12:** Plaintiff argues "Jacome never contacted" Plaintiff or his son, ignoring State Farm's team environment and that others did communicate with Plaintiff or his family. (*See Response to Plaintiff's UMF* 25; *Motion* Ex. 4, Claim File, SF.BATES_000048–00050.)

**SOF 19:** Again, this response fails to dispute State Farm's fact. Plaintiff acknowledges a call occurred between CS Pineset and Plaintiff's son. The response only laments that the call was a delayed response to a prior email and CS Pineset did not discuss what Plaintiff's son thought was important. Plaintiff's son's belief "it was a pointless call" does not amount to a denial of SOF 19. (*See Response* Ex. 10, Gary Bates Dep. 57:7–13; *Motion* Ex. 4, Claim File, SF.BATES_000048.)

**SOF 20:** SOF 20 remains undisputed. The parties' disagreement about whether the photos showed new evidence of hail damage and, accordingly, whether a second inspection should have occurred is central to Plaintiff's breach of contract claim. Plaintiff has not disputed State Farm requires some indication of additional damage for a second inspection.

### DEFENDANT'S RESPONSES TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS ("PLAINTIFF'S UMF")

1.    **Response to Plaintiff's UMF 1–2:** Admitted.

2.    **Response to Plaintiff's UMF 3:** Denied. Bruising of a shingle may be seen with the naked eye. *Sometimes* you have to feel it. (*See Response* Ex. 9, Draper Dep. Vol. I 49:14–50:15.)

{S613739;}}                                      2

3. **Response to Plaintiff's UMF 4:** Denied in part. A fracture of the shingle mat can only be *seen* by lifting the shingle, but it can also be *felt* by touching the top of the shingle. (Ex. 2, Van Dorn Dep. 70:6–14.)

4. **Response to Plaintiff's UMF 5:** Denied in part. Ms. Arnold testified that claims adjusters are trained to "feel the shingle, lift the shingle, look underneath the shingle" to complete their job. (*Response* Ex. 15, Arnold Dep. 188:19–24.) If an adjuster does not feel a bruise, however, there is no reason to lift a shingle, as fractures only happen with large hail. (Ex. 3, Arnold Dep. 185:19–187:13.)

5. **Response to Plaintiff's UMF 6–12:** Denied in part. CS Dunnican-Jacome is an experienced external claims adjuster who adjusted numerous types of claims prior to joining State Farm. She first attended two days of State Farm certification classes, learning skills such as calculating waste on roofs, determining square footage, and other basic adjusting skills. (*See* Ex. 4, Dunnican-Jacome Dep. 14:15–15:10.) She attended additional trainings relating to Xactimate, ethics, and claims handling. (*Id.* 21:10–22.) During her ethics training, she learned "[t]hat our job was to find coverage, as afforded under a policy, no more, no less, and to honestly and accurately estimate for the damages. Not to add to, not to take away from." (*Id.* 30:1–7.) She received additional training before handling wildfire claims in California, including large loss reconciliation. (*Id.* 36:5–12; *id.* 55:12–21.) Prior to joining State Farm, she participated in a couple of trainings covering hail damage. (*See Response* Ex. 4, Dunnican-Jacome Dep. 64:24–65:9, 66:24–67.)

Because she was an experienced adjuster, once employed by State Farm, she had the capacity to adjust claims inspected by an external resource, while she strengthened her

{S613739;}}                                    3

understanding of hail damage with additional trainings. (*See* Ex. 4, Dunnican-Jacome Dep. 56:17–57:18.) Her classroom training lasted 6-7 weeks at State Farm, including videos, PowerPoint presentations, and HAAG training. She also shadowed a seasoned adjuster on about 10 roofs. She learned "what was hail damage and what was wear, to ensure that [she] understood, whenever [she] was inspecting . . . that [she] was accurate." (*See Response* Ex. 4, Dunnican-Jacome Dep. 93:8–94:20; *see also* Ex. 4, Dunnican-Jacome Dep. 96:14–97:14, 98:9–11; 107:1–7, 133:22–134:9.)

