

# Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Fire and Casualty Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 96-BJ-Q252-5 including any endorsements, if applicable, for the policy term(s) 10/10/2019 - 10/10/2020 and insuring BATES, THOMAS based on available records.

The policy was in effect on the loss date of 07/03/2020.

Lidia Diaz
Underwriter
Date: 07/07/2021

1004516

2000  143551  200

**EXHIBIT**

**1**

SF.BATES_000001



State Farm®
**Rental Dwelling
Policy**

FP-8103.3

SF.BATES_000002

# TABLE OF CONTENTS

## DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

SECTION I - YOUR PROPERTY
COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
Coverage A - Dwelling. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
Coverage B - Personal Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
Coverage C - Loss of Rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
Additional Coverages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
Inflation Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
CONDITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

SECTION II - YOUR LIABILITY
COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
Coverage L - Business Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
Coverage M - Premises Medical Payments. . . . . . . . . . . . . . . . . . . . . . .10
EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
ADDITIONAL COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
CONDITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

SECTION I AND SECTION II - CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . .14

OPTIONAL POLICY PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.
And also,
Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1975, 1977.

FP-8103.3                                      Printed in U.S.A.

SF.BATES_000003

# RENTAL DWELLING POLICY - SPECIAL FORM 3

## AGREEMENT

We agree to provide the insurance described in this policy. You agree to pay premiums when due and comply with the provisions of this policy.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means bodily harm, sickness or disease. This includes required care, loss of services and death resulting therefrom. **Bodily injury** does not include any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person. It also does not include the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person.

2. "**contract**" means any written **contract** or agreement wherein the **named insured** has expressly assumed liability for damages to which this policy applies.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form, or any endorsement changing any of these.

4. "**insured**" means:

   a. if the **named insured** is designated in the **Declarations** as an individual and is a sole proprietor, the **named insured** and spouse;

   b. if the **named insured** is designated in the **Declarations** as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof;

   c. if the **named insured** is designated in the **Declarations** as other than an individual, partnership or joint venture, the organization trustees, directors or governors or stockholder thereof while acting within the scope of their duties;

   d. any employee of the **named insured** while acting within the scope of that employment;

   e. any person or organization while acting as real estate manager for the **named insured**.

   The insurance afforded applies separately to each **insured** against whom claim is made, or suit is brought, except with respect to the limit of our Company's liability.

   This insurance does not apply to **bodily injury** or **personal injury** or **property damage** arising out of the conduct of any partnership or joint venture which is not designated in this policy as a **named insured**.

5. "**insured premises**" means:

   a. the **residence premises**;

   b. one or two family premises of which you acquire ownership or control and for which you report your intention to insure under this policy within 30 days after acquisition;

   c. the ways immediately adjoining on land; and

   d. one or two family dwelling premises alienated by any **insured** if possession has been given to others.

6. "**motor vehicle**", when used in Section II of this policy, means:

   a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured premises** is not a **motor vehicle**;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 6.a. is not a **motor vehicle**;

FP-8103.3                                      1                                    Printed in U.S.A.

SF.BATES_000004

c. a motorized golf cart, snowmobile, or other motor-ized land vehicle owned by any **insured** and designed for recreational use off public roads, while off an **insured premises**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**;

d. a motorized bicycle, tricycle or similar type of equipment owned by any **insured** while off an **insured premises**;

e. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b., 6.c., or 6.d.

7. "**named insured**" means the person or organization named in the **Declarations** of this policy.

8. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury**;

b. **property damage**; or

c. **personal injury**;

during the policy period. Repeated or continuous expo-sure to the same general conditions is considered to be one **occurrence**.

9. "**personal injury**" means injury arising out of one or more of the following offenses:

a. false arrest, detention or imprisonment or malicious prosecution;

b. libel, slander or defamation of character; or

c. invasion of privacy, wrongful eviction or wrongful entry.

10. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not considered to be **property damage**.

11. "**residence premises**" means the one or two family dwelling, other structures, and grounds which is shown in the **Declarations**.

## SECTION I - COVERAGES

### COVERAGE A - DWELLING

We cover:

1. the dwelling on the **residence premises** shown in the **Declarations** used principally as a private residence, including structures attached to the dwelling;

2. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alter-ation or repair of the dwelling or other structures on the **residence premises**;

3. wall-to-wall carpeting attached to the dwelling on the **residence premises**; and

4. outdoor antennas.

