IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

THOMAS H. BATES,                )
                                )
    Plaintiff,                  )
                                )
    -vs-                        )   Case No. CIV-21-705-JD
                                )
STATE FARM FIRE                 )
AND CASUALTY COMPANY,           )
                                )
    Defendant.                  )

\* \* \* \* \* \* \*

TRANSCRIPT OF PROCEEDINGS

HAD ON SEPTEMBER 20, 2022, AT 9:30 A.M.

BEFORE THE HONORABLE JODI W. DISHMAN

U.S. DISTRICT JUDGE, PRESIDING

\* \* \* \* \* \* \*

MOTION FOR PARTIAL SUMMARY JUDGMENT

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

CHRISTINA L. CLARK, RPR, CRR
United States Court Reporter
200 N.W. Fourth Street, Suite 5419
Oklahoma City, Oklahoma  73102
christina_clark@okwd.uscourts.gov - ph(405)609-5123

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

    Mr. Robert Bradley Miller
    Ms. Shawna L. Landeros
    MILLER JOHNSON JONES ANTONISSE & WHITE, PLLC
    500 N.W. 6th Street
    Suite 300
    Oklahoma City, Oklahoma 73102

ON BEHALF OF THE DEFENDANT:

    Mr. Lance E. Leffel
    Ms. Paula M. Williams
    Ms. Taylor J. Freeman Peshehonoff
    GABLE & GOTWALS
    499 W. Sheridan Ave.
    BOK Park Plaza
    Suite 2200
    Oklahoma City, Oklahoma 73102

**P R O C E E D I N G S**

(The following proceedings were had September 20, 2022, with Court, counsel present via telephone:)

THE COURT: We are here in the Western District of Oklahoma in Case No. 21-CV-705, Thomas H. Bates vs. State Farm Fire and Casualty Company.

Good morning to you all. Can counsel please make their appearances for the record.

MR. MILLER: Brad Miller and Shawna Landeros for the plaintiffs.

MR. LEFFEL: Lance Leffel, Taylor Peshehonoff, and Paula Williams for State Farm.

THE COURT: Thank you all.

Before me is Defendant State Farm Fire and Casualty Company's -- which I will call State Farm -- motion for partial summary judgment, which is at Docket No. 43, which I will refer to as the motion.

Plaintiff Thomas H. Bates, or Bates, has responded at Doc No. 45, which I will refer to as the "response," and State Farm has filed a reply at Docket No. 47.

Upon my review of your briefs and case, and knowing that you all have an upcoming trial set for November 1, 2022, and upcoming trial submission deadlines, I decided that the fastest way to get you all a ruling would be for me to read my ruling into the record. This still gets my ruling and

1  reasoning into the record, and I will attempt to give you the
2  same analysis and thoroughness that I would if I were to issue
3  a written order.
4       The transcript will contain my rationale and analysis,
5  and then the short order and minute sheet that follows this
6  hearing will memorialize my rulings and contain full citations
7  for any authorities I rely upon.
8       Does either party object to proceeding this way?  And I
9  want to start with the movant here, which is Defendant State
10 Farm.
11           MR. LEFFEL:  No objection, your Honor.
12           THE COURT:  Okay.
13      Turning to plaintiff's counsel on behalf of Thomas Bates,
14 any objection to proceeding this way?
15           MR. MILLER:  No, Judge.
16           THE COURT:  Thank you all.
17      A few ground rules for this hearing.  First, for
18 citations, I will give you pinpoint citations for any cases or
19 statutes, and the full citations for cases or statutes will
20 appear in the minute sheet.
21      Second, if I am citing to a district court docket entry,
22 I will try to give you the docket number for the district
23 court docket and I will try to use ECF page numbering, which
24 means the ECF stamp across the top of the filing.  For all
25 citations, if it is what I've just stated for the prior

