**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| THOMAS H. BATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-705-JD |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OBJECTION AND RESPONSE IN OPPOSITION
TO DEFENDANT'S TRIAL BRIEF**

In this case, Plaintiff alleges that State Farm breached its insurance policy and its duty of good faith and fair dealing by conducted an unreasonable investigation of his hail damage claim and underpaying same. This theory of liability is not novel or complex. Furthermore, the issues of "bad faith" and punitive damages were thoroughly briefed at the summary judgment stage. Finally, the relevant facts and law were discussed in the Pretrial Conference Order (Doc. 73) and in the jury instructions submitted by the parties (*e.g.,* Docs. 65, 68 & 72). Plaintiff therefore objects to Defendant's Trial Brief (Doc. 69) as being needlessly cumulative and wasting time. This is particularly true to the extent Defendant used its Trial Brief to rehash its motion for summary judgment.[1] *See also, e.g.,* Larsen, Navigating the Federal Trial § 1.44 (2022 ed.) ("A trial brief is not a dispositive motion" but merely "seeks to provide the judge with context—the procedural background, facts,

---

[1] Plaintiff adopts and incorporates his Response to Defendant's Motion for Summary Judgment (Doc. 45) by reference herein, as necessary to respond to those issues.

1

and law—to assist the judge in resolving issues or objections that may arise during the trial."). For these reasons, Plaintiff will only address the "new" issues raised in Defendant's Trial Brief, *to wit*:

1. That the damage to Plaintiff's roof was not covered because it "significantly pre-dat[ed] the policy period or reported date of loss" [*see* Trial Brief (Doc. 69) at pp. 2-3] and/or because Plaintiff did not provide "immediate notice to State Farm" [*see* id. at pp. 5-6]; and

2. That Plaintiff "has not suffered consequential damages" [*see* Trial Brief (Doc. 69) at pp. 12-13].[2]

**Evidence and argument not considered by State Farm in rendering its decision to deny Plaintiff's claim should not be permitted at trial.**

The sole reason provided by State Farm for denying Plaintiff's claim was that the damage to the shingles on the roof was not caused by hail, but by "wear, tear and deterioration." [Exhibit 1, 3/15/21 Denial Letter.] The ideas expressed in Defendant's Trial Brief that coverage was not available because the damage "significantly pre-dated the policy period or reported date of loss" or was not timely reported are post-claim rationalizations prohibited under Buzzard v. Farmers Ins. Co., 824 P.2d 1105 (Okla. 1991) and its progeny. Accordingly, the jury should not be permitted to hear these defenses.

---

[2] These issues are also discussed in motions in limine currently pending before the Court [*see* Pltf's MIL #1 (Doc. 71); Def's MILs #3 & 5 (Doc. 64)], further illustrating the redundancy of Defendant's Trial Brief. However, they were **not** raised in the Pretrial Conference Order, which is "the controlling document for trial." *See* Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002) (citing Fed. R. Civ. P. 16(e), *inter alia*). "As such, claims, issues, defenses, or theories of damages not included in the pretrial order are **waived**." Id. (emphasis added).

2

In any event, all of the damage to Plaintiff's roof occurred while he was insured with State Farm, such that it should have been covered. The evidence will establish:

1. Plaintiff's insurance policy with State Farm was in force continuously for over 10 years, from October 10, 2010 through February 4, 2021. [Exhibit 2, Def's Supp. Answer to Interrog. No. 4, and Exhibit 3 Def's Resp. to RFA No. 7.]

2. Jonathan Marks repaired the decking and replaced the shingles on Plaintiff's roof in 2013. [Exhibit 4, Marks depo., 34:10-17, 36:3-9.]

3. Marks found some evidence of hail damage on Plaintiff's roof in May of 2019, but the roof was not repaired at that time. [Exhibit 4, Marks depo., 24:11-25:6.]

4.  Marks found additional evidence of hail damage on Plaintiff's roof in January of 2021, which was attributed to a July 2020 hailstorm. [Exhibit 4, Marks depo., 26:15-28:12.] That hailstorm engendered 156 hail claims handled by Jacqueline Draper's Team alone. [Exhibit 5, Def's Supp. Answer to Interrog. No. 16.] There had also been several hailstorms over the property in the preceding three years. [Exhibit 6, Jacome depo., 211:12-212:13, 213:4-25.]

5. The July 2020 hail damage was reported to State Farm within a week of its discovery, on February 4, 2021. [Exhibit 7, Claim File at SF.BATES_000058.]

6. State Farm and Jonathan Marks disagreed about the cause of damage to the shingles. [*Compare, e.g.,* Exhibit 1, Denial Letter, *with* Exhibit 4, Marks depo., 41:14-43:8, 56:11-21.]

