IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

THOMAS H. BATES,                )
                                )
        Plaintiff,              )
                                )
-vs-                            )        No. CIV-21-00705-JD
                                )
STATE FARM FIRE AND CASUALTY    )
COMPANY,                        )
                                )
        Defendant.              )

* * * * *

REMOTE VIDEOCONFERENCE DEPOSITION OF

TRESA DUNNICAN JACOME

TAKEN ON BEHALF OF THE PLAINTIFF

IN HOT SPRINGS, ARKANSAS

ON MARCH 25, 2022

COMMENCING AT 10:05 A.M.

* * * * *

INSTASCRIPT, L.L.C.
125 PARK AVENUE, SUITE LL
OKLAHOMA CITY, OKLAHOMA  73102
405.605.6880
schedule@instascript.net

REPORTED via Zoom BY:  BETH A. McGINLEY, CSR,

EXHIBIT

6

                         A P P E A R A N C E S

FOR THE PLAINTIFF:  (Via videoconference)

        BRAD MILLER
        SHAWNA L. LANDEROS
        MILLER, JOHNSON, JONES, ANTONISSE & WHITE
        500 N.W. 6th Street
        Suite 300
        Oklahoma City, Oklahoma  73102
        bmiller@mjjaw.com
        slanderos@mjjaw.com

FOR THE DEFENDANT:  (Via videoconference)

        LANCE E. LEFFEL
        PAULA M. WILLIAMS
        GABLE|GOTWALS
        BOK Park Plaza
        499 W. Sheridan Avenue
        Suite 2200
        Oklahoma City, Oklahoma  73102
        lleffel@gablelaw.com
        pwilliams@gablelaw.com

THE MONITOR:

        STEPHANIE MEANS
        instaScript, LLC

Tresa Dunnican-Jacome
3/25/2022                                                                Page: 3

TABLE OF CONTENTS

                                                              Page

TRESA DUNNICAN JACOME:

EXAMINATION BY MR. MILLER......................    6

REPORTER'S CERTIFICATE........................   249
JURAT.........................................   250
ERRATA SHEET..................................   251


        PLAINTIFF'S EXHIBITS, PREVIOUSLY MARKED:

3/18/22, ANTHONY MENDOZA Deposition:

No.                 Description                   Page

1    File                                         152
     (SF.BATES_000032-000367)

4C   Photograph                                   205

4D   Photograph                                   206


            PLAINTIFF'S EXHIBITS MARKED:

No.                 Description                   Page

3    Photographs                                  138
     (BATET00001589PROD-00001597PROD)

5C   Photograph                                   207

7    P&C File Claims Focus File                   219
     (BATET00001357PROD-00001588PROD)

S T I P U L A T I O N S

It is hereby stipulated and agreed by and between the parties hereto, through their respective attorneys, that the deposition of TRESA DUNNICAN JACOME may be taken on behalf of the PLAINTIFF on MARCH 25, 2022, in HOT SPRINGS, ARKANSAS, by Beth A. McGinley, a Certified Shorthand Reporter, pursuant to agreement and in accordance with the Federal Rules of Civil Procedure.

It is further stipulated and agreed by and between the parties hereto, through their respective attorneys, that all objections, except as to the form of the question and the responsiveness of the answer, are reserved until the time of trial, at which time they may be made with the same force and effect as if made at the time of the taking of this deposition.

*   *   *   *   *   *

But what I was wondering is, I think you also said that you had not actually ever gone out with Jacqueline Draper to receive any on-site training with her, right?

A    Correct.

Q    But that you had this idea to send her -- text her pictures and interact with her by text on the Bates roof, right?

A    Yes.

Q    That was your idea, you said?

A    Yes, sir.

Q    Now, had you done that before that day?

A    I don't know.

Q    Well, you --

A    I can't refer -- I have texted her a couple of pictures, but I can't remember when they were.

Q    Okay.  Well, do you remember, at least for a while after you started going out on your own, that you were supposed to have some interaction with her, or maybe someone else, to kind of review what you thought on these roof claims?

A    No.  What I remember is that if I were -- if I had found that there was what I thought was hail damage and I was going to replace a roof or part of a roof, I would need to text her so that she could look at it to

Tresa Dunnican-Jacome
3/25/2022                                                                 Page: 116

verify that it was --

Q    Okay.

A    -- in fact, hail damage.

Q    Is that the only kind of claim that you needed to have her approval of?

A    Yes, sir.

Q    And did that last the whole time you were with State Farm?

A    No, sir.

Q    When did that stop happening?

A    After she felt confident that I was accurately looking at the roofs --

Q    Sure, but --

A    -- on hail claims.

Q    When did that happen, though?

A    Probably, I don't know, three, four months --

Q    Okay.

A    -- into it.

Q    Do you think that you had texted pictures of the roof that you did the reinspection with Kelly on, do you think it was in that time frame that you would have texted pictures to Jacqueline Draper on your first visit to that roof?

