# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THOMAS H. BATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-00705-JD |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY FEES AND PRE-JUDGMENT INTEREST AND BRIEF IN SUPPORT

Defendant State Farm Fire & Casualty Company ("State Farm") files this *Response* in opposition to the *Plaintiff's Motion for Attorney Fees and Pre-Judgement Interest* [Doc. 122] (the "Motion") filed by Plaintiff Thomas H. Bates ("Plaintiff"). Plaintiff's request for attorneys' fees should be denied in its entirety. As further set forth below, Plaintiff has failed to satisfy the requirements of 36 O.S. § 3629(B). As a result, Plaintiff is not entitled to attorneys' fees or interest under that statute. Moreover, even if Plaintiff had satisfied the requirements of Section 3629, Plaintiff's request for attorneys' fees totaling almost half a million dollars is unreasonable. Plaintiff also seeks an enhancement of fees based on factual support irrelevant to such consideration. As shown below, if not denied entirely, Plaintiff's requested attorneys' fees should be reduced, not enhanced.

{S624937;}                                                1

## INTRODUCTION

Plaintiff moves for reasonable attorneys' fees, costs, and interest pursuant to 36 O.S. § 3629. (*Motion* at 1). Principally, State Farm objects because Plaintiff has failed to satisfy the statutory requirements, which necessitates outright denial of the *Motion*. But, if the Court disagrees with that position, State Farm disputes Plaintiff's requested (1) fees and (2) costs.[1]

The jury in this case awarded Plaintiff $15,800 for breach of contract and $325,000 for bad faith, reaching a combined verdict of $340,800. The total award is important to remember when analyzing Plaintiff's requested attorneys' fees. It is even more important to remember that the jury determined that **punitive damages were not warranted** in this case. As billed, Plaintiff requests an award of $469,445; and in addition, Plaintiff requests a 30% fee enhancement, bringing the total fee request to $610,278.50. In essence, Plaintiff believes that this case warrants a fee award that is **nearly double the total amount the jury awarded on all claims**. State Farm maintains that such a request is unreasonable.

State Farm makes four distinct challenges to the attorneys' fees request. *First*, State Farm challenges that Plaintiff failed to satisfy Section 3629's applicable pre-requisite, *i.e.*, that Plaintiff failed to provide a "proof of loss" as defined under the Policy and required by the statute. *Second*, even if this Court determines that Section 3629 is applicable, State Farm disputes the reasonableness of some of the billed fees and the uniform associate rate.

---

[1] Plaintiff filed a separate brief supporting costs; thus, State Farm will file a separate brief opposing costs. State Farm does not object to Plaintiff's interest calculations, assuming the Court finds the requirements of Section 3629 satisfied.

***Third***, Plaintiff cannot show that the bad-faith claim put Plaintiff's "loss" at the "core," and thus no attorneys' fees for Plaintiff's bad-faith claim are recoverable. ***Fourth***, and finally, State Farm disagrees that an enhancement should be considered and instead shows the Court that the fees should be *reduced*.

State Farm asks that the Court deny the *Motion* or, in the alternative, reduce the requested attorneys' fees to a reasonable amount as outlined below.

<u>**ARGUMENTS AND AUTHORITIES**</u>

**A.    Plaintiff has not satisfied the statutory prerequisite to seek attorneys' fees under Section 3629(B).**

Plaintiff moves for fees, costs, and interest pursuant to 36 O.S. § 3629 (*Motion* at 1), which provides:

> A. An insurer shall furnish, upon written request of any insured claiming to have a loss under an insurance contract issued by such insurer, forms of proof of loss for completion by such person, but such insurer shall not, by reason of the requirement so to furnish forms, have any responsibility for or with reference to the completion of such proof or the manner of any such completion or attempted completion.

> B. It shall be the duty of the insurer, ***receiving a proof of loss***, to submit a written offer of settlement or rejection of the claim to the insured within sixty (60) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict. This provision shall not apply to uninsured motorist coverage.

12 O.S. § 3629(B) (emphasis added).

Giving Section 3629(B) its "plain and ordinary meaning," the Oklahoma Supreme Court held: "[a] section 3629(B) claim directly flows from the insured's ***written claim of loss***, arising under the insurance contract and duly submitted to the insurer for payment of benefits." *Hamilton v. Northfield Ins. Co.*, 2020 OK 28, ¶ 11, 473 P.3d 22, 26 (emphasis added). The Tenth Circuit has before commented that "some type of proof of loss was necessary under § 3629, and deferred to the subject insurance policy, not § 3629, to determine what proof of loss was required." *AG Equip. Co. v. AIG Life Ins. Co.*, 691 F. Supp. 2d 1295, 1305 (N.D. Okla. 2010) (citing *Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260 (10th Cir. 2001)).

