```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF OKLAHOMA
 2
    THOMAS H. BATES,                      )
 3                                        )
                     Plaintiff,           )
 4                                        )
       vs.                                ) Case No. 21-CV-705-JD
 5                                        )
    STATE FARM FIRE AND CASUALTY COMPANY, )
 6                                        )
                     Defendant.           )
 7

 8

 9


10         TRANSCRIPT OF MOTION TO EXCLUDE and MOTIONS IN LIMINE

11                  OCTOBER 28, 2022, at 12:00 P.M.

12       BEFORE THE HONORABLE JODI W. DISHMAN, JUDGE PRESIDING

13

14

15

16

17

18

19

20

21

22

23

24
                    Recorded by mechanical stenography
25         Transcript produced by computer-aided transcription
```

Cassy Kerr, CSR, CCR, RPR, CRC, CRR, U.S. Court Reporter
200 Northwest Fourth Street, Oklahoma City, Oklahoma 73102
405-609-5096  *  Cassandra_Kerr@okwd.uscourts.gov

1                          A P P E A R A N C E S

2    FOR THE PLAINTIFF:

3    Mr. Robert Bradley Miller
     bmiller@mjjaw.com
4    Ms. Shawna L. Landeros
     slanderos@mjjaw.com
5    Miller, Johnson, Jones, Antonisse & White
     500 Northwest Sixth
6    Suite 300
     Oklahoma City, Oklahoma 73102
7    405-896-4388

8

9    FOR THE DEFENDANT:

10   Mr. Lance Leffel
     lleffel@gable.com
11   Ms. Paula M. Williams
     pwilliams@gablelaw.com
12   Ms. Taylor J. Freeman Peshehonoff
     tpeshehonoff@gablelaw.com
13   GableGotwals
     499 West Sheridan Avenue
14   Suite 200
     Oklahoma City, Oklahoma 73102
15   405-235-5500

16

17

18

19

20

21

22

23

24

25

 1          (Call to Order of the Court.)

 2                THE COURT:  Thank you, and please be seated.

 3      Good afternoon.  We are here for a hearing followed by a

 4  pretrial conference in *Thomas H. Bates v. State Farm Fire and*

 5  *Casualty Company*, Western District Case Number 21-CV-705.

 6      Who do I have here on behalf of the plaintiff?

 7                MS. LANDEROS:  Shawna Landeros and Brad Miller on

 8  behalf of Plaintiff.

 9                THE COURT:  Is Mr. Johnson also trying this case?

10                MS. LANDEROS:  No, Your Honor.

11                THE COURT:  Okay.  And for the defendant?

12                MR. LEFFEL:  Lance Leffel on behalf of State Farm.  I

13  am joined by Paula Williams and Taylor Peshehonoff, and we have

14  our legal assistant Janet Wright with us this afternoon.

15                THE COURT:  Janet Wright?

16                MR. LEFFEL:  Yes, Your Honor.

17                THE COURT:  Okay.  And will Ms. Wright be joining

18  you-all at trial?

19                MR. LEFFEL:  She will be with us at trial, but I'm

20  anticipating maybe not at our -- well, okay.

21      Yes.

22                THE COURT:  Okay.  And, Ms. Landeros, do you-all have

23  a paralegal or legal assistant who will be assisting you?

24                MS. LANDEROS:  Yes, we do, Your Honor.

25                THE COURT:  And what is that individual's name?

1          MS. LANDEROS:  Janna McGuire.  J-A-N-N-A.  McGuire --

2    testing me.  I believe it's M-C-G-U-I-R-E.

3          THE COURT:  Okay.  Thank you.

4      A few ground rules for this hearing:

5      First, for citations, I will give you pinpoint citations

6    for any cases or statutes, and the full citations for cases and

7    statutes will appear in the court's minute sheet, which will be

8    filed later today.

9      Second, if I am citing to a district court docket entry, I

10   will try to give you the docket number for the district court

11   docket, and I will try to use ECF page numbering, which means

12   the ECF stamp across the top of the filing.

13     For all citations, if it is what I have said just

14   previously, meaning I just stated it in the prior sentence, I

15   will use *id."*

16     Finally, for readability, I may make slight alterations to

17   quotations, or I may not indicate -- indicate that I'm

18   bracketing, quoting, or inserting ellipses.  I certainly will

19   tell you what authority I am relying on for any legal

20   propositions or for my analysis, but I find the transcript gets

21   messy and too wordy if I try to tell the parties every

22   alteration I have made when I am reading a ruling into the

23   record.

24     Does either side have questions before we begin?

25          MS. LANDEROS:  No, Your Honor.

1          MR. LEFFEL:  No, Your Honor.

2          THE COURT:  Before me is Plaintiff's motion to

3   exclude the testimony of Defendant's expert, Derek Van Dorn,

4   which is Document Number 44, with the response by Defendant at

5   Docket Number 46.

6      I have considered the law, the parties' briefing, and I do

7   not need oral argument on this motion consistent with my

8   prerogative under the local civil rules.

9      I'm going to deny this motion.

10     Starting with some brief background and a summary of

11  Van Dorn's opinions, this is a bad faith and breach of contract

12  action arising out of State Farm's denial of coverage for

13  damage to the roof of a rental home owned by Plaintiff, Thomas

14  Bates.  State Farm denied the claim because, in its opinion,

15  the damage was not caused by hail but was simply wear and tear.

16     State Farm has offered Derek Van Dorn as an expert witness

17  on issues relating to the damage to Plaintiff's roof by the

18  instant motion.

19     Plaintiff challenges the admissibility of Van Dorn's

20  testimony under Federal Rule of Evidence 702.

21     According to Van Dorn's report, his opinions are based on

22  his review of the documentation provided to him and the

23  observations made during his inspection of the subject property

24  conducted on March 10, 2022, and that's the Van Dorn report,

25  Docket Number 44-1 at 1.

He explained that, in forming his opinions, he utilized his 24 years of experience as an evaluator and estimator of property damage as well as his formal education, training, and knowledge previously acquired, including but not limited to building codes, governmental regulations, and construction standards.  *Id.*

Van Dorn offers two main opinions in his report:

First, that the estimate for full roof replacement provided by Aegis Roofing overstates the necessary cost to replace Plaintiff's roof.  *Id.* at 13.

He explains that Aegis incorrectly assumed that the roof needed a new layer of sheet decking on top of the existing 1-inch decking and that the Malarkey's shingle installation instructions for the type of shingle installed on the roof provided that a roof deck consisting of seasoned lumber of a minimum 1 inch thick is sufficient.  *Id.* at 13 through 14.

He further explains that Aegis unnecessarily included in its estimate the cost to detach and reset the garage door opener when calculating the cost to replace the house's overhead door.  *Id.*

Van Dorn's second main opinion is that State Farm followed industry standard methods in evaluating the house for storm-related damages and made a reasonable estimate of the cost to repair the storm damage to the home.  *Id.* at 15.

He bases this opinion on the following factors:

1     One, shortly after plaintiff submitted his claim, State

2     Farm conducted an inspection of the home and provided an

3     estimate of the cost to repair the damage on the same day.

4     Two, State Farm used Xactimate to estimate the damages.

5     Three, the pricing database used by State Farm was

6     accurate based on the geographic locale and reported date of

7     loss.

8     Four, based on photographs of the roof, State Farm

9     conducted test square evaluations on each of the roof's

10    directional slopes.

11    Five, State Farm noted that areas of granular loss on the

12    roof were predominantly on the edges of the shingles' tabs.

13    Six, based on Van Dorn's own inspection, he confirmed that

14    the majority of the blemishes existed on the shingles' edges.

15    Seven, photos of the roof taken by professional engineer

16    Corbin Swain included measurements that showed many of the

17    blemishes on the roof extended to one-half inch from the

18    shingles' edges.

19    Eight, using that one-half-inch number to calculate the

20    area of the face of a shingle and the area of the edge of a

21    shingle -- the one-half-inch perimeter of the shingle -- and

22    based on the way hail falls indiscriminately, roughly 17

23    percent of the hail impacts should strike the edge of the

24    shingle while 83 percent should strike the face.

25    Nine, the blemishes on Plaintiff's roof are inconsistent

with random hail fall because of the 62 blemishes to the shingles. 26 percent exist on the face of the shingle while 74 percent exist at the shingles' edges.

10, Swain documented after his inspection hail spatter to an attic vent that Van Dorn believes is too small to damage a three-tab shingle.

10 (verbatim), State Farm's claim adjuster noted that she did not observe spatter to any surfaces, which is an indication that hail the size to damage the roof had not recently fallen.

11, the photos provided by Aegis upon Plaintiff's request for a second inspection provided no new evidence because they showed damage to soft metals already allowed for by State Farm and blemishes at the edge of the shingles. *Id.* at 15 through 19.

Van Dorn also opines that, based on the granular loss mostly existing on the shingles' edges combined with the lack of spatter, State Farm understandably concluded that the granular loss was not related to hail impacts.

I will now summarize the legal -- legal standard I must apply in resolving this motion.