6.      **Response to Plaintiff's UMF 13:** Denied in part. After shadowing and completing her 6-7 weeks of virtual training, CS Dunnican-Jacome was able to attend inspections on her own by mid-January. (*Response* Ex. 4, Dunnican-Jacome Dep. 94:1–4, 12–24.) She inspected Plaintiff's home on February 23, 2021. (*See Motion* Ex. 4, Claim Notes, SF.BATES_000050–000051.)

7.      **Response to Plaintiff's UMF 14:**  Denied. The photos are not "nearly identical," and CS Dunnican-Jacome stated she would need to feel the pictured shingle to affirmatively determine the presence of a bruise. (*Response* Ex. 4, Dunnican-Jacome Dep. 206:2–8.)

8.      **Response to Plaintiff's UMF 15:**  Denied. TM Draper stated that she "could not specifically say solely from the photo whether [the photo] was hail bruising or not" because the adjuster on the scene would be able to "touch it and feel it" to make that conclusion. (*Response* Ex. 9, Draper Dep. 47:18–48:8; *id.* 49:4–8; *id.* 49:14–50:9.)

9.      **Response to Plaintiff's UMF 16:** UMF 16 is irrelevant to CS Dunnican-Jacome's inspection of Plaintiff's rental property. Even more, Plaintiff's UMF 16 shows

that State Farm's process works. CS Dunnican-Jacome followed State Farm's process of checking for bruised shingles. When new evidence was presented, a second inspection occurred. (*Response* Ex. 4, Dunnican-Jacome Dep. 111:16–23.)

10.    **Response to Plaintiff's UMF 17–18:** TM Draper requested photos from her adjusters to ensure accuracy and consistency in calls. (Ex. 5, Draper Dep. Vol. II 190:14–191:3.) If an adjuster felt confident in their decision, they had the authority to make the decision. When CS Dunnican-Jacome started inspecting hail claims on her own, TM Draper would confirm that the inspection was "a thorough and true investigation and inspection" before CS Dunnican-Jacome made the decision. (*Id.* at 190:14–192:08.)

11.    **Response to Plaintiff's UMF 19:** Denied as to "what Section Manager Sharon Arnold expects." (*See Response to Plaintiff's UMF* 5.)

12.    **Response to Plaintiff's UMF 20:** CS Dunnican-Jacome explained that she questioned whether the roof metals had been replaced since 2012 due to the different sizes of damage displayed on the soft metals. (*Response* Ex. 4, Jacome Dep. 171:19–172:22.)

13.    **Response to Plaintiff's UMF 21:** Admitted, but not relevant. Even if CS Dunnican-Jacome did not review the 2012 claim for roof replacement of Plaintiff's home, CS Dunnican-Jacome's decision not to review the 2012 claim *does not amount to bad faith*. And CS Dunnican-Jacome paid for the soft metals she believed were damaged.

14.    **Response to Plaintiff's UMF 22–23:** Admitted.

15.    **Response to Plaintiff's UMF 24:** Denied in part. CS Mendoza noticed there was no denial of second inspection letter in the file. (*Motion* Ex. 4, Claim Notes, SF.BATES_000049.) CS Mendoza asked CS Dunnican-Jacome to "conta[c]t the NI or son

Gary to explain[] decision and what is needed for add'l inspection consideration." (*Id.*) At that time, a letter denying the second inspection had already been sent to Plaintiff's son, Plaintiff's contractor, and Plaintiff's State Farm agent. (*See* SOF 12.)

16.    **Response to Plaintiff's UMF 25:** Plaintiff ignores the many other State Farm adjusters involved in communications with Plaintiff and his son. In addition to the denial letter (*see* SOF 12), Plaintiff's insurance agent spoke with State Farm's Jamie Korbelik, who explained the contractor photos "show wear and tear," and Anthony Mendoza also spoke to Plaintiff's son. (*Motion* Ex. 4, SF.BATES_000049–000050.) State Farm works in a team environment. While CS Dunnican-Jacome may lack a specific claim note regarding the requirements for a second inspection, at least two others communicated with Plaintiff or his representative, who called on Plaintiff's behalf about contractor photos.