Except as specifically provided in the **SECTION I, ADDI-TIONAL COVERAGES**, for **Land**, we do not cover land or any costs required to replace, rebuild, stabilize or other-wise restore the land.

**Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

We do not cover other structures:

1. not permanently attached to or otherwise forming a part of the realty;

2. used in whole or in part for commercial, manufacturing or farming purposes; or

3. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

### COVERAGE B - PERSONAL PROPERTY

We cover personal property owned or used by any **insured** which is rented or held for rental with the **residence pre-mises** or used for the maintenance of the **residence pre-mises**. This coverage applies only while the personal property is on the **residence premises** or temporarily off premises for repairs.

FORM 3

SF.BATES_000005

**Property Not Covered**. We do not cover:

1. articles separately described and specifically insured in this or any other insurance;

2. animals, birds or fish;

3. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those used solely for the service of the **residence premises** and not licensed for use on public highways;

4. watercraft, including motors, equipment and accessories;

5. aircraft and parts;

6. outdoor signs.

## COVERAGE C - LOSS OF RENTS

The limit of liability for Coverage C is the total limit for all the following coverages.

1. **Fair Rental Value**. If a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental but not exceeding 12 consecutive months from the date of loss. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

2. **Prohibited Use**. If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Loss Insured in this policy, we cover any resulting Fair Rental Value loss for a period not exceeding two weeks during which use is prohibited.

   We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal**. We will pay the reasonable expense incurred by you in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

2. **Reasonable Repairs**. We will pay the reasonable cost incurred by you of repairing damage to covered property necessary to protect the property from further damage or loss, provided coverage is afforded for the peril causing the loss. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, Shrubs and Other Plants**. We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following Losses Insured: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft. The limit of liability for this coverage shall not exceed 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns nor more than $500 for any one tree, shrub or plant. This coverage may increase the limit of liability otherwise applicable. We do not cover property grown for business purposes.

4. **Fire Department Service Charge**. We will pay up to $500 for your liability assumed by **contract** or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed**. Covered property, while being removed from a premises endangered by a Loss Insured, is covered for direct loss from any cause. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Personal Effects**. We will pay up to $500 for loss at the **residence premises** caused by a Loss Insured to personal effects of others while such property is in your

SF.BATES_000006

care, custody or control. This coverage is subject to the limitations and exclusions applicable to Coverage B - Personal Property. This coverage is limited to $100 per person and does not increase the limit of liability applying to Coverage B - Personal Property.

7. **Burglary**. We will pay for loss of personal property owned or used by any **insured** which is rented or held for rental with the **residence premises**, when the loss is from a known location within a building on the **residence premises** when it is probable that the property has been stolen and there is visible evidence of forcible entry or forcible exit from that building. This coverage does not increase the limit of liability applying to Coverage B - Personal Property.

8. **Arson Reward**. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

9. **Land**. We will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling sustaining a covered loss. This may increase the limit applying to the property.

10. **Volcanic Action**. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limits applying to the damaged property.

11. **Collapse**. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, volcanic action, falling objects, weight of ice, snow or sleet, water damage, breakage of building glass, all only as insured against in this policy;

(1) falling objects does not include loss of or damage to:

(a) personal property in the open; or

(b) the interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object;

(2) water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam;

b. hidden decay;

c. hidden insect or vermin damage;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

4     FORM 3

SF.BATES_000007

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit applying to the damaged property.

**INFLATION COVERAGE**

The limits of liability shown in the **Declarations** for Coverages A and B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A and Coverage B separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy, the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I - LOSSES INSURED

**COVERAGE A - DWELLING AND COVERAGE B - PERSONAL PROPERTY**

We insure for accidental direct physical loss to the property described in Coverage A and Coverage B, except as provided in Section I - Losses Not Insured.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for loss to the property described in Coverage A and Coverage B either consisting of, or directly and immediately caused by, one or more of the following:

   a. collapse, except as specifically provided in **SECTION I, ADDITIONAL COVERAGES** for **Collapse**;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

   e. theft of any property which is not actually part of any building or structure;

   f. mysterious disappearance;

   g. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   h. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

5

FORM 3

SF.BATES_000008

which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot. If loss is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

i. wear, tear, marring, scratching, deterioration, inherent vice, latent defect and mechanical breakdown;

j. rust, mold, or wet or dry rot;

k. contamination;

l. smog, smoke from agricultural smudging or industrial operations;

m. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

n. birds, vermin, rodents, insects or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals.