1  sentence, I will use Id.
2       Third, for readability, I may make slight alterations to
3  quotations and may not indicate I am bracketing, inserting
4  ellipses, or quoting.  I will tell you what authority I rely
5  on for any legal propositions or for my analysis, but I find
6  that the transcript gets messy and too wordy if I try to tell
7  you every alteration I have made.
8       Finally, I am issuing a ruling on the briefs and summary
9  judgment submissions by the parties, and I have not ordered
10 oral argument, consistent with my prerogative under Local
11 Civil Rule 78.1.  So I will not take oral argument.
12      Does either side have questions before we begin?
13      State Farm as the movant.
14           MR. LEFFEL:  No questions, your Honor.
15           THE COURT:  Counsel for Bates?
16           MR. MILLER:  No questions.
17           THE COURT:  Okay.  Starting with the background:
18 This is a bad faith and breach of contract action arising out
19 of State Farm's denial of coverage for damage to the roof of a
20 rental home owned by plaintiff, Thomas Bates.
21      In February 2021, Bates submitted a claim under his State
22 Farm Rental Dwelling Policy, which insured losses for hail
23 damage to the roof but not for wear and tear.  On February 23,
24 2021, State Farm claims adjuster, Tresa Dunnican-Jacome,
25 conducted an inspection of the roof.  In her inspection notes,

Dunnican-Jacome wrote that she discovered hail damage to the home's garage door, mailbox, window beading, and a few window screens. Doc No. 43-4 at pages 5 through 6, which is also SF Bates 50 through 51.

Regarding the roof, she further wrote: "Field shingles exhibit large areas of expensive granule loss and wear. Fiberglas mat was exposed on most of the shingle edges. Hail damage was not observed to the ridge or field shingles. Hail damage was observed to the pipe jacks, vent caps, and power vents." *Id* at 6, which is SF Bates 51.

Based on Dunnican-Jacome's inspection, State Farm concluded that there was no hail damage to the roof shingles. So while it did issue payment for the other areas Dunnican-Jacome found were damaged by hail, it did not cover any damage to the roof shingles.

Jonathan Marks from Aegis Roofing was present during Dunnican-Jacome's inspection. The two give differing accounts of what happened during the inspection and of their conversation while on the roof.

According to Dunnican-Jacome, she told Marks that she saw only wear and tear, not hail damage; that Marks identified shingles he thought were damaged by hail, and that when she disagreed with him, she told Marks that she would send pictures to her supervisor, Jacqueline Draper, to get another opinion.

1        Dunnican-Jacome sent a text message to Draper asking,
2   "What do you think about these?  Hail?  Or wear?" Doc No. 43-9
3   at page 9, which is also Bates Stamp 1597.  After some
4   conversation, Draper responded, "I don't see anything in the
5   photos you sent," *Id*.  This text message conversation was not
6   documented in the claim file for Bates' claim.
7        Marks also recalled showing Dunnican-Jacome spots on the
8   roof he thought were damaged by hail, but his account of her
9   response is different.  According to Marks, Dunnican-Jacome
10  stated that the damage he showed her might have been caused by
11  hail but that Draper would not agree and would not cover the
12  damage to the shingles.
13       Marks testified in his deposition that he remembered this
14  exchange well.  He recounted:  "And somewhere along the line,
15  I said, 'Well, what are you looking for?  What exactly are you
16  looking for?'
17       "She said, 'I'm looking for a hail impact that breaks
18  the' -- and I don't know if she used the word 'break' but she
19  did reference penetrate, break, split, crack, something, the
20  mat of the shingle.
21       "And I immediately went over to a hail impact, one of
22  hundreds, and pulled up a shingle where there was an obvious
23  break in the mat, and I showed it to her.  And I said, 'Do you
24  mean like this?'  Those were my exact words.
25       "I do remember that distinctly because I also remember

1  her exact response, and it was, 'That might be hail.'"

2      Doc No. 45-1, Marks' deposition at ECF pages 7 through 8,
3  which is deposition page 42 through 43, starting around line
4  20 on deposition page 42 and continuing to line 8 on
5  deposition page 43.