7. Notably, however, Jacqueline Draper's team at State Farm had been instructed to use the term "wear and tear" instead of "old hail damage." [Exhibit 8, Lanier depo.,

97:6-98:22, 123:24-124:22.] Draper's entire team had their authority to total a roof revoked because they "were paying for too many roof claims," although neither State Farm's policies nor training materials for adjusting hail claims changed at all. [Id. at 44:11-24.] In fact, Draper's team was not allowed to pay for hail damage to shingles without taking photographs and texting them to her for verification and approval, even if hail damage to the soft metals on the roof was undisputed, and even though State Farm's procedures required tactile examination of shingles. [*See, e.g.,* Exhibit 6, Jacome depo., 115:17-116:6; Exhibit 8, Lanier depo., 44:11-49:13.] Furthermore, the team was instructed to keep Draper's name out of the file and pass the coverage decision off as their own, even when they disagreed with it. [*See* Exhibit 8, Lanier depo., 78:2-79:15, 110:25-111:15, 120:9-17.]

8.  State Farm did not follow its own policies about when to grant a second inspection or how to timely communicate with insured. [*Compare, e.g.,* Exhibit 6, Jacome depo., 230:7-16, 232:11-18; *with* Exhibit 7, Claim File at SF.BATES_000048-50.]

9.  State Farm did not timely pay for Plaintiff's hail damage. [*Compare, e.g.,* Exhibit 7, Claim File at SF.BATES 000051 (noting hail damage to mailbox), *with* Exhibit 9, Explanation of Benefits.]

10. State Farm did not pay for any damage to the decking or shingles on Plaintiff's roof. [Exhibit 1, Denial Letter.]

Based on these facts, the jury can easily determine that State Farm breached its contract with Plaintiff **and** acted in bad faith. *See also, e.g.,* Vining v. Enterprise Fin. Group, 148 F.3d 1206, 1214 (10th Cir. 1998) ("[A] plaintiff may bring a bad faith cause of action even

though a legitimate defense to a breach of contract claim exists if the defendant did not actually rely on that defense to deny payment under the policy.").

**Plaintiff suffered bad-faith damages.**

Contrary to Defendant's representation in its Trial Brief, Plaintiff Thomas Bates testified that he <u>did</u> suffer damages related to State Farm's bad faith, as follows:

Q.      Okay. Mr. Bates, in the Petition that was filed in this case, it says that you've suffered embarrassment, anxiety, frustration, and emotional distress. Can you tell me about that?

A.      Only that it happens.

Q.      Okay. Did you say that it happens?

A.      To a certain degree.

[Exhibit 10, T. Bates depo., 24:7-14.] Counsel did not ask him to elaborate.

Gary Bates likewise testified that his father <u>did</u> suffer damages related to State Farm's bad faith, as follows:

Q       (By Ms. Landeros) When you were having conversations with your father and updating your father on what was going on with this claim, how was what was going on and State Farm's actions effecting the two of you?

A       I don't think it effected him a tremendous amount. I mean, I'm sure he -- I think **he worried more about me dealing with it** than him having to deal with it because he knew he wasn't -- he really wasn't dealing with it much. I mean, **he probably lost some sleep**. I have definitely lost lots of sleep. I grind my teeth at night to the point where my mouth is sore, including today. My blood pressure is up about 50 points every time that an issue comes up with State Farm. It was 172/92 or 177/92 today. And it will go back down probably tomorrow, I hope.

Q       Has State Farm's conduct in dealing with this claim led to anxiety?

A       Oh, yeah, **it's been very frustrating**.

Q       If you had any hope for what this lawsuit may accomplish apart from, you know, a successful resolution for you, what would you -- what would you hope would be accomplished by this lawsuit?

A       Well, I would hope they would stop doing it to all the other people that we believe they are probably doing it to. Deny, deny, deny. That they would actually try to be a good neighbor and take care of their clients.

[Exhibit 11, G. Bates depo., 79:9-80:12.] The fact that Thomas Bates was worried about his son, who was undeniably suffering physical symptoms of stress in dealing with State Farm, is clearly compensable. Moreover, the extent to which Plaintiff suffered as a result of State Farm's bad faith **and how to value those damages** is for the jury to decide. *See also, e.g.,* Bane v. Anderson, Bryant & Co., 1989 OK 140, 786 P.2d 1230, 1236 ("[W]here the issue of uncertainty of damages arises, the rule limiting recovery of uncertain damages applies to the fact of such damages, **not** their measure.") (emphasis added).

## Conclusion

Above premises considered, Plaintiff Thomas Bates respectfully requests this Court to disregard Defendant's Trial Brief and, instead, to use the Pretrial Conference Order entered in this case as its roadmap to trial.

MILLER JOHNSON JONES
ANTONISSE & WHITE, PLLC

By:    *s/Brad Miller*
Brad Miller, OBA #11437
J. Logan Johnson, OBA #12722
Shawna L. Landeros, OBA #31637
500 NW 6th Street, Suite 300
Oklahoma City, OK 73102-1219
Telephone: (405) 896-4388
Fax: (405) 609-2995
bmiller@mjjaw.com
ljohnson@mjjaw.com
slanderos@mjjaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

☑ I hereby certify that on October 21, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Lance E. Leffel, OBA #19511
Paula M. Williams, OBA #30772
GableGotwals
BOK Park Plaza
499 West Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
Telephone: (405) 235-5500
Fax: (405) 235-2875
*Attorneys for Defendant*

*s/Brad Miller*
Brad Miller

7