A    Yes, I would have.

Q    Okay.  And so whatever you texted her, she --

Tresa Dunnican-Jacome
3/25/2022                                                              Page: 211

A    Yes, sir.

Q    And it's February 5 of 2021?

A    Yes, sir.

Q    Okay.  So this is going to be about -- if February 23rd was the date you were out there, we're talking a couple of weeks or so before, right?

A    Yes, sir.

Q    And -- and, here, it says that the date of loss is 7/3 of '20.

     Do you see that?

A    Yes, sir.

Q    Now, that's -- that date of loss comes from where?  Do you know?

A    That would come from the AccuWeather storm report that says when the last hail event was.

Q    Okay.  So you're -- you're saying that -- that somebody in State Farm decided, based on AccuWeather, when this date of loss would have been?

A    That would have been me.

Q    Oh, you did that?

A    Yes, sir.  We try to find the most recent hail event for that area.  So we run an AccuWeather report, and we find out where there was a hail event that was when -- within a year or so, hopefully.  And that was the most recent hail event.

Q    Huh.  Okay.  Well, just below that, down here, it says, "Address:  22605 Elwood in Edmond."

You see that?

A    Yes, sir.

Q    That's going to be the address that you put into AccuWeather?

A    Yes, sir.

Q    And -- and you're saying that -- if I hear you right, you're saying that you went to AccuWeather with that address and you found the most recent one before February 5th of '21, and you called that the date of loss?

A    Yes, sir.

MR. MILLER:  All right.  If you could take us, Stephanie, to -- I think it's Bates 150 on this same exhibit.

Q    (By Mr. Miller) What is this?

A    I can't read the top of that, but that is the AccuWeather report.

Q    All right.

MR. MILLER:  Can you -- can you blow that up, Stephanie?

Q    (By Mr. Miller) You see it says, "Created on 2/5 of '21."  That's the same day that you were making your entry in the east -- ES --

**Tresa Dunnican-Jacome**
3/25/2022                                                    Page: 213

A    ECS.

Q    -- ECS, right?  Correct?

A    Yes, sir.

Q    All right.  So this is, what, something you ran, I guess?

A    Yes, sir.

Q    And the address is the same one we just talked about on Elwood in Edmond, right?

A    Yes, sir.

Q    And so they're saying -- AccuWeather is saying that we're accepting your address and we're going to tell you what the hail has been there for some period of time?

A    Yes, sir.

MR. MILLER:  All right.  If we could scroll to the next page, it would be Page 151, Bates Page 151.

Q    (By Mr. Miller) Ma'am, prior to the time you're putting all this in, according to AccuWeather, at least, there was quite a number of hailstorms at that residence, over the last three years at least, true?

A    Yes, sir.

Q    And the biggest one was March 23rd of '19, and it was two-and-a-quarter inch, I guess, hail.

Is that how you read that?

A    Yes, sir.

Tresa Dunnican-Jacome
3/25/2022                                                      Page: 230

to yourself what you say you documented there about your
call with Gary Bates and I'm going to ask you a question
about it, okay?

     A     Okay.

     Q     Tell me when you're done.

     A     Okay.

     Q     All right.  Mendoza and his boss said that one
of the things you were supposed to do was explain what
was needed for additional inspection consideration.

          Did you document anywhere in that note that
you had any discussion with Mr. Gary Bates about what
was needed for additional inspection consideration?

     A     No, sir, I did not document.

     Q     Do you have any idea if you said anything
about additional inspection consideration?

     A     No, sir, I would not have -- I don't remember.

          MR. MILLER:  Let me take a quick break, okay?
About -- just about five minutes, and we may be really
done -- close to done, okay?

          THE WITNESS:  Okay.

          MR. MILLER:  All right.  Thank you.

          THE MONITOR:  We're off the record.  The time
is 4:07 p.m.

          (Recess was had from 4:07 p.m. to 4:14 p.m.)

          THE MONITOR:  We're back on the record.  The

Tresa Dunnican-Jacome
3/25/2022                                                      Page: 232

said to him in the -- as directed by the TM for Mendoza, what would you have -- what were they talking about that you would say to him about what he might do to get an additional inspection?

A    I would have --

MS. WILLIAMS:  Object to the form.

A    I would have explained to him that he would need to have the contractor submit photos demonstrating damages to the roof that we had not previously looked at or observed.

Q    (By Mr. Miller) Well, I mean, we did -- did we end up agreeing that there was at least some pictures of things that you did not have pictures of; is that fair?

A    Yes, sir.

Q    So the contractor did take pictures that -- of what could be considered damage of some kind and they were not in your pictures, fair?

A    Yes, sir.

Q    All right.  So other than what they'd already done, is there anything else you could have thought to tell them to do?

A    Yes, sir.  I would have told him that he could retain an engineer.

Q    I see.  Is that something that's in the policy?