Consistent with Section 3629 and *Northfield*, Plaintiff's Policy provides as follows with respect to the "proof of loss" requirement:

> e.  submit to us, within 60 days after the loss, **your signed, sworn proof of loss** which sets forth, to the best of your knowledge and belief:
> (1) the time and cause of loss;
> (2) interest of the insured and all others in the property involved and all encumbrances on the property;
> (3) other insurance which may cover the loss;
> (4) changes in title or occupancy of the property during the term of this policy;
> (5) specifications of any damaged building and detailed estimates for repair of the damage;
> (6) an inventory of damaged or stolen personal property . . .
> (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; . . . .

(Policy, Ex. 1) (emphasis added).

Plaintiff motions for reasonable attorneys' fees, costs, and interest pursuant to Section 3629(B), yet he has neither argued nor shown he submitted a "written" proof of loss, much less a "sworn" proof of loss compliant with his Policy. Instead, Plaintiff simply

avers, that he "submitted a claim—*i.e.*, proof of the loss—to State Farm" on or about February 4, 2021. (*Motion* at 2). Plaintiff further proffers that "the issue of proper or sufficient notice was not disputed in this case." (*Motion* at 3 n.1). State Farm disagrees with both positions.

Plaintiff provides no authority that mere notification of possible hail damage on his roof amounts to compliance with the Policy's proof-of-loss provision. For example, it is not unusual for a claim to be investigated and closed without payment. Thus, notice of a claim and a written, sworn proof of loss serve distinct functions in a claim. Even if the submission of the claim satisfies the "written" requirement, it certainly was not a "sworn" statement as the Policy requires. Further, State Farm repeatedly challenged the timeliness of Plaintiff's report of the claim during trial, specifically noting that Plaintiff and/or his son had knowledge that the roof suffered from some amount of hail damage long before ever notifying State Farm.

Whether simply making a claim under a Policy satisfies Section 3629 is an open question, especially when the Policy explicitly provides how to submit a proof of loss. A fair reading of Section 3629 and related statutory provisions supports State Farm's challenge. The Oklahoma Supreme Court in *Northfield* observed that "the Unfair Claims Settlement Practices Act ["UCSPA"] . . . mirrors section 3629(B)" with respect to the requirement for a "proof of loss." 2020 OK 28, ¶ 15, 473 P.3d at 27. The same cannot be said of UCSPA's provisions for a "notice of loss," *see, e.g.*, 36 O.S. § 1250.5(7), as there is no equivalent "notice of loss" language in Section 3629. As the *Northfield* Court explained: "[a] statute will be given a construction, if possible, which renders every word

{S624937;}                                            5

operative, rather than one which makes some words idle and meaningless." *Id.* ¶ 9, 473 P.3d at 26 (quotation mark omitted). Conflating "notice of loss" with "proof of loss" would render the UCSPA's "notice of loss" language superfluous, *i.e.*, "idle and meaningless." It is clearly "possible," if not logical, to read "proof of loss" as something more than mere "notice" of "knowledge that can be acted upon" — namely, "proof" of the loss, as the Policy requires.

Based on the foregoing, State Farm requests Plaintiff's *Motion* be denied in its entirety for failure to comply with both the Policy and the statute in providing the requisite proof of loss.

**B.      Even if the Court determines that Section 3629 is applicable, the submitted fees are unreasonable.**

Even if Plaintiff had submitted a proof of loss as the Policy and Section 3629 require (which he did not), "attorney's fee must in every instance be reasonable." *Finnell v. Seismic*, 2003 OK 35, ¶ 17, 67 P.3d 339, 346. In determining the amount of attorney fees to be awarded, the court begins with the straightforward lodestar calculation, which is (1) the ***reasonable*** number of hours expended multiplied by (2) a ***reasonable*** hourly rate. *Atwood v. Atwood*, 2001 OK CIV APP 48, ¶ 70 n.21, 25 P.3d 936, 951 n.21. A court is not required to accept the lodestar fee amount the claiming party asserts but may adjust the time claimed to ensure reasonableness in expenditures. *See Henderson v. Horace Mann Ins. Co.*, 560 F. Supp. 2d 1099, 1107–08 (N.D. Okla. 2008) (affirming reduction in attorney fees because of time spent on matters unrelated to the case, time improperly recorded, time spent on clerical tasks, and time billed for duplicative work).