Courts have broad discretion in determining the admissibility of expert testimony. That comes from *Taylor v. Cooper Tire*, a 1997 Tenth Circuit case at 1397.

A district court also has broad discretion to decide how to assess an expert's reliability, including what procedures to

utilize in making that assessment as well as in making the

ultimate determination of reliability.  That's *Dodge v. Cotter*,

a 2003 Tenth Circuit case at 1223 citing *Kumho Tire* at 152.

The admissibility of expert testimony is governed by

Federal Rule of Evidence 702 and the Supreme Court's opinions

in *Daubert* and *Kumho*.  See also *James River Insurance*, a 2011

Tenth Circuit case at 1215, Note 1, explaining that, if expert

testimony is not reliable under *Daubert* and *Kumho Tire*, it is

not admissible under Rule 702.

Rule 702 imposes upon the trial judge an important

gate-keeping function regarding the admissibility of expert

opinions.  It provides a witness who is qualified as an expert

by knowledge, skill, experience, training, or education may

testify in the form of an opinion or otherwise if, A, the

expert's scientific, technical, or other specialized knowledge

will help the trier of fact to understand the evidence or to

determine a fact in issue; B, the testimony is based on

sufficient facts or data; C, the testimony is the product of

reliable principles and methods; and D, the expert has reliably

applied the principles and methods to the facts of the case.

In considering whether an expert opinion is admissible,

the Court performs a two-step analysis:

First, the Court determines whether the expert is

qualified by knowledge, skill, experience, training, or

education to render the opinion.  If so qualified, the Court

1    must then determine whether the expert's opinion is reliable

2    under the principles set forth in *Daubert* and *Kumho Tire* and

3    relevant and that it will assist the trier of fact.  For that,

4    I cite to *103 Investors*, a 2006 Tenth Circuit case at page 990,

5    and *Ralston v. Smith & Nephew*, a 2001 Tenth -- Tenth Circuit

6    case at page 969.

7         The Supreme Court in *Daubert* listed four nonexhaustive

8    factors that a trial court may consider in making its

9    reliability assessment:

10        Number one, whether the expert's technique or theory can

11   be and has been tested.

12        Number two, whether the theory has been subjected to peer

13   review or publication.

14        Number three, whether the technique has a known or

15   potential rate of error and whether there are standards

16   controlling the technique's operation.

17        And number four, whether the theory has been generally

18   accepted in the relevant scientific community.

19        That's *Kumho Tire* at 149 through 50 and *103 Investors* at

20   page 990 citing *Daubert* at 593 to -94.

21        The *Daubert* factors are meant to be helpful, not

22   definitive, and not all of the factors will be pertinent in

23   every case.  That's *United States v. Baines*, a 2009 Tenth

24   Circuit case at 992.

25        Thus, in nonscientific cases, the *Daubert* factors may or

may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.  That's *Kumho Tire* at 150.

The inquiry is always and of necessity highly fact specific, and no one factor is outcome determinative where an expert testifies based on experience, the tribunal reviews, the reliability of the testimony with reference to the nature of the issue, the expert's particular expertise, and the subject of the testimony.  That's *F&H Coatings*, a 2018 Tenth Circuit case at 1222.

Finally, when the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility.  That's *United States v. Nacchio*, a 2009 Tenth Circuit *en banc* case at 1241.

First, Van Dorn is qualified to testify regarding the opinions rendered in his report.  His knowledge and expertise can help the jury determine whether State Farm relied on industry standard methods of calculating the estimated repair cost for Plaintiff Thomas Bates's roof.  For example, Van Dorn opines that State Farm's use of Xactimate is industry standard in calculating repair estimates.

Van Dorn can also opine, based on his expertise, whether State Farm's repair costs estimate corresponds to the damage State Farm identified and how much said repairs should cost generally in the current market.

1          Further, based on his experience in construction and

2     insurance claims adjusting, Van Dorn is qualified to testify

3     regarding the reasonableness of State Farm's estimate and

4     conclusion that the damage to Plaintiff's roof was not the

5     result of a recent hail event.

6          These opinions all concern central issues that must be

7     resolved in Plaintiff's breach of contract and bad faith claims

8     at trial, and they will help the jury understand the evidence

9     to determine those issues.

10          That Van Dorn is a construction consultant and is not

11     presently -- presently licensed as an insurance adjuster does

12     not render him unqualified to offer opinion testimony that the

13     damage to Plaintiff's roof was not caused by recent hail.  As

14     shown in his CV, Van Dorn has nearly 10 years of experience

15     working as a claims adjuster.  He has sufficient knowledge and

16     experience to offer his opinions.

17          Having found that Van Dorn is qualified to offer his

18     opinion testimony, I must next determine whether those opinions

19     are reliable.

20          I find that they are.

21          Van Dorn reviewed photos of Plaintiff's roof and

22     personally inspected the damage.  He also analyzed State Farm's

23     and Aegis's repair estimates based on his expertise as a

24     general contractor.

25          I find that, as to his opinion regarding Aegis's estimate,

1 | he bases his opinion on sufficient data and facts.

2 |      Plaintiff argues that his opinion relating to Aegis
3 | unnecessarily accounting for additional roof decking in its
4 | estimate is unreliable because he did not consider Malarkey's
5 | technical bulletin, which recommends that older wood decks be
6 | overlaid with new sheathing.

7 |      Plaintiff also argues Van Dorn's opinion regarding the
8 | decking is unreliable because he does not know the spacing
9 | between the boards on the roof as he did not enter the attic
10 | during his inspection to observe the underside of the decking.

11 |      These arguments attack the weight Van Dorn's opinions
12 | should be given rather than their admissibility.  Generally,
13 | questions concerning the factual basis and sources of an
14 | expert's opinion affect the weight to be assigned to that
15 | opinion rather than its admissibility, and for that, I cite
16 | persuasively *Parker v. Wal-Mart*, which is a 2010 District of
17 | Kansas case at 377.

18 |      Plaintiff's arguments address the factual basis of
19 | Van Dorn's first overarching opinion, and they do not warrant
20 | exclusion of his testimony.

21 |      I also find Van Dorn's opinions regarding State Farm's
22 | evaluation of the damage and estimate sufficiently supported by
23 | data, facts, and reliable methodology.  Within this overarching
24 | opinion is Van Dorn's opinion that State Farm understandably
25 | concluded that the damage to Plaintiff's roof was not caused by

1    a recent hail event.

2        Plaintiff takes issue with how Van Dorn defines the edge

3    of a shingle, arguing that no industry standard has defined the

4    edge of a shingle consistent with his opinion.  This argument

5    largely focuses on the semantics of Van Dorn's opinion, though.

6        On page 16 of his report, Van Dorn explains that, based on

7    the photos taken by the professional engineer, each of the edge

8    blemishes extended to one-half inch from the shingle's edge or

9    less.

10        Van Dorn then took that one-half-inch measurement to

11    calculate the area of the face and edge of a shingle to

12    determine on average what percent of blemishes he would expect

13    indiscriminate hail fall would leave in each area.  In other

14    words, he took the unique number -- one-half inch -- the

15    professional engineer found many of the blemishes extended to

16    and based his probability calculations off of that.

17        I am satisfied, particularly when combined with Van Dorn's

18    construction expertise and experience working as a claims

19    adjuster, that this is a sufficiently reliable method for

20    Van Dorn to arrive at his opinion that the damage to the

21    shingles was not caused by recent hail.

22        The fact that Van Dorn did not rely on a peer-reviewed

23    technique for arriving at this opinion is not detrimental to

24    the admissibility of his opinions because he is relying on his

25    experience, and his report shows how and why he made the

1  calculations Plaintiff challenges.

2      Given the facts of this case, the data as reviewed by

3  Van Dorn, and his particular experience in construction and

4  claims adjusting, I am satisfied this opinion is reliable.

5      Plaintiff is certainly entitled to challenge the weight

6  the jury should give this opinion on cross-examination.

7      Plaintiff argues that Van Dorn's opinion that State Farm's

8  conclusion that the damage was not caused by hail was

9  understandable improperly states an opinion on an ultimate

10 issue.

11     I disagree.

12     Based on Van Dorn's report and methodology, I read his

13 opinion as explaining that State Farm made a factually accurate

14 assessment that the damage was not caused by hail given the

15 location of the blemishes and lack of spatter.

16     Plaintiff also argues that, since Van Dorn has not

17 attributed a specific cause to the damage to the shingles, that

18 he cannot opine that the damage was not caused by hail.

19     I also disagree with this argument.

20     Van Dorn testified that he could not eliminate the

21 possibility that there was old hail damage to the roof, but

22 Van Dorn's report explains sufficiently how, in his view, he is

23 able to rule out the possibility that a recent hail event

24 caused the damage to Plaintiff's roof.

25     This argument attacks the accuracy of Van Dorn's

1    conclusion rather than the soundness of his methodology.  It is

2    certainly another topic Plaintiff may discuss on

3    cross-examination.