17.    **Response to Plaintiff's UMF 26–27:** Admitted, however, as TM Draper testified, she would expect the adjuster to try to first resolve any issues and then send a task to the team manager to discuss with the policyholder. (Ex. 5, Draper Dep. 80:20–81:9.) Although TM Draper did not contact Plaintiff, she had already reviewed the additional photos submitted by Contractor Marks. (*See* SOF 11.)

18.    **Response to Plaintiff's UMF 28:** This testimony is not relevant to this case or the resolution of this Motion. Former employee Amy Lanier has no knowledge of this claim, this property, or even Plaintiff's policy. (Ex. 6, Lanier Dep. 40:15–24.) Ms. Lanier quit her job as claims specialist at State Farm on July 23, 2020, well before Plaintiff submitted this claim. (*Id.* 20:7–10.)

**19.**      **Response to Plaintiff's UMF 29:** Denied. CS Dunnican-Jacome testified her direction was to "find coverage, as afforded under a policy, no more, no less, and to honestly and accurately estimate for the damages." (Ex. 4, Dunnican-Jacome Dep. 30:1–7.) TM Draper's goal was to ensure consistency and a thorough investigation by her team before the adjuster made a decision. (Ex. 5, Draper Dep. Vol. II 190:14–192:08.)

**20.**      **Response to Plaintiff's UMF 30:** Denied. (*See Response to Plaintiff's UMF* 17, 18.)

**21.**      **Response to Plaintiff's UMF 31:** Denied. CS Dunnican-Jacome chalked Plaintiff's roof, calling into question the self-serving testimony of a former employee with no relationship to this lawsuit or claim. (Ex. 7, Claim File, SF.BATES_000336, SF.BATES_000365, SF.BATES_000356.) TM Draper was not "kept out," as her name appears in this claim file, and she was clearly involved in the review of Marks's additional photographs. (*See Motion* Ex. 4, Claim File, SF.BATES_000048, SF.BATES_000050.)

**22.**      **Response to Plaintiff's UMF 32:** Denied. Plaintiff presents only testimony from a former employee with no relationship to Plaintiff's claim or lawsuit. Regardless, Plaintiff's "old hail" theory ignores key policy language requiring immediate notice of loss. (*Motion* Ex. 3, Policy, SF.BATES_000010.)

<u>**ARGUMENTS AND AUTHORITIES**</u>

**I.      SUMMARY JUDGMENT ON THE BAD FAITH CLAIM IS PROPER.**

When there is a legitimate dispute between an insurer and its insured as to coverage, a cause of action for bad faith "will not lie." *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984); *Oulds v Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442–45 (10th Cir.

1993). Tort liability should not be imposed when there is a difference of opinion, but "only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981) (emphasis added) (citation omitted).

State Farm conducted a reasonable investigation into Plaintiff's claim, and a reasonable dispute as to coverage arose. Neither bad faith *nor* punitive damages are warranted, and the Motion should be granted.

### A.    State Farm's investigation was reasonable.

Plaintiff has not disputed that State Farm's investigation was reasonable. Plaintiff argues Plaintiff, a 98-year-old man, is angry, ignoring the testimony of Plaintiff's son, that Plaintiff has not been affected "a tremendous amount" because Plaintiff "really wasn't dealing with it much." (Ex. 8, Gary Bates Dep. 79:9–19.) To support that State Farm did not conduct a reasonable investigation, Plaintiff points to six "facts." *See Response* at 15.

**First**, Plaintiff argues a "change" in training resulted in unqualified adjusters inspecting. CS Dunnican-Jacome's prior adjusting experience, combined with 6-7 weeks of virtual trainings, and on-site shadowing of up to 10 roofs with a seasoned adjuster undisputedly shows State Farm provided adequate training, and CS Dunnican-Jacome was qualified to inspect the roof. (*See Responses to Plaintiff's UMF* 6–12.)

**Second**, Plaintiff argues State Farm "stripped" authority from adjusters, based only on testimony from a former employee with no relationship to Plaintiff's claim. TM Draper was clear: CS Dunnican-Jacome had authority to settle claims. TM Draper was ensuring a thorough inspection and evaluation of damage. (*See Response to Plaintiff's UMF* 17–18.)