However, we do insure for any ensuing loss from items a. through n. unless the loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion.

Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I**, **ADDITIONAL COVERAGES** for **Volcanic Action**.

We do insure for any direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials resulting from earth movement.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) water which backs up through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for direct loss by fire, explosion, or theft resulting from water damage.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Loss Insured.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss

FORM 3

SF.BATES_000009

caused by fire, explosion, or smoke. However, we do insure for direct loss by fire resulting from the nuclear hazard.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

   (1) planning, zoning, development, surveying, siting;

   (2) design, specifications, workmanship, construction, grading, compaction;

   (3) materials used in construction or repair; or

   (4) maintenance;

   of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**.

   However, we do insure for any ensuing loss from items a. and b. unless the ensuing loss is itself a Loss Not Insured by this Section.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability**. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the insured's interest; nor

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss**. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent, and in case of theft, vandalism, or malicious mischief, also to the police;

   b. protect the property from further damage or loss, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

   (1) exhibit the damaged property;

   (2) provide us with records and documents we request and permit us to make copies; and

   (3) submit to examinations under oath and subscribe the same;

e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1) the time and cause of loss;

   (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

   (3) other insurance which may cover the loss;

   (4) changes in title or occupancy of the property during the term of this policy;

   (5) specifications of any damaged building and detailed estimates for repair of the damage;

   (6) an inventory of damaged personal property described in 2.c.;

   (7) records supporting the fair rental value loss.

FORM 3

SF.BATES_000010

3. **Loss Settlement**. Covered property losses are settled as follows:

   a. Personal property and structures that are not buildings at actual cash value, up to the applicable limit of liability, at the time of loss. There may be deduction for depreciation. We will not pay an amount exceeding that necessary to repair or replace;

   b. Carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, at actual cash value, up to the applicable limit of liability, at the time of loss. We will not pay an amount exceeding that necessary to repair or replace;

   c. Buildings under Coverage A at replacement cost without deduction for depreciation, subject to the following:

      (1) We will not pay more than the $10,000 limit on **Land** as provided in **SECTION I**, **ADDITIONAL COVERAGES**.

      (2) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

         (a) the limit of liability under this policy applying to the building;

         (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

         (c) the amount actually and necessarily spent to repair or replace the damaged building.

      (3) We will pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed.

      (4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

4. **Loss to a Pair or Set**. In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement**. Loss for damage to glass caused by a Loss Insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal**. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance**. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us**. No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss or damage.

9. **Our Option**. We may repair or replace any part of the property damaged or stolen with equivalent property.

FORM 3

SF.BATES_000011

Any property we pay for or replace becomes our property.

10. **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. reach agreement with you;

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

11. **Abandonment of Property**. We need not accept any property abandoned by any **insured**.

12. **Mortgage Clause**. The word "mortgagee" includes trustee.

    a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

        (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

        (2) pays any premium due under this policy on demand if you have neglected to pay the premium;

        (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

    d. If we pay the mortgagee for any loss and deny payment to you:

        (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

        (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee**. We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Intentional Acts**. If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - BUSINESS LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury**, **personal injury**, or **property damage** to which this coverage applies, caused by an **occurrence**, and which arises from the ownership, maintenance, or use of the **insured premises**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

9

FORM 3

SF.BATES_000012

The total limit of the Company's liability for all **occurrences** in any one policy year shall not exceed the annual aggregate limit shown in the **Declarations** for Coverage L - Business Liability.

**COVERAGE M - PREMISES MEDICAL PAYMENTS**

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury** which arises out of a condition on the **insured premises** or for which the **insured** is provided **bodily injury** liability coverage under this policy. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services.