6      The next day, Marks made a note of his recollection of
7  the inspection.  "Inspected with Adjuster Theresa [sic].
8  While she acknowledged the damage looks like hail, she said
9  her boss, Jacqueline, will not agree and will not pay for it.
10 Theresa called me back after she forwarded photos and said
11 Jacqueline indeed said the damage is wear and tear.  Thanked
12 Theresa for following up and said we will be in touch."

13     ECF -- I'm sorry -- Doc No. 45-2 at ECF page 1, Marks'
14 note dated 2/24/2021.

15     A few weeks later, Marks contacted State Farm requesting
16 a second roof inspection; he attached photos of the roof to
17 his e-mail correspondence.  Dunnican-Jacome and Draper then
18 reviewed Marks' photos and concluded that he had not provided
19 any new evidence of hail damage.  State Farm thus denied the
20 request for a second inspection.

21     Next, the legal standard:  Summary judgment is proper if
22 the movant shows that there is no genuine dispute as to any
23 material fact and the movant is entitled to judgment as a
24 matter of law.  That's Federal Rule of Civil Procedure 56(a).
25     An issue of fact is material if, under the substantive

1   law, it is essential to the proper disposition of the claim.
2   *Savant Homes*, a 2016 Tenth Circuit case at page 1137, quoting
3   *Becker vs. Bateman* at page 1022, which is a 2013 Tenth Circuit
4   case.
5       A dispute about a material fact is genuine if a rational
6   trier of fact could find in favor of the nonmoving party on
7   the evidence presented.  *Fassbender*, a 2018 Tenth Circuit case
8   at page 882.
9       In applying this standard, the Court views the evidence
10  and draws all reasonable inferences therefrom in the light
11  most favorable to the party opposing summary judgment.  That
12  comes from *Farm Credit Bank of Wichita*, a 2000 Tenth Circuit
13  case at page 1148.
14      Turning to the discussion or analysis:  State Farm argues
15  that it is entitled to summary judgment on the bad faith claim
16  because it had a legitimate basis for its partial denial of
17  Bates' claim and on the issue of punitive damages because
18  Bates has not provided evidence sufficient to support an award
19  of punitive damages.  State Farm, however, did not move for
20  summary judgment on Bates' breach of contract claim.
21      Starting with the bad faith claim:  Under Oklahoma law,
22  an insurer must deal fairly and in good faith with its
23  insured; a violation of that duty gives rise to an action in
24  tort for consequential and, potentially, punitive damages.
25  That's the *Christian* case, 1977 Oklahoma Supreme Court case at

1  page 904.
2       The essence of a bad faith claim is the insurer's
3  unreasonable bad faith conduct.  And if there is conflicting
4  evidence from which different inferences may be drawn
5  regarding the reasonableness of the insurer's conduct, then
6  what is reasonable is always a question to be determined by
7  the trier of fact by a consideration of the circumstances in
8  each case.  That's the *Badillo* case at page 1093, Oklahoma
9  Supreme Court 2005.
10      Courts analyze the kind of bad faith claim Bates asserts
11 here in two steps.  See the *Shotts* case, a 2019 Tenth Circuit
12 case at page 1315.  First, the Court assesses whether there is
13 a legitimate dispute between the parties regarding coverage of
14 the submitted insurance claim.
15      If there is a legitimate dispute, no reasonable inference
16 of bad faith arises.  That comes from *Timberlake*, Tenth
17 Circuit 1995 at page 344, quoting the *Oulds* case, Tenth
18 Circuit 1993 at page 1436.
19      Because the denial of a claim based upon a legitimate
20 dispute does not imply bad faith as a matter of law, judgment
21 as a matter of law is to be granted to the insurer unless the
22 insured produces specific evidence of bad faith.  That's from
23 *Oulds* at page 1442.
24      Therefore, if the Court finds that there is a legitimate
25 dispute between the parties, it proceeds to the second step of