State Farm identifies issues with both the reasonableness of the hours submitted to the Court, as well as the reasonableness of the uniform associate rate.

### 1. Plaintiff's fee request includes hours that are unreasonable.

It is the fee claimant who must "prove and establish the reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). "The prevailing party must make a 'good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Reasonable hours are limited to the time necessary for "a competent attorney to thoroughly prepare and try the case." *See Soto v. Jurado*, 166 F.3d 1222 (Table), 1998 WL 911693, at *6 (10th Cir. 1998). A court should look at each task and determine whether the amount of time spent on each was reasonable, and the court may "reduce the reasonable hours awarded if the number of compensable hours claimed by counsel includes hours that were unnecessary, irrelevant and duplicative." *Case v. Unified School Dist. No. 233, Johnson Cnty.*, 157 F.3d 1243, 1250 (10th Cir. 1998) (internal quotation and citation omitted) (cleaned up).

Regarding the reasonableness of the hours submitted, State Farm principally makes two objections to the fees Plaintiff submitted to the Court. ***First***, the invoice contains charges that are not recoverable, principally those related to punitive damages and those related to communications among the plaintiffs' bar, which amount to a combined $7,410 in unrecoverable charges. ***Second***, the invoice submits 45 hours of charges from an attorney who attended each day of trial but did not have an entry of appearance on file, amounting to $15,750 in charges for this attorney to sit in the courtroom.

{S624937;}                                7

*First*, State Farm objects to the inclusion of certain entries that should not be passed on to State Farm. The primary issue relates to the inclusion of time spent preparing for a punitive-damages stage of the trial that never took place. Such preparation includes reviewing and analyzing State Farm's annual statements and other documents evidencing the company's financials.[2] This time should not be recoverable because the jury did not find punitive damages appropriate in this case. In total, Plaintiff billed 22.3 hours related to this stage, all at the associate rate, requiring a reduction of $6,690.

State Farm also objects to numerous charges related to Plaintiff's counsels' communications with other attorneys in the plaintiffs' bar. These entries note communications with attorneys at Red Dirt Legal, Mansell, Engel & Cole, and Merlin Law Group.[3] These "strategy" communications should not be passed onto State Farm. They total 2.4 hours, all at an associate rate, requiring a reduction of $720.

*Second*, Plaintiff includes 45 hours of Jami Antonisse's trial attendance to which State Farm objects. Ms. Antonisse did not have her entry of appearance on file in this case and was not actively litigating the case. At Ms. Antonisse's hourly rate of $350, and entries for trial attendance totaling 45[4] hours, the *Motion* asks State Farm to pay $15,750 for an

---

[2] *See*, Ex. 2, Blue Time Entries: 1/10/22 ("financial documents"); 10/13/22 ("annual statements"); 10/15/22 ("annual statement"); 10/21/22 ("annual statements"); 10/26/22 (two entries related to "annual statements"); 10/27/22 (communications related to "annual statements"); 11/03/22 ("standard on punitive damages"); 11/06/22 (review "annual statements"); 11/06/22 (summary of "annual statements").

[3] *See*, Ex. 2, Pink Time Entries: 11/09/2021, 4/05/2022 (two entries), 4/06/2022 (three entries), and 4/07/22.

[4] *See*, Ex. 2, Purple Underlined Time Entries: 11/01/22; 11/02/22; 11/03/22; 11/04/22; 11/07/22.

individual to sit in the gallery each day of trial. Both Mr. Miller (an attorney well versed in jury trials) and Ms. Landeros (an attorney with significant legal experience and experience in the insurance industry) were well equipped to try a breach-of-contract and bad-faith case. At the very least, Ms. Antonisse's rate should be drastically reduced for the time spent sitting in trial.

Plaintiff relies on a recent motion for attorneys' fees filed in a case wherein GableGotwals similarly defended State Farm: *Rowan v. State Farm*, CJ-2017-7301 (Okla. Cnty.; Motion filed Oct. 27, 2022). (*See Motion* at Ex. 6). State Farm does not believe that the fees in this case can be properly compared to the fees in *Rowan*, as *Rowan* was litigated for four years (two and a half years longer than the present case). Including this exhibit is intended to confuse the issues as to the reasonableness of fees in this case, and that comparison should be rejected.