4        State Farm has demonstrated that Van Dorn's testimony is

5    admissible under Rule 702.  He is qualified to offer opinions

6    that are relevant to central trial issues and that those

7    opinions are the product of reliable methods reliably applied.

8        In conclusion and for these reasons I have just explained,

9    I deny Plaintiff's motion to exclude at Doc. Number 44.

10       Next, we are going to turn to the motions in limine.  We

11   will start with the filing at Doc. Number 63, which is the

12   parties' notice of agreed motions in limine.  This notice

13   results in the following:

14       Number one, the parties agree counsel may request in voir

15   dire about -- I'm sorry.

16       No.  That's correct.

17       The parties agree counsel may request in voir dire about a

18   juror's willingness to award punitive damages, if warranted.

19       The parties also agree Plaintiff's counsel may state in

20   opening argument that Plaintiff will seek punitive damages.

21       The parties agree that any other mention of punitive

22   damages will be excluded unless and until the Court instructs

23   the jury on punitive damages at which time Plaintiff would be

24   allowed to argue for the jury to check the box for punitive

25   damages on closing.

1    Number two, the parties agree that, while counsel may

2    state in opening argument that Plaintiff will seek punitive

3    damages, counsel will not use other punishing language during

4    the first stage of trial, such as, quote, "sending a message,"

5    closed quote, or, quote, "making an example," closed quote, of

6    State Farm.

7    Number three, the parties agree they will not present

8    evidence or suggestion in the first stage of trial regarding

9    State Farm's profitability and/or financial condition or

10   wealth, including State Farm's gross and net income profit.

11   Number four, the parties agree to exclude golden rule

12   arguments where the jury is implored to put themselves in the

13   position of the injured party and ask them to consider what

14   they would want if this was their family or their home.  The

15   parties agree this does not include arguments relating to State

16   Farm's motto, which is the subject of a contested motion in

17   limine.

18   Number five, the parties agree Plaintiff will not be

19   allowed to testify or present evidence as to any alleged

20   emotional distress relating to the litigation process,

21   including depositions, meetings with his attorneys, waiting for

22   trial or the trial itself, or otherwise cite conduct in

23   litigation as evidence of bad faith.  The parties agree this

24   does not include the fact that Plaintiff filed the lawsuit and

25   only relates to stress related to the litigation process.

1    Number six, the parties agree to exclude references to

2  State Farm's status as an out-of-state defendant made in order

3  to engender an "us against them" mentality.  The parties agree

4  this does not include references to facts involving training or

5  employment duties performed outside of Oklahoma.

6    Number seven, the parties agree to exclude evidence

7  questioning or argument relating to offers to compromise,

8  offers of judgment, or settlement offers.

9    Number eight, the parties agree to exclude references to

10  motions in limine.

11    Number nine, the parties agree to exclude testimony,

12  documents, evidence, arguments, or reference of any kind to the

13  effect of lawsuits on insurance and/or other costs to society,

14  including, number one, the availability or nonavailability of

15  insurance to consumers or businesses; number two, a rise or

16  increase in insurance cost; or number three, any personal

17  effect on the jurors in this case through increased insurance

18  costs or otherwise.

19    Number ten, the parties agree to exclude testimony,

20  documents, evidence, arguments, or reference of any kind to

21  Marian Bates's prior litigation with Coca-Cola.

22    Counsel, have I read into the record correctly for each

23  side the agreements we have on motions in limine?

24        MS. LANDEROS:  Yes, Your Honor.

25        MR. LEFFEL:  Yes, Your Honor.

1          THE COURT:  For those where we have an agreement,

2    there -- they are granted consistent with the parties'

3    agreement in Doc. Number 63 along with this further order of

4    the Court on the parties.

5        If you think there's been a violation of the parties'

6    agreement, you raise your objection, and then we will have a

7    sidebar to look at it.

8        If you think the door has been opened, then, before you go

9    down the path of this evidence, you need to ask to have a

10   sidebar, and we will address it.

11       I need an acknowledgement from both parties that you

12   understand my order with respect to the uncontested motions in

13   limine that are noted in Document Number 63.

14          MS. LANDEROS:  On behalf of Plaintiff, we understand.

15          MR. LEFFEL:  We understand, Your Honor.

16          THE COURT:  No further order will follow on these.  I

17   will have a minute entry in the minute sheet stating that these

18   agreed limine motions are granted.

19       Any additional agreements reached by the party that are

20   not -- parties that are not contained in the notice at

21   Doc. Number 63?

22          MS. LANDEROS:  No, Your Honor.

23          MR. LEFFEL:  Not to my knowledge, Your Honor.

24          THE COURT:  Moving on to the parties' contested

25   motions in limine, which are at Doc. Numbers 64, 71, and 94, I

1  have the parties' briefing before me and the law; and for the

2  vast majority of these, I do not need oral argument; and I

3  exercise my discretion to decline oral argument consistent with

4  our local court rules.

5      I do have some questions with respect to State Farm's

6  Motion in Limine Number 1, and we will address it last; and

7  I -- it may be that, on that particular one, that I take it

8  under advisement and issue an oral ruling to you-all Tuesday

9  morning at 8:00 a.m. before trial begins if I don't issue a

10  written order beforehand.

11      However, I do have criminal settings on Monday, so it is

12  most likely that, if I don't issue a ruling today on State

13  Farm's Motion in Limine Number 1, it will be an oral ruling on

14  Tuesday morning before we bring the jury up.

15      I plan to take these in the order that I think makes the

16  most sense and is the most organized; but starting first with

17  the legal standards from motions in limine, which apply to all

18  of these, a motion in limine is a pretrial request that certain

19  inadmissible evidence not be referred to or offered at trial.

20  That's the *Edens* case, a 2016 Tenth Circuit case at page 1130,

21  quoting *Black's Law Dictionary* , tenth edition, 2014.

22      It is a request for guidance by the Court regarding an

23  evidentiary question, which the Court may provide at its

24  discretion to aid the parties in formulating trial strategy,

25  and for that, I also cite *Edens*.

1    A Court's *in limine* rulings are preliminary and are

2    subject to change as the case unfolds or at its discretion.

3    That's *Luce v. United States*, a 1984 Supreme Court case at

4    pages 41 through 42.

5    Motions in limine that generally lack specificity are

6    properly denied, and for that, I cite *Shotts v. GEICO*, a 2018

7    unpublished Western District of Oklahoma case, and also *Mantle*,

8    a 2004 unpublished Western District of Oklahoma case as

9    persuasive authority.

10    The Court's analysis is guided by Federal Rule of Evidence

11    102: that the Federal Rules of Evidence should be construed so

12    as to administer every proceeding fairly, eliminate

13    unjustifiable expense and delay, and promote the development of

14    evidence law to the end of ascertaining the truth and securing

15    a just determination.

16    The Court must determine relevancy, that is, whether the

17    evidence has any tendency to make the existence of any fact

18    that is of consequence to the determination of the action more

19    probable or less probable than it would be without the

20    evidence, and for that, I cite Federal Rules of Evidence 401

21    and 402.

22    However, the Court may exclude otherwise relevant evidence

23    if its probative value is substantially outweighed by a danger

24    of one or more of the following: unfair prejudice, confusing

25    the issues, misleading the jury, undue delay, wasting time, or

1  needlessly presenting cumulative evidence, and that's Federal

2  Rule of Evidence 402.

3          THE CLERK:  403.

4          THE COURT:  I'm sorry.  403.  That's Rule 403.

5      Thank you, Nyssa.

6      Starting with Plaintiff's motions in limine, which are

7  found at Doc. Number 71, Plaintiff first moves to exclude

8  evidence not considered by State Farm in rendering its claim

9  decision to deny Plaintiff's claim, including references as to

10  late reporting and old hail.  Plaintiff argues that, under

11  *Buzzard v. Farmers*, 824 P.2d 1105, Oklahoma Supreme Court,

12  1991, State Farm may not present evidence of any reason for its

13  denial of Plaintiff's claim that is not memorialized in the

14  denial letter.

15      I generally agree with Plaintiff that the knowledge and

16  belief of the insurer during the time period the insurance

17  claim is being reviewed is the focus of a bad faith claim, and

18  that comes from *Newport v. USAA*, a 2000 Oklahoma Supreme Court

19  case at page 198.

20      But I don't think Plaintiff presents a workable solution

21  for the trial of this case.

22      Plaintiff asserts two claims:  one for bad faith, which

23  still requires coverage under the policy and which focuses on

24  State Farm's knowledge at the time of its denial, and one for

25  breach of contract claim, which looks to everything as a whole.

1    Plaintiff's breach of contract claim also includes

2  contested issues of coverage.

3    *Buzzard* involved only a bad faith claim.  There may be

4  evidence State Farm discovered in its postsuit investigation

5  that could be relevant to the breach of contract claim and

6  possibly coverage.

7    Further, for bad faith claims, although the evaluation

8  centers on the time of denial, the entire course of conduct

9  between the parties is relevant to the question whether the

10  insurer acted in good faith, and that comes from *Willis v.*

11  *Midland*, a 1994 Tenth Circuit case at page 613.