{S613739;}}                                                8

**Third**, Plaintiff states adjusters were not allowed to use chalk. This statement is blatantly contradicted by the record. CS Dunnican-Jacome chalked Plaintiff's roof. (*See Response to Plaintiff's UMF* 31.)

**Fourth**, Plaintiff argues TM Draper required photos of roofs so she could decide whether to pay. TM Draper testified she requested photos to ensure consistency among her team in analyzing hail damage, and they retained authority to make the decision. (*See Responses to Plaintiff's UMF* 17–18, 30.)

**Fifth**, Plaintiff alleges TM Draper was purposefully omitted from the claim file. A review of the claim notes clearly negates this position, as TM Draper appears in the claim notes working on Plaintiff's claim. (*See Response to Plaintiff's UMF* 31.)

**Sixth**, Plaintiff points to the fact State Farm used the term "wear and tear" to deny Plaintiff's claim but ignores all evidence that State Farm reasonably concluded the damage on Plaintiff's roof were the result of wear and tear. Only a former employee unfamiliar with this case supports Plaintiff's "old hail" theory. It also ignores the Policy language requiring immediate reporting. (*See Responses to Plaintiff's UMF* 28, 32.)

State Farm's investigation was reasonable. It conducted a prompt inspection, provided prompt payment, reviewed Contractor Marks's photographs, sent a denial letter (albeit to the incorrect email address), and engaged in multiple communications with Plaintiff and/or his family, regarding the claim and the reason for denial. (*See* SOF 5–19.)

### B.    *The denial was based on a reasonable and legitimate coverage dispute.*

Plaintiff claims CS Dunnican-Jacome was undertrained and inexperienced, which contradicts undisputed testimony regarding her history of adjusting claims, 6-7 weeks of

training, and 2-3 additional weeks of shadowing on roofs with an experienced adjuster. (*See Responses to Plaintiff's UMF* 7–12.) Plaintiff alleges State Farm ignored evidence provided by Contractor Marks, but it is undisputed that both CS Dunnican-Jacome and TM Draper reviewed the photos submitted. (*Motion SOF* 11.) Plaintiff argues State Farm refused a second inspection, ignoring State Farm's policy requiring the insured or his contractor to submit evidence of *new information* to warrant a second inspection. Both CS Dunnican-Jacome and TM Draper determined those photos provided no new information. (*See Response to Plaintiff's UMF* 11.) Finally, Plaintiff argues State Farm wholly relied on someone who had not stepped foot on Plaintiff's roof to make the coverage call. That contravenes Plaintiff's expert's own testimony that, upon arrival, CS Dunnican-Jacome had completed her inspection (including chalking the roof) and found no hail damage. (*See* SOF 8.)

The denial was thus based on a legitimate coverage dispute.

## II.    PUNITIVE DAMAGES ARE NOT WARRANTED.

Plaintiff generally alleges that punitive damages are warranted when the evidence supports such a claim but fails to connect his punitive damages argument to any factual support. Plaintiff may generally disagree with State Farm's handling of the claim, but that does not provide support the imposition of punitive damages against State Farm.

## <u>CONCLUSION</u>

For the reasons set forth above, State Farm requests the Court grant its Motion for Partial Summary Judgment.

Respectfully submitted,


*/s/ Taylor J. Freeman Peshehonoff*
Lance E. Leffel, OBA No. 19511
Paula M. Williams, OBA No. 30772
Taylor J. Freeman Peshehonoff, OBA No. 34424
**GABLEGOTWALS**
BOK Park Plaza, Suite 2200
499 W. Sheridan Avenue
Oklahoma City, OK  73102
(405) 235-5500
(405) 235-2875 (facsimile)
lleffel@gablelaw.com
pwilliams@gablelaw.com
tpeshehonoff@gablelaw.com

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following:

Brad Miller, OBA #11437
J. Logan Johnson, OBA #12722
Shawna L. Landeros, OBA #31637
MILLER JOHNSON JONES
ANTONISSE & WHITE, PLLC
500 N.W. 6th Street, Suite 300
Oklahoma City, OK 73102-1219

*Counsel for Plaintiff*

*/s/ Taylor J. Freeman Peshehonoff*
Taylor J. Freeman Peshehonoff

{S613739;}}                    12