## SECTION II - EXCLUSIONS

1. **Coverage L - Business Liability** and **Coverage M - Premises Medical Payments** do not apply to:

   a. **bodily injury**, **personal injury**, or **property damage**:

      (1) which is either expected or intended by an **insured**; or

      (2) to any person or property which is the result of willful and malicious acts of an **insured**;

   b. **bodily injury**, **personal injury**, or **property damage** arising out of the rendering or failing to render professional services;

   c. **bodily injury**, **personal injury**, or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

      (1) aircraft;

      (2) any **motor vehicle** owned or operated by, or rented or loaned to any **insured**; or

      (3) any watercraft owned or operated by, or rented or loaned to any **insured**;

   d. **bodily injury**, **personal injury**, or **property damage** arising out of:

      (1) the entrustment by any **insured** to any person;

      (2) the negligent supervision by any **insured** of any person;

      (3) any liability statutorily imposed on any **insured**; or

      (4) any liability assumed through an unwritten or written agreement by any **insured**;

   with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** (or any other motorized land conveyance) which is not covered under Section II of this policy;

   e. **bodily injury**, **personal injury**, or **property damage** caused directly or indirectly by war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

   f. **bodily injury**, **personal injury**, or **property damage** arising out of premises, other than the **insured premises**, or to liability assumed by the **insured** under any **contract** or agreement relating to such premises;

   g. to **bodily injury** or **property damage** for which the **insured** may be held liable:

      (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages; or

      (2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed:

         (a) by, or because of the violation of any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverages; or

         (b) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or

SF.BATES_000013

which causes or contributes to the intoxication of any person;

but part (b) of this exclusion does not apply with respect to liability of the **insured** or his indemnitee as an owner or lessor described in (2) above;

h.  the legal liability of any **insured** to:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**;

(2) any person who makes a claim because of **bodily injury** or **property damage** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**;

i.  **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, spill, release or escape of pollutants:

(1) at or from premises owned, rented or occupied by the **named insured**;

(2) at or from any site or location used by or for the **named insured** or others for the handling, storage, disposal, processing or treatment of waste;

(3) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the **named insured** or any person or organization for whom the **named insured** may be legally responsible; or

(4) at or from any site or location on which the **named insured**, employee or any contractor or subcontractor working directly or indirectly on behalf of the **named insured** is performing operations:

(a) if the pollutants are brought on or to the site or location in connection with such operations; or

(b) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Subparagraphs (1) and (4)(a) of this exclusion do not apply to **bodily injury** or **property damage** caused by heat, smoke or fumes which result from a hostile fire or poisoning or asphyxiation due to escape of fumes from a furnace or flue because of a malfunction of the furnace or flue.

In addition, Coverage L and Coverage M do not apply to loss, cost or expense arising out of any governmental direction or request that the **named insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants;

As used in this exclusion:

"hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

"pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

"waste" includes materials to be recycled, reconditioned or reclaimed.

j.  **bodily injury** to an employee of the **insured** arising out of and in the course of employment by the **insured** or the spouse, child, parent, brother or sister of that employee as a consequence of employment of that employee by the **insured**.

This exclusion applies:

(1) whether the **insured** may be liable as an employer or in any other capacity; and

FORM 3

SF.BATES_000014

(2) to any obligation to share damages with or repay someone else who must pay damages because of the injury;

k. **bodily injury** to you or any **insured** and if residents of your household:

(1) your relatives;

(2) any other person under the age of 21 who is in the care of an **insured**.

2. **Coverage L - Business Liability**, does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten **contract** or agreement, or by **contract** or agreement in connection with any business of the **insured** other than the rental of the **insured premises**;

b. **property damage** to property owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of the **insured**;

d. **bodily injury** or **personal injury** to any person eligible to receive any benefits required to be provided or voluntarily provided by the **insured** under any workers' or workmen's compensation, non-occupational disability or occupational disease law;

e. **bodily injury**, **personal injury**, or **property damage** for which any **insured** under this policy is also an **insured** under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

f. **personal injury** caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any **insured**;

g. **personal injury** sustained by any person as a result of an offense directly or indirectly related to the employment of the person by the **insured**;

h. **personal injury** arising out of any publication or utterance in item b. of the definition of **personal injury**:

(1) if the first injurious publication or utterance of the same or similar material by or on behalf of the **insured** was made prior to the effective date of this insurance; or

(2) concerning any business or services made by or at the direction of any **insured** with knowledge of the falsity;

i. **property damage** or **personal injury** to premises you sell, give away or abandon, if the **property damage**, or **personal injury** arises out of those premises.