1  its analysis and must determine whether the plaintiff offered
2  specific additional evidence demonstrating bad faith.  That's
3  from *Shotts* at page 1315, citing *Bannister*, a 2012 Tenth
4  Circuit case at pages 1128 through 32.
5       If, upon analyzing the plaintiff's evidence, the Court
6  determines that there is sufficient evidence demonstrating bad
7  faith, it will deny summary judgment and send the case to a
8  jury.  That's *Bannister* at page 1128.  This framework is
9  summarized well by the Tenth Circuit in *Shotts* at page 1315.
10      The undisputed facts here present a legitimate dispute.
11 The fact that a reasonable jury could find in favor of the
12 insurer based on all facts known or that should have been
13 known by the insurer when it denied a claim is strong evidence
14 that a dispute is legitimate.  That comes from *Oulds* at 1442.
15      Bates contends that his roof was damaged by hail.  State
16 Farm, relying on the inspection of the roof by Dunnican-Jacome
17 and the second opinion of Draper, who reviewed photos of the
18 roof, partially denied Bates' claim.
19      State Farm concluded that the damage to the roof's
20 shingles was the result of wear and tear rather than hail.
21 Bates' rental dwelling policy covered damage for hail but not
22 for wear and tear.  This represents a legitimate coverage
23 dispute.
24      Having found a legitimate dispute between the parties,
25 the Court must now consider whether Bates offers additional

1   evidence to demonstrate bad faith.  After reviewing all the
2   materials provided by the parties, and after construing all
3   facts in the light most favorable to Bates, the Court finds
4   that Bates has provided additional evidence demonstrating bad
5   faith.
6         Specifically, the Court finds a genuine dispute of
7   material fact regarding whether State Farm's investigation was
8   reasonably appropriate under the circumstances.
9         According to *Buzzard*, insurers must conduct
10  investigations reasonably appropriate under the circumstances.
11  And that is a quote from page 1109.  An investigation does not
12  meet this standard if, number one, the manner of investigation
13  hints at a sham defense or otherwise suggests that material
14  facts were overlooked; or, number two, the insurer
15  intentionally disregarded undisputed facts supporting the
16  insured's claim.  That comes from *Sims*, which is a 2006 Tenth
17  Circuit case, at page 891, citing *Oulds* at page 1442.
18        Bates argues that State Farm's investigation was not
19  reasonably appropriate under the circumstances.  There is
20  evidence indicating that at the time of the roof inspection
21  here State Farm did not authorize Dunnican-Jacome to herself
22  determine that a roof was damaged by hail; instead, she had to
23  send pictures to Draper to verify and receive Draper's
24  approval to cover a roof for hail damage.
25        State Farm's procedures, however, require a tactile

1  examination of the shingle to assess hail damage, something
2  Draper could not perform by text message.  This, when combined
3  with Marks' testimony and the contemporaneous note covered in
4  the background facts, could allow a reasonable jury to find
5  that the result of the investigation was predetermined by
6  State Farm or that a material fact supporting Bates' claim --
7  i.e., evidence of what might be hail -- was overlooked.
8      Dunnican-Jacome's statement that the spot Marks showed
9  her "might be hail" damage but that Draper would not agree and
10 would not pay for it suggests that State Farm had already
11 decided that at the time the investigation commenced it would
12 not cover the damage to the roof's shingles.
13     The facts here do not simply boil down to a difference of
14 opinion or disagreement on coverage.  Bates provides
15 sufficient evidence, specifically in the form of Marks'
16 testimony and note and testimony of Draper and
17 Dunnican-Jacome, demonstrating bad faith.
18     The evidence relating to the inspection and investigation
19 gives rise to different inferences regarding the
20 reasonableness of State Farm's conduct.  Therefore, this claim
21 goes to a jury.
22     State Farm relies heavily on *Lopez vs. Farmers*, 2011
23 Westlaw 1807158, Western District 2011, which is not binding
24 on me as another district court decision.  Regardless, *Lopez*
25 is factually distinguishable because, although the plaintiff