For these reasons, State Farm requests a $23,160 reduction based on the above arguments.

### 2. A uniform associate rate that does not account for experience is unreasonable.

Additionally, State Farm objects to a uniform billing rate for all associates, regardless of experience. Plaintiff's counsel purported to bill at a rate of $350 for all partners and $300 for all associates. State Farm does not take issue with the rate at which a partner bills. State Farm does, however, find it unreasonable for all associates, regardless of experience, to bill at a rate of $300 per hour. For example, Plaintiff's counsel, Alyssa Poe, graduated law school in May 2021. Upon information and belief, her initials on

Plaintiff's bill are "ADP."[5] Ms. Poe billed at $300 per hour, which is the same rate at which Ms. Landeros billed. As Mr. Miller's affidavit noted, Ms. Landeros graduated from a United States law school in 2013, meaning she has over seven years of experience but is billing at the same rate. (*Motion* at Ex. 3). State Farm believes that an associate with just one year experience billing at a rate that matches a senior associate is patently unreasonable.

It is State Farm's belief that another associate, "CLJ", has time entries that may also require reduction for this same reason. State Farm is not currently aware of the identity of CLJ but would posit that the same argument may apply to reduce his fees should the Court agree that a uniform associate rate is inappropriate. CLJ billed 60.2 hours, most of which were for document review.

Plaintiff's own authority as to the reasonableness of this specific rate supports State Farm's objection. Plaintiff cited *Pucket v. General Motors, LLC*, 2021 WL 1425252 (N.D. Okla. Apr. 15, 2021) and *Busby v. City of Tulsa*, 2019 WL 169686 (N.D. Okla. Jan. 11, 2019). (*Motion* at 6). Both cases, however, approve of an associate billing at $300 an hour or more with over a decade of experience.

Based on the foregoing, State Farm objects to the uniform billing rate for all associates and requests that "ADP" and "CLJ" (if applicable) have their rates reduced to $250 per hour. Such alteration would reduce Plaintiff's fee request by $5,940 for ADP's

---

[5] ADP entered a total of 58.6 hours.

entries alone. With more information related to CLJ's experience, further reduction may be required.

**C.    Plaintiff cannot recover for bad-faith damages, and any such related entries must be deleted.**

Reasonable attorneys' fees should be awarded in respect to those "reasonably contributed to the recovery of [Plaintiffs'] insured loss." *Sims v. Great Am. Life Ins. Co.*, 207 F. App'x 908, 910 (10th Cir. 2006) ("[T]he district court need disallow only those attorney's fees related specifically to the issue of whether Great American acted in bad faith in failing to pay her claim, as the resolution of that issue did not contribute to recovery of the insured loss."); *see also Henderson*, 560 F. Supp. 2d at 1105 (rejecting plaintiffs' objection to magistrate's exclusion of "time spent only on the bad faith claim"). While attorneys' fees may be awarded in bad faith claims, it is only when "the insured loss constitutes the core element of the awarded recovery." *Taylor v. State Farm Fire & Cas. Co.*, 1999 OK 44, ¶ 23, 981 P.2d 1253, 1259. However, if the "primary focus and heart of insured's suit" is not composed of the insured loss then Plaintiff is not entitled to attorney fees for all of their claims. *Badillo v. Mid. Century Ins. Co.*, 2005 OK 48, ¶ 68, 121 P.3d 1080, 1107. Fees are awarded only to the extent "the bad faith and contract claims overlap." *Sims*, 207 F. App'x at 910.

Here, Plaintiff asks to recover attorneys' fees for the entirety of both claims, rather than for time spent only on the breach-of-contract claim and any overlap with the bad-faith claim, even though the material facts at issue for Plaintiff's breach-of-contract claim were clearly distinct from his bad-faith theory. While recovery of attorney fees may be awarded

for a contract claim, the insured loss must be the "core element" of the bad faith claim to be awarded attorney fees for the litigation of the bad-faith claim. *See Badillo*, 2005 OK 48, ¶ 68, 121 P.3d at 1107. Plaintiff should not be awarded attorneys' fees to the extent the time alleged was spent solely on the issue of bad faith. *See Sims*, 207 F. App'x at 909.