12    In an unpublished decision, *Thomas v. Farmers*, the Tenth

13  Circuit explained that, quote, "Buzzard holds that under

14  Oklahoma law an insurance bad faith claim is premised on the

15  actual reason the insurance company gave when it denied the

16  claim, not a post-denial rationalization.  Therefore, evidence

17  that supports a post-denial rationalization, rather than the

18  evidence that the insurance company actually relied on when

19  initially denying a claim, is inadmissible under *Buzzard*," and

20  that's an unpublished 2019 Tenth Circuit case at page 432.

21    State Farm's reason for denying Plaintiff's claim was its

22  finding that the damage to the roof was wear and tear rather

23  than the result of hail.

24    In its response, State Farm points to entries in its claim

25  file and to text messages that indicate that it may have

1    considered that the wear to the roof could have been caused by

2    old hail, and for that, I cite Docket Number 88 at page 4.

3        This is sufficient to show that State Farm may have relied

4    on evidence of old hail damage when denying Plaintiff's claim.

5        Therefore, Plaintiff's first motion in limine is denied.

6        Plaintiff's second motion in limine seeks to exclude the

7    Oklahoma Insurance Department's response to the complaint

8    Plaintiff submitted regarding State Farm's denial of his claim.

9        The Oklahoma Insurance Department, which I will call

10   "OID" -- its response to Plaintiff explained that its review of

11   Plaintiff's complaint did not indicate State Farm violated any

12   laws or regulations as enforced by the OID.

13       Plaintiff argues this response is irrelevant and unfairly

14   prejudicial, but I disagree.  The letter has some tendency to

15   make the fact that State Farm acted reasonably in denying

16   Plaintiff's claim more plausible.  This is sufficient under

17   Rule 402, and I see no risk of unfair prejudice in allowing

18   State Farm to admit the response.

19       I also find...

20       (Discussion off the record between clerk and Court.)

21           THE COURT:  Sorry.

22       This is sufficient under Rule 401 and 402, and I see no

23   risk of unfair prejudice in allowing State Farm to admit the

24   response.

25       I also find that OID's response is admissible hearsay

1    under the residual exception set forth in Federal Rule of

2    Evidence 807, which requires that the statement be supported by

3    sufficient guarantees of trustworthiness, including evidence

4    corroborating the statement, and that's Federal Rule of

5    Evidence 807, Subsection (a)(1).

6        The residual exception is to be used in limited

7    circumstances.  That comes from *United States v. Harrison*, a

8    2002 Tenth Circuit case at page 1004.

9        Factors courts analyze to determine the trustworthiness of

10   a statement are, number one, the statement's character; number

11   two, whether the statement is written or oral; number three,

12   the parties' relationship; number four, the declarant's

13   probable motivation in the statement made, and for that, I cite

14   as persuasive authority *New Mexico v. Real Estate Law Center*,

15   which is a published 2019 District of New Mexico case.

16       The statement must also be more probative on the point for

17   which it is offered than any other evidence that the proponent

18   can obtain through reasonable efforts, and that's Federal Rule

19   of Evidence 807, Subsection (a)(2).

20       The Tenth Circuit considers a statement more probative if

21   the district court determines that the hearsay is relevant and

22   reliable and that no other evidence or little other evidence is

23   available on the same point, and that's also the *New Mexico*

24   case at page 1074 citing *Marsee v. U.S. Tobacco Company*, a 1989

25   Tenth Circuit case at page 324 through 325.

1          Finally, Rule 807 requires the proponent gives the adverse

2    party reasonable notice before trial of the intent to offer the

3    statement, and that's Federal Rule of Evidence 807(b).

4          I'm satisfied that State Farm's response to this motion in

5    limine satisfies the notice requirement.

6          As I've explained, the response letter is relevant to

7    State Farm's compliance with applicable legal standards and

8    requirements.  It is also supported by sufficient guarantees of

9    trustworthiness.  It was sent to Plaintiff by the OID and was

10   written and signed on OID letterhead by an uninterested third

11   party.

12         Finally, it is more probative on the point that State Farm

13   did not violate any law or regulation enforced by OID than any

14   other evidence that State Farm could obtain through reasonable

15   efforts.

16         Give me one minute.

17         We're going to go off the record.

18         (Off the record.)

19             THE COURT:  Okay.  Back on the record.

20         Therefore, Plaintiff's second motion in limine is denied.

21         Since State Farm's supplemental motion in limine, which is

22   at Document Number 94, also deals with hearsay statements under

23   the residual exception, I will move on to it.  This motion in

24   limine seeks a pretrial ruling that certain hearsay statements

25   Plaintiff intends to present at trial are inadmissible.

1    On Saturday, October 22nd, 2022, at 8:22 p.m., Plaintiff
2  notified State Farm of his intent to offer statements made by
3  Plaintiff generally regarding his mental pain and frustration
4  allegedly caused by State Farm's conduct in the form of
5  Plaintiff's son's Gary Bates's testimony.

6    Plaintiff represents that the following statements are
7  admissible under the residual hearsay exception, Federal Rule
8  of Evidence 807:

9    A, Thomas Bates has expressed frustration and
10 disappointment over having been treated this way by State Farm
11 despite having been a loyal State Farm customer for so many
12 years.

13    B, Thomas Bates has been anxious and worried about having
14 to pay out of his pocket for the roof himself when he feels
15 that State Farm should have done right by him and paid for it
16 under the policy.  He worries about the financial burden of
17 this.

18    C, Thomas Bates has expressed worry of the toll this has
19 taken on Gary and wishes he didn't have to have his son handle
20 this because it has caused Gary stress.  Thomas has had
21 difficulty sleeping because of the way State Farm handled the
22 claim and treated Gary.

23    D, because of his father's short-term memory problems,
24 Gary sometimes hears these complaints over State Farm's conduct
25 from his father over and over in the same conversation.

1    The parties seem to agree that these constitute hearsay,

2   which is a statement that, number one, the declarant does not

3   make while testifying at the current trial or hearing and,

4   number two, a party offers in evidence to prove the truth of

5   the matter asserted in the statement.  That's Federal Rule of

6   Evidence 801, Subsection "c."

7    By a separate motion in limine, State Farm objects to Gary

8   Bates testifying generally about Plaintiff's damages.  I will

9   thus analyze this motion as it relates to statements that

10  constitute hearsay.

11   State Farm argues that these statements, number one, lack

12  sufficient guarantees of trustworthiness; number two, are not

13  the most probative evidence on Plaintiff's mental pain and

14  suffering; and number three, present dangers of unfair

15  prejudice such that they should be excluded under Rule 403.

16   I agree with each of these arguments.

17   I decline to admit any statement that constitutes hearsay

18  contained in Plaintiff's October 22nd email.  These statements

19  lack sufficient guarantees of trustworthiness.  Plaintiff

20  apparently expressed these things to Gary, but it is difficult

21  to ascertain when these statements occurred.

22   Plaintiff's notice describes them in hypergeneralized

23  fashion, and the context of these conversations is unclear.

24  Without context, I have very little basis to assess any

25  potential motive for the statements, and Plaintiff has not

offered facts that show little possibility for insincerity.

Further, these statements are not sufficiently corroborated by

consistent testimony.

In Plaintiff's deposition, he testified that he could not

recall any specifics about his conversations with Gary about

his insurance claim.  For that, I cite Doc. Number 96-1 at 22,

line 21, through 23, line 2.

Gary testified at his deposition that he did not think

State Farm's conduct affected Plaintiff a tremendous amount,

that he thought Plaintiff worried about him having to deal with

State Farm, and that Plaintiff probably lost some sleep.

That's Doc. Number 95 -- I'm sorry -- 94-5 at page 79, line 9

through line 19.

It does not appear that Plaintiff's counsel asked Gary

about the conversations he had with Plaintiff as summarized by

the hearsay statements.  According to State Farm, Plaintiff's

counsel asked Plaintiff one question at his deposition, which

was, quote, "Since Gary handled the State Farm claim on your

behalf, would you rely on his thoughts about what State Farm

did wrong in this claim?" closed quote.

Plaintiff answered that he would.

This is all on page 6 of State Farm's supplemental motion.

Plaintiff argues that his deposition testimony is not

contradictory to these hearsay statements but that it is merely

open to interpretation, and that's Doc. Number 96 at 5.

1    But Plaintiff, as proponent of the evidence, must show

2 sufficient indicia of reliability and trustworthiness in

3 stating that his own testimony is, quote, "open to

4 interpretation," closed quote, does not convince me that the

5 hearsay statements are trustworthy.

6    Plaintiff argues that the statements are admissible

7 because they are, quote, "near misses," closed quote, of

8 statements admissible as statements of present sense

9 impressions under Rule 803, Subsection 1, or of Plaintiff's

10 then-existing state of mind under Rule 803, Subsection 3.

11    I do not agree that these are near misses, but even if I

12 did, the statements still lack sufficient guarantees of

13 trustworthiness, which is detrimental to their admissibility

14 under the residual exception.