3. **Coverage M - Premises Medical Payments** does not apply to **bodily injury**:

a. to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers' or workmen's compensation, non-occupational disability or occupational disease law;

b. from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

c. to any **insured**, any tenant or other person regularly residing on the **insured premises** or to any employees of any of the foregoing if the **bodily injury** arises out of or in the course of their employment;

d. to any person engaged in maintenance and repair of the **insured premises** or alteration, demolition or new construction at such premises.

FORM 3

SF.BATES_000015

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

   a. expenses incurred by us and costs taxed against any **insured** in any suit we defend;

   b. premiums on bonds required in a suit defended by us, but not for bond amounts greater than the limit of liability for Coverage L. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses incurred by any **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by any **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

## SECTION II - CONDITIONS

1. **Limit of Liability**. The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense payable for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance**. This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss**. In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against any person or organization who may be liable to any **insured**;

      (3) the conduct of suits and attend hearings and trials;

      (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. the **insured** shall not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M - Premises Medical Payments**. The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

FORM 3

SF.BATES_000016

c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M - Premises Medical Payments**. Payment under this coverage is not an admission of liability by any **insured** or us.

6. **Suit Against Us**. No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have any right to join us as a party to any action against any **insured**. Further, no action with

respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of any Insured**. Bankruptcy or insolvency of any **insured** shall not relieve us of any of our obligations under this policy.

8. **Other Insurance - Coverage L - Business Liability**. This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period**. This policy applies only to loss under Section I or **bodily injury**, **personal injury**, or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud**. This policy is void as to you and any other **insured**, if you or any other **insured** under this policy have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause**. If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions**. A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation**.

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at

your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice:

   (1) When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy or if the risk has changed substantially since the policy was issued. We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request can-

FORM 3

SF.BATES_000017

cellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal**. We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment**. Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation**. Any **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, any **insured** shall sign and deliver all related papers and cooperate with us in any reasonable manner.

Subrogation does not apply under Section II to Premises Medical Payments.

9. **Death**. If any person named in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law**. When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

11. **Inspection and Audit**. We shall be permitted but not obligated to inspect your property and operations at any time. However, our right to inspect or our actual inspection and report shall not constitute an undertaking on your behalf or for your benefit or the benefit of others to determine or warrant that the property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

We may examine and audit your books and records at any time during the policy period and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

## OPTIONAL POLICY PROVISIONS

Each Optional Provision applies only as indicated in the **Declarations** or Extension Certificate.

**Option AI - Named Additional Insured**. The definition of **insured** in this policy includes the person or organization named in the **Declarations** as an additional insured or whose name is on file with us with respect to:

1. Section I: **Coverage A - Dwelling**;

2. Section II: **Coverage L - Business Liability** and **Coverage M - Premises Medical Payments** but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to any employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option RC - Replacement Cost - Contents**. Under **SECTION I - CONDITIONS**, items a. and b. of the Loss Settlement Condition are replaced with the following:

a. (1) Fences and the following personal property at actual cash value at the time of loss:

(a) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(b) articles whose age or history contribute substantially to their value including, but not lim-

FORM 3

SF.BATES_000018

ited to, memorabilia, souvenirs and collectors items;

(c) property not useful for its intended purpose.

(2) We will not pay:

(a) an amount exceeding that necessary to repair or replace the property; or

(b) an amount in excess of the limit of liability applying to the property.

b. Other personal property, carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, and other structures (except fences) that are not buildings under Dwelling Extension, at the cost of repair or replacement

at the time of loss without deduction for depreciation, subject to the following:

(1) We will pay the cost of repair or replacement but not exceeding the smallest of the following amounts:

(a) replacement cost at time of loss;

(b) the full cost of repair;

(c) any special limit of liability described in the policy; or

(d) any applicable Coverage A or Coverage B limit of liability.