1 in *Lopez* argued that the insurer had a preconceived notion
2 regarding the cause of damage to her roof, she failed to
3 provide supporting evidence that the outcome of the
4 investigation might have been predetermined.  And for that I
5 cite *3 for the page.
6      In contrast, and as discussed, Bates has provided
7 evidence.  The Court, therefore, finds that summary judgment
8 on the bad faith claim is inappropriate.
9      Moving on to the issue of punitive damages.  An insurer's
10 breach of the duty of good faith and fair dealing does not
11 necessarily mean it is liable for punitive damages.  A jury
12 may award punitive damages if it finds by clear and convincing
13 evidence that an insurer has recklessly disregarded its duty
14 to deal fairly and act in good faith with its insured or
15 intentionally and with malice breached its duty to deal fairly
16 and act in good faith with its insured.  That's Title 23 of
17 the Oklahoma Statutes Sections 9.1(B)(2) and (C)(2).
18      When reviewing claims for punitive damages at the summary
19 judgment stage, the Court's role is to determine whether any
20 competent evidence exists which would warrant submission of
21 the question of punitive damages to the jury.  That comes from
22 *Estrada*, Oklahoma Supreme Court 2011 at page 504.
23      After reviewing the evidence and drawing all reasonable
24 inferences in Bates' favor, the Court finds that at this stage
25 of the litigation the genuine disputes of material fact

1  related to Bates' bad faith claim also preclude summary
2  adjudication of the issue of punitive damages.
3      As discussed earlier, the Court finds that evidence
4  submitted by Bates gives rise to a reasonable inference that
5  State Farm's investigation had a predetermined result that the
6  roof's shingles were not damaged by hail and would not be
7  covered under the policy.  Bates, therefore, has presented
8  evidence that is sufficient, although minimally so, to support
9  an inference of reckless disregard by State Farm.
10     In summary and in conclusion, genuine disputes of
11 material fact preclude granting summary judgment to State Farm
12 on Bates' bad faith claim and on the issue of punitive
13 damages.
14     For the reasons stated today, the Court is denying State
15 Farm's motion for partial summary judgment found at Docket
16 No. 43.  I will enter a short order memorializing this
17 conclusion and also a minute sheet.
18     I do not want any oral argument, but are there any
19 questions or clarifications needed on the Court's ruling?
20     Mr. Leffel?
21         MR. LEFFEL:  No questions, your Honor.  Thank you.
22         THE COURT:  Mr. Miller?
23         MR. MILLER:  No questions, Judge.  Thank you.
24         THE COURT:  I want to discuss scheduling, and I
25 don't see any reason we need to tie up our court reporter on

```
 1   that issue unless there is something further that either side
 2   wants to make a part of the transcript.
 3         Mr. Miller?
 4               MR. MILLER:  No, Judge.
 5               THE COURT:  Mr. Leffel.
 6               MR. LEFFEL:  Nothing further, your Honor.
 7               THE COURT:  Thank you.
 8         We are off the record.
 9
10               (Proceedings concluded at 9:58 a.m.)
11
12                  CERTIFICATE OF OFFICIAL REPORTER
13   I, Christina L. Clark, Federal Official Realtime Court
14   Reporter, in and for the United States District Court for the
15   Western District of Oklahoma, do hereby certify that pursuant
16   to Section 753, Title 28, United States Code that the
17   foregoing is a true and correct transcript of the
18   stenographically reported proceedings held in the
19   above-entitled matter and that the transcript page format is
20   in conformance with the regulations of the Judicial Conference
21   of the United States.
22         Dated this 12th day of October, 2022.
23
24                                    s/CHRISTINA L. CLARK_____
                                      Christina L. Clark, RPR, CRR
25
```