Although it is not specifically clear which of Plaintiff's counsel's time entries were for the development of either claim, it would be unreasonable to claim Plaintiff's counsel had to bill more than 1,500 hours for a simple breach-of-contract claim in less than twenty months, the material facts of which were straightforward. And, there are in fact some components of this case that could **not** be related to the breach-of-contract claim. Namely, Plaintiff provided that former State Farm employee, Amy Lanier, and former State Farm insured, Michael Lewis, would testify in this case on Plaintiff's behalf. Neither of these individuals played any role in the breach-of-contract claim, yet time and energy were devoted to communicating with these individuals, preparing them for testifying, presenting them for depositions, and more. Thus, any such entry would not be reasonably related to the "insured's loss."

Thus, if the Court finds Plaintiff is entitled to attorneys' fees, State farm requests Plaintiff's requested fees be further reduced by 50% or by an amount the Court deems fair.

**D.    Plaintiff's claimed fees must be reduced and the request for enhancement denied.**

In Oklahoma, there is a presumption "the lodestar method . . . will reflect a reasonable attorney fee." *Folsom v. Century Life Assur. Co.*, 2021 OK CIV APP 50, ¶ 16, 502 P.3d 1121, 1126. However, a court may "*decrease* the fee through consideration of the

factors outlined in [*State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659]." *Strack, Tr. of Patricia Ann Strack Revocable Tr. Dtd. 2/15/99 v. Cont'l Res., Inc.*, 2021 OK 21, ¶ 13, 507 P.3d 609, 614 (emphasis added); *see also Sw. Bell Tele. Co. v. Parker Pest Control, Inc.*, 1987 OK 16, 737 P.2d 1186 (relying on *Burk* factors to determine whether a case was overworked). The factors espoused in *Burk* that a court may consider when making an adjustment are:

1.  Time and labor required.
2.  The novelty and difficulty of the questions.
3.  The skill requisite to perform the legal service properly.
4.  The preclusion of other employment by the attorney.
5.  The customary fee.
6.  Whether the fee is fixed or contingent.
7.  Time limitations imposed by the client or the circumstances.
8.  The amount involved and the results obtained.
9.  The experience, reputation and ability of the attorneys.
10. The 'undesirability' of the case.
11. The nature and length of the professional relationship with the client.
12. Awards in similar cases.

*See Burk*, 1979 OK 115, ¶ 8, 598 P.2d at 661. The Oklahoma Supreme Court further explained in *Oliver's Sports Center, Inc. v. National Standard Insurance Co.*:

> Fees cannot fairly be awarded on the basis of time alone. The use of time as the sole criterion is of dubious value because economy of time could cease to be a virtue; and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation. The litigation risk factor must be considered. Although the court initially looks to the hourly rate for comparable representation where compensation is guaranteed, it must adjust the basic hourly rate where compensation is contingent by assessing the likelihood of success at the outset of the representation.

{S624937;}                                  13

1980 OK 120, ¶ 6, 615 P.2d 291, 294 (footnotes omitted). In the end, the fees "*must* bear some reasonable relationship to the amount in controversy." *Finnell*, 2003 OK 35, ¶ 17, 67 P.3d at 346 (emphasis added). The application of the *Burk* factors shows Plaintiffs' requested fee should be reduced — not enhanced.

To be clear, State Farm objects to Plaintiff's request for a 30% enhancement in this case. (*See Motion* at 8). The arguments presented in the *Motion* do not warrant any enhancement, let alone 30%. The first argument made in support of the fee enhancement is that State Farm adopted a "Hail Focus" policy in "recent years" that was supposedly "specifically designed to reduce the number of hail claims paid in Oklahoma." (*Motion* at 7). In fact, however, the evidence presented at trial is the "focus" program exists for a variety of claims. For example, there was testimony that there was a "water focus" training, as well as hail focus. Even more, nearly every piece of evidence (if not every piece of evidence) that Plaintiff relied upon in making the argument that "hail focus" was designed to reduce hail claims was from Amy Lanier, a former State Farm employee, *who left the company seven months before Plaintiff ever made a claim*. While State Farm disputes that there was *any* reliable evidence to support the existence of "hail focus" as a nefarious practice, State Farm wholly disavows that someone who was not even employed at the time of Plaintiff's claim can form the basis of an enhancement argument.