15    In its May 14, 2018, report to the advisory committee on

16 evidence rules, explain that a statement that nearly misses a

17 standard exception to the rule against hearsay can be

18 admissible under Rule 807 so long as the Court finds that there

19 are sufficient guarantees of trustworthiness.

20    Plaintiff has not shown how the hearsay statements listed

21 in the October 22nd email are supported by sufficient

22 guarantees of trustworthiness.  Plaintiff also does not explain

23 how the statements are more probative on the issue of

24 Plaintiff's damages than other available evidence.

25    There is plenty of other evidence on Plaintiff's mental

1    pain and suffering, including deposition transcripts.  The most

2    probative evidence on this issue is Plaintiff's live in-court

3    testimony.

4        While Plaintiff's counsel expresses some doubt about

5    Plaintiff's competence to testify at trial, counsel has not

6    provided me any evidence of Plaintiff's lack of competence.

7    Both parties list Plaintiff in their final witness list, and in

8    the final pretrial report, Plaintiff indicated that he would

9    offer testimony on the issues of damages.  That's Doc. Number

10   73 at page 8.

11       Under Federal Rule of Evidence 601, in civil cases, state

12   law governs the witness's competency regarding a claim or

13   defense for which state law supplies the rule of decision.

14       Oklahoma law presumes that every person is competent to be

15   a witness -- that's Oklahoma Statute Title 12, Section 2601 --

16   and the party questioning the competency of the witness holds

17   the burden to show incompetency.  That's -- for that, I cite to

18   see *In re R.H.*, which is an Oklahoma civil appeals case from

19   20 -- 2001, rather, at page 884.

20       Generally, competency to testify is not a high bar; and

21   for that, I point the parties to *Competency of Witnesses - In*

22   *general*, 2 Oklahoma Practice Series, Oklahoma Evidence, Section

23   24.01, second edition, September 2022 update, for the

24   proposition that, quote, "age and mental capacity are normally

25   factors bearing upon the credibility rather than the competency

1    of a person to testify," closed quote; *cf. Hiatt v. State*, an

2    Oklahoma Criminal Appeals decision from 1939 at page 263

3    finding no evidence that a witness was suffering from a mental

4    deficiency at the time of trial even though the witness had

5    been in a mental hospital on two previous occasions.

6        Finally, the probative value of these hearsay statements

7    is substantially outweighed by the danger of unfair prejudice

8    to State Farm.

9        To start, the probative valuable of the evidence is

10   significantly reduced by the question surrounding the context

11   of the statements in the deposition testimony I have discussed.

12       On prejudice, the timing of Plaintiff's notice of intent

13   to offer these statements is very problematic.  State Farm

14   first learned about these statements on October 22nd, roughly

15   nine days before trial is set to start.  Plaintiff filed this

16   action nearly 18 months ago, and discovery concluded nearly 4

17   months ago.  State Farm has thus been unable to conduct any

18   discovery to investigate the factual context of the statements,

19   and it would be unfairly prejudicial to admit this newly

20   disclosed damages evidence this late in the proceedings.

21       In sum, Plaintiff has not shown that the hearsay

22   statements contained in the October 22nd email should be

23   admitted under Rule 807, and I conclude that, even if he did,

24   they should not be admitted under Rule 403.

25       Therefore, State Farm's supplemental motion in limine is

1  granted.

2      Now I will move on to Defendant State Farm's motion in

3  limine found at Doc. Number 61, starting with the second one.

4      In the second motion in limine, State Farm argues that the

5  testimony of Amy Lanier, a former State Farm employee, is

6  irrelevant or unfairly prejudicial.  State Farm never clearly

7  states what it seeks through this motion, but it attacks

8  Lanier's testimony as a whole, so I will assume State Farm

9  seeks an order preventing her from providing any testimony.

10     Lanier clearly has no personal knowledge of Plaintiff's

11 insurance claim, so under Rule 602, she will not be able to

12 testify regarding State Farm's handling of this claim.

13     Plaintiff does not dispute this.

14     The motion is thus granted in part.

15     Plaintiff demonstrates, though, that Lanier is able to

16 offer relevant testimony generally regarding Jacqueline

17 Draper's supervision of claims adjusters and her policies and

18 procedures as alleged by Plaintiff.

19     Lanier testified at her deposition that adjusters were

20 required to send Draper photos before they could find hail

21 damage to roofs was covered; that Draper instructed adjusters

22 to keep her name out of the claim file; and that adjusters

23 should use the phrase, quote, "wear and tear," closed quote,

24 instead of, quote, "old hail damage," closed quote; and that

25 Draper was concerned that State Farm was paying for too many

1    roof claims.

2        This relates directly to this case because Draper is the

3    supervisor of the adjuster who inspected Plaintiff's roof.

4        Lanier's testimony is thus more specific than the

5    companywide general business practices testimony that Courts

6    have excluded in the cases cited by State Farm.

7        See *Mann v. UNUM*, an Eastern District of Pennsylvania 2003

8    unpublished case at asterisk 10, reasoning that the plaintiff

9    could not prevent summary judgment from being awarded on a bad

10   faith claim by relying on testimony from an insurance company's

11   former employees about the practices of an office different

12   than the office that handled the plaintiff's claim;

13       *Montoya Lopez*, a District of Arizona case from 2003 that's

14   published at page 1104 finding that evidence of an insurer's

15   conduct in other states had no relation to the plaintiff's

16   claims;

17       And *Burley,* a Southern District of Mississippi case from

18   1990 that's published at page 858 holding that the plaintiff

19   could not rely on other dissimilar claims denied by Insurer

20   because they had no relation to the plaintiff's bad faith

21   claim.

22       Therefore, State Farm has not justified exclusion of

23   Lanier's testimony on the topic of her personal knowledge of

24   Draper's supervision practices.

25       I agree with State Farm that Lanier's testimony poses risk

of unfair prejudice or confusion of the issues, but at this juncture, I am not prepared to say those dangers substantially outweigh the probative value of Lanier's testimony.

I also think the issues pointed out by State Farm regarding Lanier's testimony can be handled through effective cross-examination because some of the challenges go to the weight, and motions in limine should not be used to weigh the sufficiency of the evidence.

I will be prepared, as necessary, once this evidence starts to come in, to limit Lanier's testimony based on contemporaneous objections under Rule 403 where applicable.

I will caution and warn Plaintiff that I envision this witness as a very short one on the stand because her personal knowledge is very limited.  To the extent you plan to go off on specifics of other claims or create minitrials regarding other claims, I will not allow it under Rule 403.  She is only permitted to testify to her personal knowledge and observations of Draper's claim supervision practices.

State Farm's second motion in limine is granted in part and denied in part.

State Farm next moves to exclude any reference to the alleged embarrassment or emotional stress suffered by Plaintiff's son, Gary Bates.  If the jury determines State Farm violated its duty of good faith and fair dealing, it may consider any mental pain and suffering Plaintiff experienced as

1   a direct result of State Farm's violation when determining the

2   amount of damages.  For that, I cite the OUJIs at 22.2 and

3   22.4.

4       Plaintiff is an elderly man, and his son Gary Bates

5   corresponded with State Farm on the claim of loss.

6       Plaintiff testified that he does not remember any

7   conversation with his son about the claim, that he does not

8   know why this lawsuit was filed, and that he has no thoughts on

9   what State Farm did wrong on the claim.

10      Gary Bates has testified that he thought the claim process

11  did not affect Plaintiff a tremendous amount, but Gary has

12  testified that corresponding with State Farm and handling the

13  claim caused him stress and anxiety and that Plaintiff probably

14  lost some sleep worrying over him.

15      Plaintiff concedes that he may not recover for any

16  emotional stress suffered by his son, but Plaintiff argues that

17  he should be -- still be able to present evidence of Gary's

18  emotional stress based on Plaintiff's concern for him.

19      Plaintiff offers no examples of cases where courts have

20  allowed evidence like this.

21      Plaintiff's mental health and suffering is compensable

22  here, so he will be able to testify at the trial that he was

23  worried or had mental anguish knowing his son was distressed by

24  dealing with the claim.  Plaintiff may even describe the cause

25  of his mental pain by explaining his observations of Gary.

1        But I find that testimony from Gary Bates regarding his

2   own mental stress or mental pain is not relevant because it is

3   too attenuated, and it would create confusion surrounding whose

4   mental pain is potentially recoverable here such that, under

5   Rule 403, the probative value of that testimony is

6   substantially outweighed by a danger of confusion -- confusing

7   the issues or misleading the jury.

8        Therefore, State Farm's third motion in limine is granted

9   in part and denied in part.

10       Plaintiff may testify regarding his own mental pain and

11  may testify regarding the cause of that pain, which could

12  include his observations of Gary.

13       Gary may testify regarding his observations of Plaintiff

14  and the effect State Farm's conduct had on Plaintiff, but Gary

15  may not testify about his own mental stress.