(2) Loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Lynne M. Yaxell*          Secretary          *Michael T. Tipsord*          President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

16                                                    FORM 3

SF.BATES_000019

## FE-3650 ACTUAL CASH VALUE ENDORSEMENT

The following is added to any provision which uses the term "actual cash value":

Actual cash value means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation.  For this calculation, all components of this estimated cost including, but not limited to:

1.   materials, including any tax;

2.   labor, including any tax; and

3.   overhead and profit;

are subject to depreciation.

The depreciation deduction may include such considerations as:

1.   age;

2.   condition;

3.   reduction in useful life;

4.   obsolescence; and

5.   any pre-loss damage including wear, tear, or deterioration;

of the damaged part of the property.

All other policy provisions apply.

FE-3650

©, Copyright, State Farm Mutual Automobile Insurance Company, 2015

SF.BATES_000020

## FE-5610 RENTAL DWELLING POLICY ENDORSEMENT

### SECTION I – ADDITIONAL COVERAGES

The following is added:

12. **Tear Out.** If a Loss Insured to Coverage A property is caused by water or steam escaping from a system or appliance, we will also pay the reasonable cost you incur to tear out and replace only that particular part of the building necessary to gain access to the specific point of that system or appliance from which the water or steam escaped. We will not cover the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

### SECTION I – LOSSES NOT INSURED

Item 1.h. is replaced by the following:

h. continuous or repeated seepage or leakage of water or steam from a:

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time;

### SECTION I – CONDITIONS

The following language under **Loss Settlement**:

We will pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed.

You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

wherever located in the policy or any endorsement attached to the policy, is deleted in its entirety and replaced by:

Until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the building, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the building;

When the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the building, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less; and

To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the building within two years after the date of loss, and notify us within 30 days after the work has been completed.

### SECTION I AND SECTION II – CONDITIONS

Item 8. is replaced by the following:

8. **Subrogation and Reimbursement.**

a. **Subrogation.**

(1) Applicable to SECTION I – YOUR PROPERTY:

If any **insured** to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That **insured** must do everything necessary to secure our rights and must do nothing after loss to impair them. But an **insured** may waive in writing before a loss all rights of recovery against any person.

(2) Applicable to SECTION II – YOUR LIABILITY:

If any **insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. An **insured** must do nothing after loss to impair them. At our request, an **insured** will bring suit or transfer those rights to us and help us enforce them.

Subrogation does not apply under Section II to Premises Medical Payments.

b. **Reimbursement.**

If we make payment under this policy and any **insured** to or for whom we make payment recovers or has recovered from another person or organization, then the **insured** to or for whom we make payment must:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

SF.BATES_000021

     (1)  hold in trust for us the proceeds of any recovery; and

     (2)  reimburse us to the extent of our payment.

The following condition is added:

  12.  **Change of Policy Address.**  We may change the named insured's policy address as shown in the **Declarations** and in our records to the most recent address provided to us by:

     a.  you; or

FE-5610

     b.  the United States Postal Service.

**OPTIONAL POLICY PROVISIONS**

**Option RC – Replacement Cost – Contents**

Item b. (2) is replaced by the following:

     (2)  Loss to property not repaired or replaced within two years after the loss will be settled on an actual cash value basis.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

SF.BATES_000022

## FE-5624 ACTUAL CASH VALUE ROOF COVERAGE ENDORSEMENT

The following is added to **SECTION I – CONDITIONS**, **Loss Settlement**:

Loss to roof surfacing will be settled at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace.  Any replacement cost provision contained in this policy is deleted with respect to roof surfaces.

All other policy provisions apply.

FE-5624

©, Copyright, State Farm Mutual Automobile Insurance Company, 2013

SF.BATES_000023

## FE-5676 SUIT AGAINST US (Oklahoma)

This endorsement modifies insurance provided under the following:
RENTAL DWELLING POLICY
RENTAL CONDOMINIUM UNITOWNERS POLICY
MANUFACTURED HOME POLICY
FARM/RANCH POLICY
FARM/RANCH POLICY – PROPERTY/LIABILITY FORM

**SECTION I – CONDITIONS**, **Suit Against Us**, is replaced by the following:

**Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage. However, if the cause of loss or damage is burglary, theft, larceny, robbery, forgery, fraud, vandalism, malicious mischief, confiscation, wrongful conversion, disposal or concealment, the action must be started within two years from the time the cause of action accrues.

All other policy provisions apply.