Plaintiff argues that an enhancement is warranted because "Mr. Bates took a stand." (*Motion* at 8). Plaintiff's *Motion* later identifies that Plaintiff's "time is worth something, particularly given his determination to show State Farm that its insureds will not be

bullied." (*Motion* at 11). These arguments essentially ask the Court to enhance the fee award to punish State Farm or award "mental distress" damages for attending litigation, even though that is not warranted and was excluded from evidence as part of an agreed motion *in limine*. [Doc. 63, ¶ 5]. The jury determined that this case did not warrant punitive damages, and Plaintiff cannot now backdoor punitive damages and additional bad-faith damages in as an enhancement to attorneys' fees. An enhancement should not even compensate a plaintiff, as an enhancement is meant to compensate his attorneys for their efforts. *See Folsom*, 2021 OK CIV APP 50, ¶ 15, 502 P.3d at 1126. Thus, any reliance on Plaintiff's actions to support a fee enhancement is a red herring.

Plaintiffs' counsel also engaged in duplicative,[6] vague time entries[7] and block billing,[8] leaving one to guess as to the subject of the task and as to the reasonableness of the claimed hours in each entry. For example, numerous times when Plaintiff's counsel was preparing for trial, he would include a description of "[t]rial preparation – Exhibit analysis for cross examination" for 8.5 hours on September 21, and the same description for a separate entry of 9.5 hours on September 22. There is no way to discern from that description what Plaintiff's counsel was working on for 18 hours over two consecutive days. Other entries simply state that lead counsel was engaged in "deposition highlighting" or "indexing" for numerous hours at a time. These vague descriptions do not allow State Farm or the Court to ascertain what counsel was doing, which requires reduction.

---

[6] *See*, Ex. 2, Green Entries: (**1**) duplication of review of State Farm production on 10/27/21, 11/01/21 (two entries), and 11/02/21; (**2**) prepare for deposition preparation session with Bates family and attend same session on 2/14/22 (four entries) and 3/07/22 (two entries); (**3**) attend deposition of Anthony Mendoza on 3/18/22 (two entries); (**4**) attend deposition of Tresa Dunnican-Jacome on 3/25/22 (two entries); (**5**) review of report for Derek VanDorn on 4/01/22 (two entries); (**6**) prepare for deposition of Jacqueline Draper and attend deposition on 4/02/22, 4/03/22, 4/05/22 (two entries), 5/16/22 (two entries); (**7**) attend deposition of Sharon Arnold on 4/04/22 (two entries); (**8**) attend preparation meetings with Amy Lanier and Jonathon Marks on 6/07/22 (four entries) and 10/25/22 (four entries); (**9**) prepare for VanDorn deposition on 6/20/22 (two entries), 6/25/22 (two entries), 6/26/22, 6/27/22; (**10**) drafting of Plaintiff's Response to the Motion for Summary Judgment on 7/26/22, 7/27/22, 7/28/22, 7/29/22, (**11**) attending mediation on 8/15/22 (two entries); (**12**) inter-office strategy meetings on 10/25/22 (two entries); (**13**) attendance at judicial settlement conference on 10/27/22 (two entries).

[7] *See*, Ex. 2, Red Time Entries: 8/28/22; 8/29/22; 9/20/22; 9/21/22; 9/22/22; 9/27/22; 9/30/22; 10/03/22 (two entries); 10/04/22; 10/06/22; 10/07/22; 10/10/22; 10/11/22; 10/12/22; 10/13/22; 10/15/22; 10/16/22; 10/17/22; 10/19/22; 10/20/22; 10/22/22; 10/23/22; 10/24/22; 10/26/22; 10/30/22; 10/31/22; 11/05/22; 11/06/22.

[8] *See*, Ex. 2, Yellow Time Entries: 4/28/21 (two entries); 6/09/21; 12/15/21; 7/26/22; 7/27/22; 9/22/22; 10/17/22; 10/18/22; 10/19/22; 10/27/22; 11/01/22; 11/02/22; 11/03/22 (two entries); 11/04/22.

It is Plaintiff's burden to establish the reasonableness of their fees.

Block billing or "lumping" occurs when an attorney records time spent on various tasks on a given day but does not indicate the amount of time spent on each specific task. Block billing creates problems for the court reviewing a fee application. First, it does [not] fulfill the fee applicant's obligation to submit "detailed time records" because time entries do not identify how much time was spent on each task. This prevents the court from determining if a reasonable amount of time was expended on certain work. In addition, where a case involves both claims for which attorney fees may be awarded and others for which an award is not permissible, lumping prevents the court from determining which time is compensable and which is not.