16       In its fourth motion in limine, State Farm argues that the

17  Court should exclude any mention of the Oklahoma Unfair Claims

18  Settlement Practices Act, which I will abbreviate "the UCSPA,"

19  which is Title 36 of the Oklahoma statutes, Section 1250.11

20  through 1250.16.

21       The UCSPA does not establish standards of care or

22  standards of conduct for measuring whether an insurer has

23  violated its duty of good faith and fair dealing, and that's in

24  part a quote from *Aduddell Lincoln*, which is a 2015 Oklahoma

25  Court of Civil Appeals case at page 12 -- I'm sorry -- 223.

1    Neither does it create a private remedy.  *Id.*

2    The UCSPA was designed to provide the insurance

3    commissioner with the power to regulate the insurance industry

4    by issuing cease and desist orders or by revoking or suspending

5    an insurance company's license to do business in Oklahoma.  *Id.*

6    In *Aduddell*, the Court explained that the UCSPA may

7    provide guidance to a trial court in determining whether to

8    grant summary judgment but caution that it does not function as

9    an appropriate guide for a jury to determine bad faith.  *Id.* at

10   224.

11   The Court rejected a jury instruction that purported to

12   state the standard of conduct with which insurers are expected

13   to comply and allowed the jury to consider violations of the

14   UCSPA standards with other evidence to determine whether or not

15   the insurer breached its duty of good faith and fair dealing to

16   its insured.  *Id.* at 223 Note 9.

17   I will instruct the jury on the elements of a bad faith

18   claim without reference to the UCSPA, and I do not see how any

19   references to the UCSPA would be relevant to the issues at

20   trial.

21   Further, considering *Aduddell*, it appears that any

22   evidence that State Farm's conduct allegedly violated the UCSPA

23   would be unfairly prejudicial, and for that, I cite Federal

24   Rule of Evidence 403.

25   This ruling does not prevent either party from discussing

1    the standards of bad faith under Oklahoma law applicable to

2    Plaintiff's bad faith claim.

3         State Farm's fourth motion in limine is granted.

4         State Farm's fifth motion in limine asks the Court to

5    exclude evidence or discussion regarding any specific amount or

6    formula for calculating damages on Plaintiff's bad faith claim.

7         Throughout this case, Plaintiff has not included a

8    specific amount or formula for calculating bad faith damages in

9    his initial disclosures and discovery responses.  All the

10   information he ever gave regarding computation of his bad faith

11   damages was that a jury should determine the amount.  Plaintiff

12   never supplemented his disclosures or responses to include a

13   formula or specific amount of damages for this claim.

14        This motion essentially asks me to hold Plaintiff to that

15   position by imposing discovery sanctions under Rule 37.

16        Plaintiff complains that State Farm never filed a motion

17   to compel or otherwise objected to Plaintiff's damages

18   computation until now, but what Plaintiff fails to recognize is

19   that it is his -- it is his mandatory duty to provide to State

20   Farm a computation of each category of damages he seeks and his

21   mandatory duty to supplement his disclosures and discovery.

22   The directives of Rule 26 are mandatory, and for that, I cite

23   the *Cohlmia* case, which is a Northern District of Oklahoma 2008

24   case at page 429.

25        Rule 26(a)(1)(A)(iii) requires the disclosure of a

1   computation of each category of damages claimed by the

2   disclosing party.

3       Rule 26(e)(1)(A) requires disclosing parties to supplement

4   their prior disclosures in a timely manner when the prior

5   response is incomplete or incorrect.

6       Rule 37(c)(1) provides, if a party fails to provide

7   information or identify a witness as required by Rule 26(a) or

8   (e), the party is not allowed to use that information or

9   witness to supply evidence on a motion, at a hearing, or at

10  trial unless the failure was substantially justified or is

11  harmless.  It is the burden of the offending party to show

12  substantial justification or harmlessness, and that comes from

13  the *Cohlmia* case at pages 429 through 430.

14      The determination of whether a Rule 26(a) violation is, in

15  fact, justified or harmless is entrusted to the broad

16  discretion of the district court.  That comes from

17  *Woodworker's*, a 1999 Tenth Circuit case at page 993.

18      The following factors are relevant:  number one, prejudice

19  or surprise to the party against whom the evidence is offered;

20  number two, ability of the party to cure the prejudice; number

21  three, extent to which introducing such testimony would disrupt

22  the trial; and number four, the moving party's bad faith or

23  willfulness.  *Id*.

24      Based on these factors, I find there is no substantial

25  justification for Plaintiff to offer a specific amount or

formula for calculating bad faith damages when he has not done

so to this point.  Introducing such argument or evidence for

the first time at trial would be highly prejudicial to State

Farm, who has had no opportunity to prepare a defense on this

issue; and being so close to trial, I do not see how Plaintiff

could cure this prejudice.

Plaintiff has all along stated that his bad faith damages

are, quote, "an amount to be determined by a jury," closed

quote.  I am simply holding him to that representation.

State Farm's fifth motion in limine is granted.

State Farm's sixth motion in limine argues that Plaintiff

should be prevented from mentioning its advertising mottos or

slogans.  It appears that State Farm's primary concern is that

Plaintiff may cite its slogans in argument or discussion

relating to the legal duties State Farm owed Plaintiff.

Plaintiff explains that he does not intend to use any

slogan in this manner.  Even if Plaintiff did intend to make

such argument, I would exclude it under Rule 402 due to its

propensity and -- and -- Rule 403, rather, due to its

propensity to confuse the issues and confuse the jury on the

applicable law.

State Farm's slogans appear in evidence in this case,

including in an email sent by Gary Bates, but State Farm does

not identify any evidence in particular it seeks to exclude.

This motion is directed only at arguments or references

1    State Farm believes Plaintiff's counsel may make at trial.

2    This motion in limine thus lacks specificity.

3        Based on Plaintiff's representations in his response, the

4    motion is also moot.

5        I will warn Plaintiff, though, that any excessive or

6    improper use of State Farm's slogans or other marketing

7    material at trial that is not contained in the evidence or that

8    improperly focuses on marketing will lend itself to an

9    appropriate contemporaneous objection and ruling.

10       State Farm's seventh (verbatim) motion in limine is denied

11   partly as moot and partly because it lacks specificity.

12       State Farm's seventh motion in limine asks the Court to

13   proactively exclude any "benefit of the doubt" argument.  State

14   Farm argues that there is no Oklahoma law that stands for the

15   proposition that an insurance company must give, quote, "the

16   benefit of the doubt," closed quote, to its insured in order to

17   satisfy its duty of good faith and fair dealing.

18       Plaintiff argues that, while he has no specific plan to

19   use those exact words, State Farm seeks an overbroad ruling by

20   this motion.

21       I agree because context is important here, but I will warn

22   both parties that I will not permit questions or comments by a

23   witness or counsel that misstate Oklahoma law, encroach on my

24   role in instructing the jury on the applicable law, or confuse

25   the jury.

1     State Farm's eighth (verbatim) motion in limine is thus

2   denied without prejudice.  This objection may be reasserted

3   should counsel violate my warnings on this issue.

4     State Farm's eighth motion in limine asks the Court to

5   prevent Plaintiff from introducing new matters in his rebuttal

6   argument.  Generally, it is not proper for a plaintiff to

7   introduce new matter into the rebuttal argument.  Rebuttals are

8   typically limited to responding to defense counsel's closing.

9   I expect Plaintiff's counsel to follow this general rule, and

10   the motion does not present anything for me to resolve at this

11   time.

12     Therefore, State Farm's eighth motion in limine is denied.

13     Okay.  Turning back to the first motion in limine, State

14   Farm first moves the Court to prevent Plaintiff from referring

15   to other litigation involving State Farm, including by calling

16   Michael Lewis to testify or by presenting other State Farm

17   claim files.

18     I'm discussing this motion in limine last because I need

19   to hear from the parties on certain issues.

20     Nyssa and Cassy, if you will note the timing.  I may need

21   to go back and listen to this portion of the recording.

22     So I'm going to start with State Farm since it's State

23   Farm's motion.  Who's going to speak on behalf of State Farm?

24          MS. WILLIAMS:  Paula Williams.

25          THE COURT:  Okay.  And who will speak on behalf of

44

1  the plaintiff?

2           MS. LANDEROS:  Shawna Landeros, Your Honor.

3           THE COURT:  So, Ms. Williams, I will start with you

4  on this, and you may just -- so long as you've got a microphone

5  pulled up, you can be seated.  You don't need to stand for this

6  portion, but walk me through -- what is State Farm's concern

7  with this?

8      I found that -- and it may be because you don't know how

9  Plaintiff intends to use the evidence or what they intend to

10 use.  I'm going to try to work through some of that today, but

11 it -- it may be, at this juncture, not specific enough for me

12 to grant any relief.

13     So tell me what it is that State Farm is concerned about,

14 and then I want you to specifically talk about the Michael

15 Lewis claim and, then, anything that's been produced in

16 evidence by State Farm that you think may come up at trial.