FE-5676

©, Copyright, State Farm Mutual Automobile Insurance Company, 2017

SF.BATES_000024

FE-5722

## FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT

**DEFINITIONS**

In all policies, the following definition is added:

"**fungus**" means any type or form of fungi, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**SECTION I - LOSSES NOT INSURED**

In SPECIAL FORM 3 policies only, item 1.j. is replaced by the following:

j.  rust, or wet or dry rot;

The following is added to item 2. of Losses Not Insured in SPECIAL FORM 3 policies or under Losses Not Insured in BASIC MODIFIED REPLACEMENT COST - FORM 1 policies:

**Fungus**, including the growth, proliferation, spread or presence of **fungus**, and including:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by **fungus**;

(2) any remediation of **fungus**, including the cost or expense to:

(a) remove or clean the **fungus** from covered property or to repair, restore or replace that property;

(b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**;

(c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the **fungus**; or

(d) remove any property to protect it from the presence of or exposure to **fungus**;

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

**SECTION II - EXCLUSIONS**

In all policies, the following exclusion is added to item 1.:

l.  any:

(1) **bodily injury**, **personal injury**, or **property damage** arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any **fungus** at or from any source or location; or

(2) loss, cost or expense arising out of any:

(a) request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate or dispose of or in any way respond to or assess the effects of **fungus**; or

(b) claim or suit for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of **fungus**.

All other policy provisions apply.

FE-5722

SF.BATES_000025

## FE-5801 MANDATORY REPORTING ENDORSEMENT

The following **CONDITION** is added:

**Duties of an Injured Person – Coverage M – Mandatory Reporting.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

a.  provide us with any required authorizations; and

b.  submit to us all information we need to comply with state or federal law.

FE-5801

©, Copyright, State Farm Mutual Automobile Insurance Company, 2009

SF.BATES_000026

FE-7540
(9/89)

## DEBRIS REMOVAL ENDORSEMENT

**SECTION I - ADDITIONAL COVERAGES**

**Debris Removal** is replaced by the following:

1. **Debris Removal**. We will pay the reasonable expenses you incur in the removal of debris of covered property when coverage is afforded for the peril causing the loss. This expense is included in the limit applying to the damaged property.

   We will pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has damaged property covered under Coverage A.

   When the amount payable for the property damage plus the debris removal expense exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense.

**All other policy provisions apply.**

FE-7540
(9/89)

SF.BATES_000027

## BUILDING ORDINANCE OR LAW COVERAGE ENDORSEMENT
### (25% of Coverage A)

When a structure covered under **Coverage A - Dwelling** is damaged by a Loss Insured, our payment for the damage will be based on any ordinance or law in effect at the time of the loss regulating the construction or repair of the damaged portion of the structure.

If, as a result of the Loss Insured, the undamaged portion of the damaged structure requires demolition due to the enforcement of any ordinance or law in effect at the time of the loss, we will also pay for the actual cash value, the actual cost of demolition and the actual cost of debris removal of the undamaged portion of the structure.

The limit of insurance provided by this endorsement will not exceed 25% of the **Coverage A** limit listed in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance.

All other policy provisions apply.

FE-7571
(4/91)

SF.BATES_000028

FE-8236.2
Page 1 of 1

## FE-8236.2 AMENDATORY ENDORSEMENT (Oklahoma)

### SECTION I - CONDITIONS

Condition 2. **Your Duties After Loss**.

The phrase "within 60 days after the occurrence" in paragraph e. is changed to read "within 60 days after we request".

Condition 12. **Mortgage Clause**.

The following is added:

> If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.

> If you fail to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If we shall claim that no liability existed as to the mortgagor or owner, we shall to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or we may pay off the mortgage debt and require an assignment thereof and of the mortgagee. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing.

The following Condition is added to **SECTION I – CONDITIONS**:

> **Our Duties After Loss**. It will be our duty, after receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to you within ninety (90) days of receipt of the proof of loss.

### SECTION II – EXCLUSIONS

The following is added to exclusion 1.i.:

> This exclusion does not apply to pollution which occurs quickly and abruptly and is accidental.

All other policy provisions apply.

FE-8236.2

©, Copyright, State Farm Mutual Automobile Insurance Company, 2013

SF.BATES_000029