*Okla. Natural Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246, 1263 (N.D. Okla. 2004); *see also Sw. Stainless, L.P. v. Sappington*, No. 07-cv-0334-CVE-TLF, 2010 WL 1486935 (N.D. Okla. Apr. 13, 2010) (holding 50% across-the-board reduction is warranted based on plaintiffs' failure to show their fee request is reasonable and all hours billed are attributable to the fee bearing claims). Attorneys are required to keep "meticulous time records that reveal . . . all hours for which compensation is requested and how those hours were allotted to specific tasks." *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir.1995) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)). Block billing "naturally and quite correctly raise[s] suspicions about whether all the work claimed was actually accomplished or whether it was necessary," which "is particularly important in a situation where a party is seeking to have [its] opponent pay for [its own] lawyer[s'] work." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998).

Further, "where block billing makes it difficult, if not impossible, for the Court to determine the amount of time spent on specific tasks, a general reduction in attorney fees may be warranted." *Id.* at 1264 (citing *Robinson*, 160 F.3d at 1281); *see also MMS Constr.*

{S624937;}                                              17

*v. Head. Inc.*, No. CIV-10-1340-M, 2013 WL 842576 (W.D. Okla. Mar. 6, 2013) (general percent reduction used to compensate for block billing); *Cohlmia v. St. John Med. Ctr.*, No. 5-cv-384-GKF-TLW, 2012 WL 5334724 (N.D. Okla. Oct. 26, 2012) (court reduced claimed attorney fees by percentage due to block billing); *Potter v. Synerlink Corp.*, No. 8-cv-674-GKF-TLW, 2012 WL 2524378 (N.D. Okla. June 29, 2012) (reduced hourly rate and reduced remaining amount, after additional deductions, by a percentage for block billing); *Okla. Natural Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246 (N.D. Okla. 2004) (fee reduced by a percentage to compensate for block billing, inter-office conferences, excessive attorney time and duplication of effort reflected in time records).

Due to the plethora of vague and/or block-billed entries, as explained above, if fees are warranted at all, this Court should apply a reduction in the fee — not an enhancement. *See Folsom*, 2021 OK CIV APP 50, ¶ 12; *Henderson*, 560 F. Supp. 2d at 1120. State Farm asks for a 30% reduction in the fees to account for the numerous entries that are block billed and vague.

**CONCLUSION**

WHEREFORE, State Farm requests Plaintiff's *Motion* be denied in its entirety because no proof of loss was submitted as both Plaintiff's Policy and the statute require. Alternatively, Plaintiffs' requested attorneys' fee award of over $450,000 is unreasonable and inconsistent with Oklahoma law. Thus, if Plaintiff's request is not denied outright, State Farm requests this Court:

1. Immediately reduce the bill by $29,100, subject to further reduction for CLJ's entries;

2. Further reduce the remaining bill by 30% to address the vague entries, the block billing; and

3. Reduce the remaining bill by 50% or an amount the Court deems reasonable to remove bad-faith-related entries that are not recoverable.

Such reduction would result in an attorneys' fee award of $308,241.50 before the 50% reduction, and then $159,120.75 after the 50% reduction.

Respectfully submitted,

*/s/ Taylor J. Freeman Peshehonoff*
Lance E. Leffel, OBA No. 19511
Paula M. Williams, OBA No. 30772
Taylor J. Freeman Peshehonoff, OBA # 34424
**GABLEGOTWALS**
BOK Park Plaza, Suite 2200
499 W. Sheridan Avenue
Oklahoma City, OK  73102
(405) 235-5500
(405) 235-2875 (facsimile)
lleffel@gablelaw.com
pwilliams@gablelaw.com
tpeshehonoff@gablelaw.com

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following**:**

Brad Miller, OBA #11437
J. Logan Johnson, OBA #12722
Shawna L. Landeros, OBA #31637
MILLER JOHNSON JONES
ANTONISSE & WHITE, PLLC
500 N.W. 6th Street, Suite 300
Oklahoma City, OK 73102-1219

*Counsel for Plaintiff*

/s/ *Taylor J. Freeman Peshehonoff*
Taylor J. Freeman Peshehonoff