17          MS. WILLIAMS:  So, first, with regard to Michael

18 Lewis, it's my understanding that Plaintiff has withdrawn the

19 exhibits of all of the production from that case.  So I don't

20 anticipate that there would be documents from that underlying

21 case that would be put into evidence next week.

22     Our objection to both Mr. Lewis's claim and the other

23 claim files involves a lack of similarity, and I'm going to

24 address the Lewis claim first.

25     Mr. Lewis's claim did involve the same contractor -- the

45

1    same contractor in our case, who has testified that he does not

2    like team manager Jacqueline Draper -- the same contractor and

3    same Plaintiff's counsel, and so Plaintiff's counsel here was

4    the same in the *Lewis* case.

5        As we have briefed, each claim is evaluated on its own

6    fact and circumstances.  We're talking about different storms,

7    different roofs, different requests.  In -- in Lewis, I

8    believe, there was a second inspection in that case whereas, in

9    the present case, there is an issue of a second inspection not

10   being granted.  So even the granular issues comparing the

11   claims are different between the Lewises' case and ours.

12       And at minimum, if any testimony is offered in by

13   Mr. Lewis, that claim was actually -- the bad faith claim was

14   resolved by Judge Heaton in this court denying the claim --

15   Plaintiff's claim of bad faith in that case and making specific

16   findings about the contractor's actions in that case being

17   combative.

18       So that's our objection to Mr. Lewis.  We don't think that

19   he helps the jury at all.  We think it's confusing for the jury

20   to hear testimony about another lawsuit against State Farm

21   where there was no resolution by a jury.

22       There is a resolution against Mr. Lewis's bad faith claim

23   by a judge, and there was settlement, and so the breach of

24   contract claim never even went to a jury.

25       With regard to the other claim files, Plaintiff -- this is

46

plaintiff's current Exhibit 39.  It includes -- I counted last

night -- 71 of the 72 claim files, if I counted correctly.

There's 1,498 pages of claim files -- 71 claims.  We don't know

which ones Plaintiff purports to use, but it appears that

Plaintiffs -- believes that, broadly, all 71 claims -- each one

is just like the other, and that's not the case here.

Whether there is hail damage to a roof involves the age of

the roof.  It involves the pitch of the roof.  It involves

trees and shrubs that are present.  It involves the house's

proximity to the storm.

We -- we cannot -- to use the Court's term "minitrials,"

we cannot have 71 minitrials and to approach the bench during

trial to address each specific claim that Plaintiff intends to

rely on or ask witnesses about is going to take up time aside

from the fact that it's not relevant.  There's different

houses.  The only thing we're talking about is the same storm.

The other thing I would point out about the other claim

files is only about 13 -- again, if I counted right, only about

13 involve the same claim adjuster, Ms. Jacome, and less than

half involve Team Manager Draper.  They were produced because

these claims involve denials or partly -- part denials that

occurred on Ms. Draper's team, but she does not even appear in

every file.  So to purport to use a 1,498-page exhibit that is

71 claim files to examine witnesses about other claims that do

not relate to Plaintiff's claims, we believe, is prejudicial.

47

1          THE COURT:  So did you say, Ms. Williams, for the

2    over 1,400 pages of documents and the other claims you've got,

3    they're involving the same storm?

4          MS. WILLIAMS:  Yes.  Same date of loss.

5          THE COURT:  Okay.  Same date of loss.

6       But only 13 of those involve the same adjuster?

7          MS. WILLIAMS:  I'm going to say less than 15 in case

8    I missed one last night.

9          THE COURT:  And then you said, even though these are

10   all denials or partial denials occurring on Draper's team, she

11   was involved in less than half of them?

12         MS. WILLIAMS:  Yes.

13      And -- and when I say "involved," I mean having a claim

14   notation in the file by her.

15         THE COURT:  Ms. Williams, anything further?

16      I will come back to you.

17         MS. WILLIAMS:  Not at this time.  Thank you, Your

18   Honor.

19         THE COURT:  Okay.  Ms. Landeros?

20         MS. LANDEROS:  Yes, Your Honor.

21      To address Defendant's argument here, one, with regard to

22   Michael Lewis, we are withdrawing him as a witness, and we do

23   not plan to call him at trial, so that issue is moot.

24      And as Ms. Williams indicated, we have withdrawn the

25   exhibit of the production of the -- in the *Michael Lewis* case.

1    With regard to the other claim files --

2    THE COURT:  Let me pause right there.

3    So do -- does State Farm agree that, at least as to the

4    first motion in limine, to the extent it goes to Michael Lewis,

5    that it is -- is mooted by Plaintiff's agreement that Michael

6    Lewis is being withdrawn as a witness and that they have

7    withdrawn that exhibit?

8    MS. WILLIAMS:  Yes, Your Honor.

9    THE COURT:  Okay.  Then that will be noted partially

10   as moot related to Michael Lewis.

11   Thank you, Ms. Landeros.  Please proceed.

12   MS. LANDEROS:  With regard to the other claim files,

13   Your Honor, as indicated in our response to the motion, these

14   claims are being used largely -- and the discovery responses

15   largely -- for statistical purposes.  Plaintiff's burden here

16   is to establish bad faith; and one of the ways that Plaintiff

17   intends to do that is to show that there has been a pattern,

18   there's been a practice; and this is not any mistake, that

19   there is intent here to -- to deny hail claims as wear and

20   tear.

21   The claims that were produced in discovery by State Farm

22   as noted by defense counsel -- they were all on the same date

23   of loss, the same storm involving our client, Mr. Bates.

24   Also, all of these claims, the way they were produced --

25   they were -- the -- the actual production was related only to

1   Team Draper -- Team Jacqueline Draper.  So whether or not

2   Ms. Draper's name actually appears in the file is moot,

3   especially with regard to the other evidence that Your Honor is

4   aware of in that there was instruction, as per Ms. Lanier's

5   testimony, not to put her name in the file.  So whether or not

6   her -- her name actually appears in the file is -- is a moot

7   point.

8        As cited by Plaintiff in response to the motion, Plaintiff

9   intends to argue that these denials were habitual and so

10  intends to rely on this as habit evidence and also in -- in

11  establishing that the outcomes in these file (verbatim) were

12  predetermined.  They were predetermined outcomes.

13       The claim files show a pattern of denying claims based on

14  wear and tear, and that is what -- what Plaintiff intends to

15  prove with them.

16            THE COURT:  How do you respond to the 403 concerns

17  regarding confusing of the issues for the jury, concern over

18  minitrials?

19            MS. LANDEROS:  Your Honor, we don't plan on

20  litigating the facts of every specific claim.  As we stated

21  earlier, this is -- this is largely about statistics, you know,

22  percentages:  how many claims, how many denials, whether this

23  is a habit, whether this is a pervasive practice of State Farm.

24       We don't plan on, for example, you know, pulling photos or

25  anything in particular regarding these claim files because,

1   frankly, State Farm didn't even produce them.  So it's not like

2   we're going to be comparing photos from claim files to the ones

3   in our case.  This is -- this is about numbers.

4          THE COURT:  So is it, then, that Plaintiff intends to

5   present this as part of a demonstrative?

6       How are you actually getting this -- how do you intend to

7   get this in front of the jury?

8          MS. LANDEROS:  Well, specifically as stated in

9   response to the motion, there is a discovery response.  We

10  attached it as Exhibit 1.

11      Ms. Jacqueline Draper's team handled 2,229 claims for

12  State Farm between the time specified; and during that time,

13  you can -- you can see that the adjusters were -- were denying

14  claims based on wear and tear based on her pattern and practice

15  of, you know, asking for adjusters to send her and text her

16  pictures instead of being able to conduct their own

17  investigation and evaluation of the claims.

18         THE COURT:  Ms. Williams, your response?

19         MS. WILLIAMS:  Yes.  Just -- just a couple of points,

20  Your Honor.

21      First, the production that State Farm made was the result

22  of an agreement during discovery, so the fact that there are

23  not photos present with the claim files is a result of a

24  discovery agreement made during litigation.

25      The interrogatory response about the 2,229 claims handled

1  by Jacqueline Draper's team was much broader than this storm.

2  It spans years.  So to the extent that we're talking about

3  statistics based off of that interrogatory and numerous other

4  storms handled by not this adjuster, who had a limited time

5  frame under Jacqueline Draper's team, but many other -- many

6  other adjusters is just not relevant to Plaintiff's claims and

7  the claims in this -- the claims in this lawsuit.

8      Second, there were 156 total claims on that date of loss.

9  We produced denials or partial denials for 72 of those.

10      Plaintiffs would like to produce this -- use this as

11  statistical evidence of a -- of a habit, but less than half of

12  the claims on that date of loss were -- were denied; and of

13  those 72 claims, not all 72 say "wear, tear, and denial."

14  There are some in the claim files in Plaintiff's Exhibit 39

15  that reference "wear, tear, and denial" -- wear -- "wear, tear,

16  and deterioration," but many do not.

17      And to the extent that Plaintiffs want to lump all of the

18  denials into a statistical category that they claim is wear,

19  tear, and deterioration requires us to go into that claim file

20  individually and see if, in fact, that was a part of the

21  decision; and then, even if it was, 72 claim files out of 156

22  from that date of loss does not constitute the habit that

23  Plaintiffs would want to show the jury, making it confusing --

24  not helpful to the jury and confusing.

25        THE COURT:  Anything further from the parties on this

1    one?

2            MS. LANDEROS:  Your Honor, I would -- I would like to

3    add there is another interrogatory response, which addresses, I

4    mean, sheer percentagewise, about 45 percent of these claims

5    were denied.  The evidence at trial would suggest that this

6    number is especially high.

7        Additionally, with regard to the -- going individually

8    into which -- which claims are wear and tear, that was also

9    addressed in another interrogatory response from State Farm.

10       To the extent that, you know, Defendant wants to argue

11   that, you know, some of these claims need to be evaluated, and

12   they're not all wear and tear, that goes to the weight to be

13   addressed in this argument, and they can address that in

14   cross-examination or with the jury.  It doesn't go to the

15   admissibility of the evidence.  It's not unfairly prejudicial

16   because State Farm will have the opportunity to respond.

17           MR. LEFFEL:  If...

18           THE COURT:  Let me ask you:  Are -- is the plaintiff

19   intending to use it in its direct case in chief and not just if

20   the jury checks the box for punitive damages in a Phase 2?

21           MS. LANDEROS:  Your Honor, yes.  Plaintiff intends to

22   use this in the direct case in chief in Stage I as well as in

23   Stage 2; but in Stage 1 the evidence is probative, one, of a

24   lack of mistake, lack of accident, under 404 and, two, as habit

25   evidence under, I believe, 406.

1          THE COURT:  Anything further from State Farm as the

2   movant?

3          MR. LEFFEL:  Would the Court object to me making a

4   comment?

5          THE COURT:  No.  That's fine.

6          MR. LEFFEL:  So beyond this being a 403 issue of

7   confusion and prejudice, it also goes to the orderly

8   presentation of evidence at the trial.

9       So you want to provide statistics without context, which,

10  in and of itself, can be prejudicial, unless State Farm is then

11  provided the opportunity to provide the context that is lacking

12  from their statistical evidence by showing how each of these

13  files is unique consistent with Oklahoma law that says the

14  inquiry into bad faith is highly specific and must be decided

15  on a case-by-case basis based on the specific facts and

16  circumstances presented in each individual claim.  So you are

17  going to now force me to give you that context in order to

18  fairly defend myself from your out-of-context statistical

19  analysis.

20      Conversely, if I were to present evidence that more than

21  half of the claims from this day were, in fact, paid, I would

22  expect that the plaintiffs would also object, that they lack

23  the context to know what those roofs look like, what facts and

24  circumstances may have been present, how the policies that were

25  involved in those claims may have differed from the policy that

1  was in force on the Bates property.

2      It would create an untenable situation in this courtroom

3  if we were forced to get into the specifics of these hundreds

4  of claim files.

5          THE COURT:  Have the parties discussed whether there

6  is any area for compromise such that there could be some

7  limited reference to the statistics without getting into a

8  minitrial on statistics?  Have you-all had that sort of

9  conversation?

10          MS. LANDEROS:  We have not, Your Honor.

11          MR. LEFFEL:  And I'm not aware of that either, Your

12  Honor.

13          THE COURT:  Okay.  Well, I'm going to direct the

14  parties to confer and determine whether there are -- whether

15  there is a -- a statement or a reference that can be made

16  regarding this issue in Stage 1 with it being permitted to be

17  flushed out more fully in Stage 2 that would avoid concerns

18  that -- that I share and that I know State Farm has -- has

19  voiced over 403 issues.

20      I think that there might be an area where we're sort of --

21  it's not a compromise thing.  I think that -- that there are

22  the numbers here.  This is -- when I look at the case law, you

23  know, if it's insufficient information, Plaintiff doesn't get

24  to inquire into that; but, here, we do have larger numbers, and

25  I think that that gets some weight in the Court's analysis.

1          And so I'm going to order the parties to confer and, by

2     1:30 p.m. on Monday, October 31st, to tell me if they have

3     reached any stipulation regarding the only portion of this

4     first motion in limine that remains.

5          Otherwise, I will take the parties' argument and

6     discussion under advisement, and I will issue a ruling on

7     Tuesday morning at 8:00 a.m. before trial begins.

8          That's all I have on the motions in limine.  A minute

9     sheet reflecting my rulings will be entered in the case record.

10          Does either side have any questions before we move on?

11               MS. LANDEROS:  No, Your Honor.

12               MR. LEFFEL:  One question from the defense, Your

13     Honor, with respect to the motion overruling the motion to

14     exclude Mr. Van Dorn:  As a procedural matter, when we are

15     presenting, assuming that we call him as a witness, does the

16     Court wish for us to reproffer him on the stand as an expert

17     and ask the Court, in the presence of the jury, that he be

18     allowed to proceed here as an expert, or have we satisfied that

19     at this point -- where he can be introduced as the witness, as

20     an expert, and then we get right to the meat of it?

21               THE COURT:  What -- what is the plaintiff's position?

22               MR. MILLER:  We don't need it to be a proffer, Judge.

23               THE COURT:  Okay.  If the parties agree, I'm

24     satisfied, and you don't need to make that proffer.  Of course,

25     I do think the jury doesn't have the benefit of all of this,

1    and so I do think some limited testimony that he provides

2    regarding his expertise and experiences is appropriate to put

3    him in context.

4         MR. LEFFEL:  And I would absolutely expect that we

5    provide that.  I just would make the formal motion that "Court,

6    may we now let him proceed as an expert?" because it seems like

7    that's unnecessary this morning.

8         MR. MILLER:  Actually, that's all I thought he was

9    talking about, Judge.

10        I'm sorry.  I guess I can sit down.

11        I thought he was just saying that -- did he need to

12   formally say, "Judge, will you designate him an expert?"

13        I -- I -- I didn't mean to say that we did not want to

14   hear his qualifications.

15        THE COURT:  Okay.  Okay.  Then I think we're on the

16   same page.

17        You don't need to make an official proffer.  He is

18   accepted as an expert, but it sounds like you'll do -- and I

19   won't -- you know, I had judges before look at me like, you

20   know, get on with it.

21        And I realize the jury is -- you know, they're not here

22   for all of these pretrial submissions and pretrial discussions,

23   and so they're coming at this cold, and I would ask that

24   you-all remember that.  You-all have lived with this case for a

25   substantial amount of time, and what I will tell you from jury

57

1  trials is it may be obvious to you, even people's names,

2  terminology.  It will not be obvious to the eight members on

3  our jury.

4       So keep that in mind as you're presenting and explaining

5  things -- that you've got to approach it with someone who

6  doesn't know anything about this case.  They have not lived

7  with it.

8       Anything else on motions in limine before we adjourn?

9       What I'm going to do for the pretrial conference -- I

10  typically do not keep our court reporters for the pretrial

11  conference.  We'll take a -- a quick restroom recess before we

12  come back for our pretrial conference.

13       Is there anything else we need to do on the record before

14  we adjourn?

15            MS. LANDEROS:  No.  Thank you, Your Honor.

16            MR. LEFFEL:  Nothing further from the defendant, Your

17  Honor.

18       (Discussion off the record between clerk and Court.)

19            THE COURT:  Okay.  One point of clarification, and I

20  appreciate Nyssa pointing this out.  No one raised it, but I'm

21  going to go ahead and make it clear because it is a typo in my

22  script.

23       When I talked about State Farm's sixth motion in limine

24  regarding the mentioning of advertisements, mottos, and

25  slogans, at the conclusion of my ruling, I said that State

1    Farm's seventh motion in limine is denied partly as moot and

2    partly because it lacks specificity.  That should have said the

3    sixth one.

4         Of course, the seventh one is also denied, so I don't

5    think there's too much confusion, but I did want to make clear

6    that on that sixth motion regarding advertising, mottos, and

7    slogans that that one is denied partly as moot and partly

8    because it lacks specificity.

9         Anything further before we go off the record?

10              MS. LANDEROS:  No, Your Honor.

11              MR. LEFFEL:  No, Your Honor.

12              THE COURT:  Okay.  Then we are off the record.

13         (Hearing is concluded.)

14                    REPORTER'S CERTIFICATE

15         I, CASSY KERR, Federal Official Court Reporter in

16   and for the United States District Court for the Western

17   District of Oklahoma, do hereby certify that, pursuant to

18   Title 28, Section 753, United States Code, the foregoing is a

19   true and correct transcript of the stenographically reported

20   proceedings held in the above-entitled matter, and the

21   transcript page format is in conformance with the regulations

22   of the Judicial Conference of the United States.

23         DATED THIS 12th day of January, 2023.

24         /s/Cassy Kerr
           Cassy Kerr, CSR, CCR, RPR, CRC, CRR, NP-OK
25         Oklahoma CSR License No. 1367
           Federal Official Court Reporter