1          IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF OKLAHOMA
2
THOMAS H. BATES,                     )
3                                    )
                    Plaintiff,       )
4                                    )
     vs.                             ) Case No. 21-CV-705-JD
5                                    )
STATE FARM FIRE AND CASUALTY COMPANY, )
6                                    )
                    Defendant.       )
7

8

9

10

11                     TRANSCRIPT OF

12              RULE 50 MOTION AND RULING

13           NOVEMBER 4, 2022, at 3:42 P.M.

14   BEFORE THE HONORABLE JODI W. DISHMAN, JUDGE PRESIDING

15

16

17

18

19

20

21

22

23

24
              Recorded by mechanical stenography
25   Transcript produced by computer-aided transcription

     Cassy Kerr, CSR, CCR, RPR, CRC, CRR, U.S. Court Reporter
       200 Northwest Fourth Street, Oklahoma City, Oklahoma 73102
              405-609-5096  *  StenoLogic@cox.net

1                    A P P E A R A N C E S

2    FOR THE PLAINTIFF:

3    Mr. Robert Bradley Miller
     bmiller@mjjaw.com
4    Ms. Shawna L. Landeros
     slanderos@mjjaw.com
5    Miller, Johnson, Jones, Antonisse & White
     500 Northwest Sixth
6    Suite 300
     Oklahoma City, Oklahoma 73102
7    405-896-4388

8

9    FOR THE DEFENDANT:

10   Mr. Lance Leffel
     lleffel@gable.com
11   Ms. Paula M. Williams
     pwilliams@gablelaw.com
12   Ms. Taylor J. Freeman Peshehonoff
     tpeshehonoff@gablelaw.com
13   GableGotwals
     499 West Sheridan Avenue
14   Suite 200
     Oklahoma City, Oklahoma 73102
15   405-235-5500

16

17

18

19

20

21

22

23

24

25

1        (The following is a trial transcript excerpt of the Rule

2   50 motion and ruling taking place on November 4, 2022:)

3            THE COURT:  At this time, Ms. Williams, do you have a

4   motion?

5            MS. WILLIAMS:  I do.

6        Your Honor, Defendants make their 50 -- Federal of

7   Evidence Rule 50(a)(2) motion for judgment as a matter of law

8   on several points on the claims and defenses of the parties in

9   this lawsuit.

10       The first part of our Rule 50(a)(2) motion, Your Honor,

11  relates to Plaintiff's claim for breach of contract.

12       OUJI 23.1 will be submitted to the jury in this case, and

13  it asks the jury to find that Plaintiff is required to prove by

14  the greater weight of evidence the following, and we take

15  issues with Numbers 2 and Numbers 3.

16       Number 2 is asking the jury to find that State Farm

17  breached the contract by failing to pay for covered losses for

18  hail damage.

19       State Farm believes that the testimony and evidence

20  presented in Plaintiff's case fails to give the jury sufficient

21  evidence to find by the greater weight of evidence that State

22  Farm breached the contract by failing to pay for any covered

23  losses for hail damage, namely, because Plaintiffs have failed

24  to show that any of those losses occurred during the policy

25  period.

4

1          The next point on Plaintiff's breach of contract claim is

2     .3, that Thomas Bates suffered damages as a direct result of

3     the breach.

4          State Farm provides this Court that Plaintiffs have failed

5     to provide the jury any reliable evidence of Plaintiff's

6     damages.  The only evidence that the jurors have relating to

7     the contract damages in this case would be found at JX-16 and

8     the testimony that was associated with J -- JX-16, which we

9     just heard from their contractor, Jonathan Marks.

10          This evidence of financial damages, Mr. Marks testified,

11     is an estimate for the roofing, which includes a large cost for

12     decking, which may or may not be covered.

13          Mr. Marks agreed -- agreed that he did not even include

14     the specific type of product that may be used on the roof when

15     he did his estimate.

16          The estimate clearly does not deduct for the actual cash

17     value, which, it should be undisputed, is all Plaintiff can

18     recover under the policy.

19          The estimate does not take into account Plaintiff's

20     deductible and does not take into account the amounts already

21     paid by State Farm.

22          Even if the jury were to determine that State Farm did

23     breach this contract, it would be forced to guess at any

24     damages suffered by Plaintiff in this action.

25          I'm going to next move to Plaintiff's claim for bad faith.

1    State Farm also moves for judgment, as a matter of law, on

2    Plaintiff's claim for bad faith.

3    OUJI Instruction Number 22.2 will be submitted to the jury

4    in this case if the Court finds that the bad faith claim should

5    go to the jury, and that OUJI instruction is taken directly

6    from Oklahoma law on the -- on a claim of bad faith, and it

7    requires the jury to find by greater weight of the evidence two

8    important points:  that State Farm's failure to pay the claim

9    in full was unreasonable under the circumstances because it had

10   no reasonable basis for the refusal and that State Farm did not

11   deal fairly and in good faith with Plaintiff.

12   We believe Plaintiff's bad faith claim fails for two

13   reasons:

14   First, we believe that the testimony and the evidence,

15   namely, what is in the claim file at Joint Exhibit 1 and the

16   text messages in Joint Exhibit 3, show that there was a

17   legitimate dispute between Mr. Bates and State Farm regarding

18   coverage and the cause of damage.

19   We believe that State Farm has showed that its -- its

20   determination was founded in a reasonable basis.

21   If there is a legitimate dispute concerning coverage or no

22   conclusive precedential legal authority on the issue,

23   withholding payment is not unreasonable or bad faith.  That

24   comes from *Bailey v. Farmers Insurance Company* found at

25   137 P.3d 1260 at 1264.  That's an Oklahoma Court of Civil

1   Appeals case from 2006.

2        Legitimate disagreements can arise concerning the amount

3   of coverage, cause of loss, and breach of policy conditions,

4   and the tort of bad faith does not prevent the insurer from

5   resort -- resisting payment or resorting to a judicial forum to

6   resolve a legitimate dispute.  That comes from *Roesler*,

7   R-O-E-S-L-E-R, *v. TIG Insurance Company*.  That's at 251 Federal

8   Appendix 489 at page 501.  That's a Tenth Circuit decision from

9   2007.

10       We've heard much ado about State Farm forcing Plaintiff to

11   the courthouse, but under the law, Your Honor, an insurer who

12   has a legitimate dispute about a cause of loss can take that

13   claim to the Court.

14       Even if this Court found -- or even if State Farm's

15   decision was incorrect, Oklahoma law does not require the

16   insurer's position in a dispute to be correct to still avoid

17   liability for bad faith.  That's, again, from the *Roesler* case.

18   Pinpoint citation is 506.

19       Your Honor, as -- the Court is well aware that bad faith

20   cases in particular are decided on a highly individualized

21   basis based on facts specific to that case.  That's supported

22   by *City National Bank & Trust Company v. Jackson National Life*

23   *Insurance* at 1990 OK Civ. App. 89, which is 804 P.2d 463.

24       That Court stated (as read), "We therefore hold that,

25   before the issue of an insurer's alleged bad faith may be

submitted to the jury, the trial court must first determine under the facts of the particular case and as a matter of law whether the insurer's conduct may be reasonably perceived as tortious."

At best, State Farm submits that Plaintiff has shown a difference of opinion as to the cause or scope of damage from this date of loss.

This Court heard testimony from Ms. Jacome that she was an adjuster who had been adjusting since 2017.

We heard extensive testimony about her training both at E.A. Renfroe and at State Farm.  In fact, the evidence that Plaintiff has put on is twofold:  both that she was undertrained despite all of that training but also apparently overtrained by a focus on hail focus to help adjusters identify hail damage.

Ms. Jacome testified about how she thoroughly investigated the loss.  That was confirmed by expectations that her team manager would have, that her section manager would have.  It was confirmed by what Ms. Lanier would do when she would arrive at a property:  She considered elevations.  She analyzed collateral.  She walked the roof.  She took notes.  She took photographs.  She felt blemishes.  She wrote up her conclusions, and importantly, she reached out for her team manager for help.

And no matter how hard Plaintiffs try to reframe those

text messages, they blatantly show an adjuster who is reaching out for a team manager for help on a decision that in the text messages she says she had already made and told the contractor.

She considered the contractor's opinion not just when she got back on the roof with him but also when she reviewed his request for second inspection, and her team manager considered his request for second inspection.

And importantly, you just heard testimony from Mr. Marks that there is an element of subjectivity in making these calls.

Finally, on this point, Your Honor, the Draper narrative that Ms. Draper was coming in and deciding calls on these roofs just does not fit with the facts of this case.

We have an adjuster and a contractor who agree she told him she thought it was wear.

Then they get on the roof.  She tells him for a second time she thinks it's wear.  He disagrees.

She reaches out to her team manager, and then she tells him for a third time it's wear.

State Farm submits that this is the evidence the Court has heard that shows that what is happening is a legitimate dispute and that State Farm had a reasonable basis for its denial.

The second reason we would move that State Farm's denial was not in bad faith and that Plaintiff cannot meet that element in their case is that, to recover damages for bad faith, Plaintiff must show intentional conduct by State Farm

1    rising beyond mere negligence.  That's *Meyers v. Lashley*, 44

2    P.3d 5 -- 553, Pinpoint Citation 563.

3        The Court heard evidence of several errors in this file.

4    We heard testimony about inputing the incorrect age on a roof.

5    We heard testimony of a missed mailbox.  We heard testimony of

6    a couple missed pipe jacks, and certainly, that's in the claim

7    file as well, and there's been a joint exhibit where State Farm

8    went back and paid for that.

9        Quote (as read), "Bad faith is not shown where the

10   insurer's personnel made errors in the processing of a claim,

11   even where such errors rise to the level of negligence as

12   evidence of an insurer's internal negligence in handling a

13   claim is not probative of the issue of bad faith.  Bad faith

14   and negligence are not synonymous."  That's *id.*, *Meyers v.*

15   *Lashley,* Pinpoint Citation 563.

16       I'm now going to quote from the *Badillo* case, the

17   2005 Oklahoma Supreme Court decision.  (As read) "The minimum

18   level of culpability necessary for liability against an insurer

19   is to attach more than simple negligence but less than the

20   reckless conduct necessary to sanction a punitive damage award

21   against the insurer."

22       State -- it is -- State Farm's investigation needed only

23   be reasonable, not perfect, and for that, I will cite *Hayes v.*

24   *State Farm Fire and Casualty Company*, 855 Federal --

25   F. Supp. 2d 1291, Pinpoint 1303.  It's a Western District of

1   Oklahoma case from 2012 that cited *Roberts v. State Farm Mutual*

2   *Auto Insurance Company* found at 61 F. Appendix 587 at 592.

3   That's a Tenth Circuit 2003 case.

4       I'm not going to repeat the evidence I've already covered

5   from the testimony in JX-01 and JX-03 that shows the

6   reasonableness of State Farm's investigation and its decision

7   in this case and that any of the errors that were pointed out

8   about the specific claim handling do not rise to the level of

9   bad faith in this case.

10      Our third argument on Plaintiff's bad faith case,

11  Your Honor, relates to Plaintiff's damages.

12      This jury currently has a OUJI instruction that will go

13  back with them if this bad faith claim is submitted to the jury

14  telling the jury that, when considering damages for bad faith,

15  the jury may consider, one, financial loss; two, mental pain

16  and suffering; and three, loss of reputation or embarrassment.

17  That's from OUJI 22.4.

18      Importantly, the notes to OUJI 22.4 are instructive.  They

19  read (as read), "Any element of damages that are not supported

20  by the evidence should be omitted from this instruction."

21      Your Honor, we don't believe Plaintiffs have proved a

22  breach of contract claim, but if that claim goes to the jury,

23  and they find in favor of Plaintiff, and they award contract

24  damages, we agree that, if the bad faith claim is also

25  submitted to the jury, then that may be, one, financial loss.

1          But with respect to Point 2 and Point 3, we only have two

2     pieces of testimony about Plaintiff's mental pain and suffering

3     or any loss of reputation or embarrassment.

4          First is Plaintiff's testimony this morning.  Mr. Miller

5     asked him, "Did it bother you how State Farm handled this

6     claim?" or "Did it" -- I'm paraphrasing.

7          He asked Mr. -- Mr. Bates how it affected him, how it

8     bothered him; and -- and he said, "Yes and no"; and we all kind

9     of chuckled; and he said he was glad his son was handling this

10    claim for him.

11         The other testimony we have is Gary Bates, and as

12    Your Honor is well aware, Mr. Gary Bates could not testify

13    about the cause of anything he saw with Plaintiff.  He was

14    allowed to testify to what he saw; but under 8033 it was

15    impermissible for him to link what he saw to a cause, which

16    we -- means we have limited testimony from Gary Bates about

17    what he saw, we have no causation link, and we have testimony

18    from the Plaintiff that he was glad his son was handling it for

19    him.

20         For those reasons, if the Court determines that the breach

21    of contract claim goes to the jury and the bad faith claim goes

22    to the jury, State Farm would, at minimum, ask this Court to

23    strike two, mental pain and suffering, and three, loss of

24    reputation or embarrassment, from OUJI 22.4, if that's

25    submitted to the jury.

1    Our final argument, Your Honor, relates to punitive

2    damages, and as this Court is well aware, if you don't have a

3    breach of contract, you don't have bad faith.  If you don't

4    have bad faith, you don't have punitive damages.  So I make

5    this argument only in the -- only in the event that this Court

6    were to deny the other JMOL motions that State Farm has made

7    today.

8    Oklahoma's punitive damages statute provides that a jury

9    may not award punitive damages unless it finds by clear and

10   convincing evidence that an insurer has recklessly disregarded

11   its duty to deal fairly and act in good faith with its insured.

12   This is 23, Oklahoma Statute, Section 9.1(b)(2).

13   The *Badillo* case, which I cited previously, states that

14   the availability of punitive damages in a case by an insured

15   against his or her insurer for bad faith is not automatic but

16   is, rather, governed by the standard applicable in other tort

17   cases.

18   The *Frank v. Mayberry* case, which is a 1999 Oklahoma

19   Supreme Court case found at 985 P.2d 773 at 777, says that the

20   issue of whether the record contains enough evidence to justify

21   a punitive damages award is a question of law.

22   Acting with reckless disregard requires a finding that

23   State Farm was aware or did not care that there was a

24   substantial and unnecessary risk its conduct would cause

25   serious harm to Plaintiff.  Acting intentionally and with

13

1    malice requires a finding that State Farm acted with hatred,

2    spite, or ill will intentionally without just cause or excuse.

3            THE COURT:  What does that language mean?

4            MS. WILLIAMS:  The hatred, spite --

5            THE COURT:  Yes.

6            MS. WILLIAMS:  -- ill will, and --

7            THE COURT:  What does the -- what does the malice

8    language mean?  Do you have any cases interpreting that

9    language in this context?

10           MS. WILLIAMS:  Well, Your Honor, I don't have cases

11   in front of me.  I'm -- I'm quoting from the OUJI that -- that

12   we have pulled to go back with the jury.

13           THE COURT:  And I -- I have that.

14      I'm just trying to understand how that standard actually

15   is applied because it seems like a very high bar.

16           MS. WILLIAMS:  I agree, Your Honor.

17      And -- and I will tell you I don't have cases in front of

18   me right now that say what "with malice" means, but I can tell

19   you I know what "intent" means, and this requires intent and

20   with malice, and I don't think we even satisfy the intent here,

21   Your Honor.

22      We heard from Tresa Jacome.  She did not think that there

23   was hail damage to this roof.  Even if Plaintiff is successful

24   on the other claims, Ms. Jacome was not intending, with hatred,

25   spite, or ill will, to deny Plaintiff's roof claim.

1       Your Honor, their theory of the case does not match the

2   facts that have been borne out by the testimony of the adjuster

3   who was on this roof.

4       Jacome said it was wear.  She told the contractor; she

5   inspected with the contractor; she felt blemishes; she texted

6   her supervisor; she documented the wear; she documented the

7   lack of collateral damage and the lack of spatter; she reviewed

8   photos that were submitted for a second inspection; and she

9   emailed a -- a denial letter denying the second inspection,

10  explaining the wear and tear to the contractor and the agent at

11  the very least.

12      I think we agree Mr. Gary Bates didn't refute that.

13      Your Honor, State Farm's position is that there has been

14  no evidence presented of hatred, spite, or ill will, nor is

15  there evidence that State Farm acted intentionally, without

16  just cause, or excuse.

17          THE COURT:  Thank you, Ms. Williams.  I believe I

18  have your argument.

19      Ms. Landeros?

20          MS. LANDEROS:  Thank you, Your Honor.

21      I won't take up too much of this Court's time.  The -- the

22  standard on a judgment as a matter of the law is the same

23  standard as on a motion for summary judgment under Rule 56.

24      Here, Plaintiff has met its burden and presented legally

25  sufficient evidentiary basis for the jury to find for Plaintiff

1    on all counts.

2         First, on the breach of contract, as the Court just heard

3    from Mr. Marks, Mr. Marks has presented testimony to this Court

4    that he found obvious hail damage.

5         Hail damage is a covered loss under the policy.

6         State Farm has breached the contract.

7         With regard to damages as a result of the breach, while

8    Defendant claims that there is no reliable evidence of

9    Plaintiff's damages, Plaintiff has submitted into evidence as a

10   joint exhibit the estimate of Mr. Marks, and it is for the jury

11   to consider whether that estimate is reasonable and what

12   damages specifically to award.

13        The damages is not for the Court to decide whether --

14   whether there -- whether -- what amount of damage it actually

15   is.  There is evident of some damages, the amount of which is

16   to be determined by the jury.  The calculation of ACV in

17   particular -- there's already evidence in this case which would

18   allow the jury to do so.  For example, the jury knows the age

19   of the roof, could easily calculate the -- the age of the

20   shingle, which is a 25-year shingle, versus the age of the roof

21   just as -- as exhibited on the estimate.

22        With regard to bad faith...

23             THE COURT:  Ms. Landeros, if you will not spend time

24   on the standard -- I know the standard.  I'm going to read them

25   into the record -- and just focus me on what does -- what does

1   Plaintiff point to in terms of the evidence that gets this

2   issue to the jury?

3              MS. LANDEROS:  Absolutely.

4        The -- the evidence is that Ms. Jacome lacks any training

5   regarding hail, specifically, with regard to what hail feels

6   like.

7        Though Ms. Arnold testified that she expects her claims

8   specialists to have experience knowing what it feels like to

9   feel a hail bruise, Ms. Jacome testified she had zero

10  experience feeling hail.  All her training was done online by

11  video or by Zoom.  The only inspections she had been on were --

12  whether with somebody else on her team or from trainers, were

13  on roofs that had no hail damage, according to State Farm.

14  Thus, she never had the opportunity to feel hail.

15       Ms. Draper herself, her own supervisor, didn't know if

16  Jacome had experience feeling hail.

17       And this very well could have been the first hail claim

18  she handled on her own, yet despite receiving an email from the

19  contractor showing that damages were missed, State Farm

20  specifically refused to send an experienced adjuster out to go

21  and feel that damage.

22       The testimony has been in this case that you must feel the

23  damage, that feeling the damage is important, and that's the

24  only way to determine if that is an actual hail bruise.  You

25  cannot do that from a photograph as Ms. Draper did.

1    With regard to the photographs themselves, Ms. Jacome

2    testified that she took photographs only to support her

3    decision.  Those photographs, thus, would support, according to

4    her, wear and tear.

5    Ms. Draper, however, testified that her expectation would

6    be a holistic approach to photographs, in other words, show the

7    whole picture, which is exactly what State Farm should have

8    done in this case and considered the evidence presented by its

9    insured, which it did not.

10    Draper, in her text messages, never asked Ms. Jacome if

11    she had felt the shingle to determine if there was any

12    bruising.

13    Neither the text messages nor any file notes reflecting

14    the communications between Jacome and Draper are in the claim

15    file.

16    Mr. Marks, of course, testified today that he showed

17    Jacome penetration of the mat.

18    The evidence in this case is that penetration of the mat

19    is hail damage, and Ms. Jacome herself admitted that might be

20    hail.

21    His notes further show that Ms. Jacome stated her boss,

22    Jacqueline, will not agree, indicating that this was a

23    predetermined outcome.

24    We have had a lot of testimony, as defense counsel has

25    pointed out, about mistakes made in this case not just about

1 pipe jacks and mailbox and depreciation but also not

2 documenting the file, not using denial language when they were

3 denying a portion of the claim -- the largest portion of the

4 claim on the date of the inspection, 2-23 of 2021.

5     Ms. Arnold did testify that it would be her expectation

6 that, if a team manager is approving part of a claim and

7 denying another part of the claim, that she would expect

8 Ms. Draper to put a file note in there, but there is no such

9 file note.

10     THE COURT:  Isn't, though, her letter that she sent

11 where she attached the estimate -- I mean, doesn't that give an

12 indication to the insured as to what is paid and what is not

13 paid on this claim right at the outset?

14     MS. LANDEROS:  Well, it does attach an estimate, but

15 it never says the word "denial."  It never indicates to the

16 insured, "We are denying your claim," and that has been the

17 testimony in this case from the State Farm witnesses

18 themselves.

19     As a matter of fact, Ms. Arnold testified that that

20 2-23-2021 letter was not a denial letter, and the only denial

21 letter in the file is the March 15th letter denying a second

22 inspection.

23     Furthermore, there was runaround all over this file.

24     Gary Bates requested numerous times for someone to contact

25 him and explain what he needed to do for a second inspection.

1    He received a call from -- after contacting the agent's

2    office, he received a call from Anthony Mendoza.

3    Anthony Mendoza himself could not do anything for the

4    Bates -- testified to that himself -- but referred a task to

5    Ms. Jacome to contact Gary Bates to advise him what his options

6    were, what he needed to do to get a second inspection.

7    That never happened.  There's no file note that Ms. Jacome

8    told Mr. Bates that.  The only file note indicates she called

9    him to tell him they were denying the claim, and they were just

10   standing on their denial.

11        THE COURT:  Can you turn, Ms. Landeros, to the -- the

12   bad faith damages part of Ms. Williams's argument?

13        MS. LANDEROS:  Absolutely.

14   There has been testimony in this case from both

15   Thomas Bates and Gary Bates that Mr. Bates -- Thomas Bates has

16   suffered damages.

17   One, Thomas Bates came up the stand -- came on the stand

18   today and testified to this Court that, yes, there -- there

19   were some damages.  He did experience some damages as a result

20   of State Farm's conduct, and thus, it's not a question of law

21   for this Court to determine the amount of such damages.  That

22   is for the jury.

23   Gary also -- Gary Bates testified that his dad was worried

24   about him.

25   Also, Gary Bates testified as to the physical symptoms,

1   which were caused -- or which happened while this claim was

2   being discussed with Thomas Bates, including him turning red in

3   the face, becoming fidgety, those types of symptoms.

4           THE COURT:  That helps.  Thank you.

5       What about the -- the deal fairly and in good faith,

6   Element 3 of the OUJI?

7           MS. LANDEROS:  Ms. Arnold testified herself

8   initially -- and was impeached on it -- that she didn't even

9   think fairness was part of the equation.

10      There's no indication here that State Farm acted fairly

11  and in good faith with Plaintiff.  In fact, it -- it seemed

12  to -- to the Bates, and the evidence has borne out, that this

13  outcome was a predetermined outcome, and State Farm never had

14  any intention of -- of paying this claim, and they would not

15  allow a second inspection in order to confirm whether what

16  Jonathan Marks and -- and Mr. Bates were saying was hail.

17          THE COURT:  If you'll turn to the punitive damages

18  issues and specifically focus on the intentional with malice.

19          MS. LANDEROS:  Absolutely.

20      Your Honor, you know, there's been a lot of testimony in

21  this case about -- about mistakes.  At some point, the -- the

22  failure to correct a mistake is intentional, and if you

23  disregard evidence showing that you have made mistakes over and

24  over and over, and you refuse to take any action to fix them

25  except 18 months after litigation is filed, that is evidence

1    that this conduct was intentional and with malice.

2        Malice can be the doing of a wrongful act intentionally

3    without just cause or excuse.

4        We heard testimony today from Ms. Lanier, who stated that

5    Ms. Draper implemented policies to deny legitimate hail claims

6    because State Farm was paying too many roof claims.

7        If that is not intentional and without any just cause or

8    excuse, I don't know what is.

9        And for those reasons, Plaintiff requests Defense's --

10   Defendant's motion for judgment as a matter of law be denied.

11           THE COURT:  Ms. Williams, very briefly.

12           MS. WILLIAMS:  Your Honor, Ms. Landeros and I agree

13   on the definition of malice, and I'll point you to a

14   Tenth Circuit citation that's contained in a OUJI instruction

15   for the definition of malice, and it's *Malik v.*

16   *Apex International Alloys, Inc.*, 762 F.2d 77 at page 80.  It's

17   a Tenth Circuit case, year 1985.

18       Your Honor, Ms. Landeros first talked about Ms. Jacome and

19   whether or not she could feel a hail bruise.  You have heard

20   over and over again that the investigation tells a story, and

21   feeling the blemishes was not the only part of the story, and

22   Ms. Jacome testified that she felt them.

23       I'm not going to re-cover all the other parts of the

24   investigation that supported that hail had not recently fallen

25   in this area, but I will address Ms. Landeros's comment that

22

 1 | Jacome testified that she only took photos to support her

 2 | decision.

 3 | Not only do I think that that misstates the witness's

 4 | testimony, but it is not borne out by the plain photographs

 5 | that are contained in the -- in the claim file, which is

 6 | Joint Exhibit 1.

 7 | Ms. Jacome included photo after photo after photo of

 8 | blemishes and an HVAC cap, a rain cap, that was beat to a pulp.

 9 | She supported what she found that supported that hail fell, and

10 | she included the parts of the story that supported that hail

11 | had not recently fallen.

12 | What all of that does is support that this is a legitimate

13 | dispute between an adjuster -- a State Farm's adjuster and what

14 | she saw when she took photographs, and she read the story, and

15 | what a contractor saw or the Bates family saw when they read

16 | the story.

17 | Joint Exhibit 1 supports State Farm's multiple

18 | conversations with Plaintiff or his agents.

19 | In fact, Plaintiff's contractor had already submitted

20 | photos to get a second inspection.  Plaintiff's agent, who is

21 | authorized on the roof to deal with State Farm, already knew --

22 | "I know how to get a second inspection, and I'm going to send

23 | in the photos."

24 | And not only that, he had received the denial of the

25 | second inspection.

1    And by the way, if that initial estimate that was provided

2    to the Bates family did not indicate a denial, then why in the

3    world were they seeking a second inspection?

4        They knew the roof was denied.  Just because State Farm

5    didn't use a magic word does not mean that that is indicative

6    of bad faith.

7        Mr. Marks provided no testimony about when this hail

8    occurred.  They have not shown that this hail occurred during a

9    policy period -- during the policy period.

10       And Mr. Bates testified -- did not testify that he

11   experienced mental distress or embarrassment or the loss of

12   reputation.

13       And Mr. Gary Bates's testimony cannot support causation

14   for the jury.  It can't.  It's not a reason that his testimony

15   is admissible under 8033.

16       There is no evidence -- not just not enough evidence but

17   no evidence that this was a predetermined outcome.  If it was a

18   predetermined outcome, then why did the claims specialist get

19   back on the roof with the adjuster and -- and -- and do it with

20   him?  Why would she do that?

21       It -- the Draper narrative is not borne out by the facts

22   of this case.

23       The last thing that I'll say, Your Honor, is their only

24   piece of evidence that they just cited to you to support malice

25   is the testimony of Ms. Amy Lanier.  The --

24

1              THE COURT:  No.

2              MS. WILLIAMS:  Go ahead.

3              THE COURT:  They also talked about failure to correct

4    mistakes becomes intentional at some point and that part of the

5    definition includes the doing of a wrongful act intentionally

6    without just cause or excuse.

7        I follow you on Lanier.

8              MS. WILLIAMS:  Okay.

9              THE COURT:  She -- she -- you know, she's not in

10   place at the time that Jacome is investigating and making her

11   claims decision, so she couldn't --

12             MS. WILLIAMS:  Okay.

13             THE COURT:  -- and she didn't speak to what policies

14   were in place by Draper at the time.

15       But I am troubled because I can't find -- I -- I've got

16   law clerks on my team.  They help me with these things.  I

17   can't find any case law bearing out what these statutory words

18   mean.

19       And when I look just at the plain language, which I think

20   I'm required to do, Section 9.1(c)2, the "or else the doing of

21   a wrongful act intentionally without just cause or excuse," why

22   doesn't what Ms. Landeros said work there, that at a certain

23   point, when you have mistake after mistake after mistake, and

24   State Farm is aware of those mistakes, how does that not become

25   intentional conduct without just cause or excuse?

1      MS. WILLIAMS:  Sure.  I appreciate that -- I

2  appreciate you narrowing the issues.  I'm happy to address

3  that, Your Honor.

4      THE COURT:  And -- and let me say I -- you know, to

5  me, malice should be something more than that because it's

6  intentionally and with malice; but I'm looking at the way the

7  statute defines it, and it seems to wrap it all back up in one.

8  That's weird to me.  But I can't, so far -- and we've spent

9  some time on it.  We can't find how those are not the same

10  standards.

11      MS. WILLIAMS:  Well, Your Honor, what I have provided

12  the Court -- and I've -- I've put that case citation down, but

13  since it's already in the record, I'm just going to reference

14  back to it -- is case citations about bad faith and about

15  negligence and errors in a claim file not being sufficient for

16  bad faith.

17      THE COURT:  And -- and I agree with you.  Mere

18  negligence is not enough for bad faith, and a mistake is not

19  enough for bad faith, but the case law gets gray when you have

20  mistake after mistake after mistake and no conduct on it.

21      MS. WILLIAMS:  And -- and, Your Honor, for that, I

22  would submit that during the depositions, during this lawsuit,

23  is when the -- the mailbox was realized, was when the age of

24  the roof came into play; and so, if we're talking about when

25  State Farm had knowledge, no one had brought up the mailbox or

1   the age of the roof during the claim file.  Okay?

2        And -- and under a bad -- when you're looking at bad

3   faith, you're looking at what was happening when the claims

4   decision was made, and that was raised in litigation.  After it

5   was raised in depositions, then State Farm did make a

6   supplemental payment.

7        As -- as Your Honor knows, litigation is not always as

8   fast as claims handling.  So those depositions occurred earlier

9   in 2022, and a payment was made in 2022.

10            THE COURT:  Ms. Williams, though, that -- we have

11  the -- the email that's been repeatedly shown, JX-1.257, from

12  Mr. Marks that ends up in the claims file and that goes to

13  State Farm's agent, Shari, noting what was paid for when, in

14  fact, you know, it's -- he notes that five are damaged -- I

15  know he got the numbers wrong, but he basically notes that more

16  than the number paid for were damaged.

17       And he also notes the garage overhead door, but that

18  actually was not --

19            MS. WILLIAMS:  Yes.

20            THE COURT:  -- paid; right?

21            MS. WILLIAMS:  The overhead door was paid.

22            THE COURT:  Was it paid at the time?

23            MS. WILLIAMS:  Yes.

24            THE COURT:  Okay.

25            MS. WILLIAMS:  Yes.  The only things that were not

27

1  paid were two pipe jacks, a mailbox, and the roof -- the

2  incorrect age on the roof was in the estimate.

3      The only thing raised by that email are the pipe jacks,

4  okay, and it's in three words in a parenthetical.

5      And so you have a claims specialist who reviews photos,

6  who -- who admittedly, Your Honor, does not catch three words

7  in that parenthetical and correct that.

8      I agree.  That is one mistake.  The age and the mailbox

9  were not brought to State Farm's attention.

10      So to correct the mailbox mistake, that claims specialist,

11  who adjusts many claims, would have to go, "Hey, you know what

12  I don't see in this list?

13      "A mailbox.

14      "Let me go back and look at my original inspection notes

15  and -- and redo everything."

16      And, Your Honor, maybe -- maybe that's what she should

17  have done, but that's -- that is not intent or malice.  They

18  have not shown that she knew the mailbox was missed.

19      She was on the stand, and she said she found out about it

20  during litigation -- the age of the roof during litigation --

21  State Farm during litigation, and we made a supplemental

22  payment.

23          THE COURT:  Okay.  I think -- Ms. Williams, I think I

24  have your argument.  I need, maybe, three minutes to look at my

25  notes, and then I'll be ready to give you-all a ruling.

1    (Discussion off the record.)

2         THE COURT:  We are back on the record, and I'm going

3    to read my ruling to the Rule 50 motion presented by the

4    defendant.

5    I rely heavily on the standards in my order under

6    Rule 50(a).  I may enter judgment as a matter of law in a jury

7    trial if, after a party has presented its evidence, I find that

8    a reasonable jury would not have a legally sufficient

9    evidentiary basis to find for the party on that issue.  That's

10   *Bay v. Anadarko*, a Tenth Circuit 2018 case at 1255.

11   The motion must specify the judgment sought and the law

12   and facts that entitle the movant to the judgment.  That's

13   Rule 50(a)(2).

14   I may enter judgment as a matter of law only if the

15   evidence points but one way and no reasonable inferences

16   support the nonmoving party's position, and that is the

17   *Campus Village Apartments* case, Tenth Circuit, 2016, case at

18   page 1247.

19   Therefore, I draw all inferences in favor of the nonmoving

20   party, and I do not judge witness credibility, and for both of

21   those propositions, I cite the *Henry* case and the *Higdon* case,

22   both Tenth Circuit cases.  Henry's at 1238.  Higdon is at 1142.

23   Under Oklahoma law, an insurer has a legal duty to deal

24   fairly and act in good faith with its insured.  The minimum

25   level of culpability necessary for liability against an insurer

to attach is more than simple negligence but less than the
reckless conduct necessary to sanction a punitive damage award
against an insurer, and that's the *Badillo* case at 1094, which
is a 2005 Oklahoma Supreme Court case.

The essence of a bad faith claim is the insurer's
unreasonable bad faith conduct; and if there is conflicting
evidence from which different inferences may be drawn regarding
the reasonableness of the insurer's conduct, then what is
reasonable is always a question to be determined by the trier
of fact by a consideration of the circumstances in each case,
and that's *Badillo* at 1093.

An insurer does not breach the duty of good faith by
litigating a dispute with its insured if there is a legitimate
dispute as to coverage or the amounts of the claim and the
insurer's position is reasonable and legitimate.  That's the
*Vining* case, a 1998 Tenth Circuit case, at 1213.

And an insurer does not act in bad faith if it had a good
faith belief at the time its performance was requested that it
had justifiable reasons for withholding payment under the
policy, and that's *Buzzard* at page 1109.

However, even a legitimate dispute as to coverage will not
act as an impenetrable shield against a valid claim of bad
faith where the insured presents sufficient evidence reasonably
tending to show bad faith or unreasonable conduct.  Insurers
have a duty to conduct timely and proper investigations.  That

1    comes from the *Shotts* case, a 2019 Tenth Circuit case, at 1316.

2        Thus, even if there is a legitimate coverage dispute

3    between the parties, an insurer's failure to conduct a

4    reasonable investigation may give rise to a bad faith claim,

5    and that's *Shotts* at 1316 through -17.

6        When a bad faith claim is premised on inadequate

7    investigation, the claimant must make a showing that material

8    facts were overlooked or that a more thorough investigation

9    would have produced relevant information that would have

10   delegitimized the insurer's dispute of the claim.  Evidence of

11   inadequate investigation must suggest a sham defense or an

12   intentional disregard of incontrovertible facts in order to be

13   put to the jury, and that's *Shotts* at 317.

14       A directed verdict should be granted only if there is an

15   entire absence of proof of the issue of unreasonable conduct by

16   the insurer, and that's the *Hale* case, a 2006 Oklahoma civil

17   appeals case, at 573.

18       A Plaintiff may defeat a motion for judgment as a matter

19   of law by presenting enough evidence so that an insurer's

20   conduct may be reasonably perceived as tortious.  That's *Vining*

21   at 1213.

22       Oklahoma Uniform Jury Instruction 22.2 sets forth the

23   essential elements:

24       Plaintiff must show, number one, State Farm was required

25   under the insurance policy to pay Plaintiff's claim;

1    Number two, State Farm's refusal to pay the claim in full

2  was unreasonable under the circumstances because, number one,

3  it did not perform a proper investigation; number two, it did

4  not evaluate the results of the investigation properly; or

5  number three, it had no reasonable basis for the refusal to pay

6  the claim.

7    Number three, State Farm did not deal fairly and in good

8  faith with Plaintiff;

9    And number four, the violation by State Farm of its duty

10  of good faith and fair dealing was the direct cause of the

11  injury sustained by Thomas Bates.

12    Drawing all inferences in Plaintiff's failure and without

13  weighing any witness's credibility, I find that Plaintiff has

14  presented sufficient evidence upon which a reasonable jury

15  could have a legally sufficient basis for finding in his favor

16  on the bad faith claim.

17    Therefore, I am going to deny State Farm's motion for

18  judgment as a matter of law on this issue.

19    I've given careful thought and analysis to these issues,

20  as well as the parties' presentations and counsels' arguments,

21  and I've tried to capture some of what leads me to this

22  decision.  I don't intend for this list to be exhaustive nor

23  individualized.  It's cumulative.  Trial certainly moves

24  quickly for all of us, and I've tried to account for what I've

25  heard.

1    There is evidence from which the jury can find this is

2  hail damage and a covered loss.

3    We just heard from Mr. Marks.  Additionally, there is

4  evidence the roof was replaced in 2013 with shingles that he

5  classified as the best on the market and durable and yet, in

6  2021, presented with extensive granule loss and wear.  There's

7  competing testimony regarding whether this is hail damage,

8  which is a covered loss, or wear and tear, which is not a

9  covered loss.

10    There's also evidence from which the jury can find that

11  State Farm's refusal to pay the claim in full was unreasonable

12  under the circumstances.  A nonexhaustive list of some of this

13  evidence, which is taken as a whole with the record as a whole,

14  is as follows:

15    While it has been characterized as human error or mistakes

16  and while I am cognizant that one mistake or mere negligence

17  does not equal bad faith, drawing all inferences in favor of

18  the Plaintiff, I find sufficient evidence there was evidence of

19  multiple mistakes, including miscalculating depreciation; the

20  age of the roof; the age of soft metals; not including payment

21  for certain covered items before the claim was partially

22  denied, some of which State Farm was on notice of at the time

23  as errors and from which the jury could find that State Farm

24  did not evaluate the results of the investigation properly and

25  had no reasonable basis to review -- to refuse to pay the

1    claim.

2         There also is sufficient evidence that State Farm's

3    refusal to pay the claim in full was unreasonable under the

4    circumstances for an improper investigation or not evaluating

5    the results of the investigation properly because of evidence

6    of Ms. Jacome's inexperience with hail claims, which led to

7    missed pipe jacks; mailbox error on age of soft metals; and her

8    failure to pay on items she missed, though she acknowledges in

9    her testimony she saw the email from Marks and the photos -- or

10   at least the photos, and admitted that the insured got less

11   money than he should have received on his claim.

12        There's also competing evidence on whether Jacome had to

13   seek Draper's permission to make her final decision, not her

14   initial determination, on the roof claim and competing evidence

15   on what was said on the roof between Jacome and Mark (verbatim)

16   at the inspection, going to Plaintiff's theory of predetermined

17   outcome; and the Court cannot reach credibility determinations

18   in resolving this motion.

19        There's evidence from which the jury can find State Farm

20   did not deal fairly and in good faith with Plaintiff in -- for

21   example, in that there was testimony and evidence concerning

22   the email from Marks that went to State Farm's agents and that

23   the adjuster acknowledges she reviewed the photos attached to

24   the email and that was in the claim file that pointed out

25   underpayment and underevaluation of Plaintiff's claim, and yet,

1    State Farm did not act on it at the time it was evaluating the

2    claim.

3        There is evidence of direct injury to Thomas Bates in the

4    form of testimony by his son, Gary Bates, with his personal

5    observation that Plaintiff, Thomas Bates, has been extremely

6    frustrated, impacted a great deal, and that he has been worried

7    and upset.

8        There is also evidence that no repairs have been made to

9    the property since July 2020.

10        At this time, I decline to strike the elements of damages

11    in the OUJI proposed instruction that were requested subject to

12    further consideration by the Court at our jury instruction

13    conference upon my further review.

14        As to punitive damages, an insurer's breach of the duty of

15    good faith and fair dealing does not necessarily mean it is

16    liable for punitive damages.

17        A jury may award punitive damages if it finds by clear and

18    convincing evidence that an insurer has recklessly disregarded

19    its duty to deal fairly and act in good faith with its -- with

20    its insured or intentionally and with malice breached its duty

21    to deal fairly and act in good faith with its insured.  That's

22    Title 23 of the Oklahoma Statute, Section 9.1.

23        Even where there is evidence to support recovery of actual

24    damages, submission of the issue of punitive damages to a jury

25    may be improper.  That's *Badillo* at 1106.

1     There must be evidence, at a minimum, of reckless

2  disregard toward another's rights from which malice and evil

3  intent may be inferred.

4     The Court acts as a gatekeeper to determine whether there

5  is sufficient evidence upon which a reasonable jury could find

6  reckless disregard or from which malice and evil intent may be

7  inferred.

8     Oklahoma Uniform Jury Instruction 22.5 defines both levels

9  of culpability.  "Reckless disregard" means a defendant

10  recklessly disregards its duty to deal fairly and act in good

11  faith with its insured if it was either aware or did not care

12  that there was a substantial and unnecessary risk that its

13  conduct would cause serious injury to the Plaintiff.

14     In order for the defendant to have recklessly disregarded

15  its duty to deal fairly and act in good faith with its insured,

16  its conduct must have been unreasonable under the

17  circumstances, and also, there must have been a high

18  probability that the conduct would cause serious harm to the

19  plaintiff.

20     Malice -- intentionally with malice.  "Malice" is defined

21  as involving either hatred, spite, or ill will or else the

22  doing of a wrongful act intentionally without just cause or

23  excuse.

24     The "or" language indicates in the malice definition that

25  those elements are disjunctive.

1    Under Oklahoma law, the trial court has a duty to submit a

2    punitive damages questions to the jury unless there is a

3    complete lack of evidence to support an inference of the

4    conduct required by Section 9, and that's the *Estrada v. Port*

5    *City Properties* case, a 2011 Oklahoma Supreme Court case at

6    page 503.

7    I must rely on the Rule 50 standards here and the

8    authority as just stated, and drawing all inferences in

9    Plaintiff's failure and without weighing any witness's

10    credibility, I find that Plaintiff has presented sufficient

11    evidence upon which a reasonable jury would have a legally

12    sufficient basis for finding that State Farm has recklessly

13    disregarded its duty to deal fairly and act in good faith with

14    Plaintiff.

15    I also find, based on my understanding of the plain

16    language of the malice definition and for the reasons argued

17    here today, sufficient evidence upon which a reasonable jury

18    would have a legally sufficient basis for finding State Farm

19    intentionally and with malice breached its duty to deal fairly

20    and act in good faith with Plaintiff.

21    Therefore, I'm denying State Farm's motion on those

22    issues.

23    Finally, I think my analysis makes clear, particularly

24    given, I've noted, the dispute as to hail damage, which is a

25    covered loss, versus wear and tear, which is not a covered

1    loss, that I'm denying the motion on breach of contract.  The

2    standard is met for that issue to also go to the jury.

3         Any questions before we bring the jury up?

4              MS. WILLIAMS:  No, Your Honor.

5              MR. LEFFEL:  No, Your Honor.

6         (End of excerpt.)

7                      REPORTER'S CERTIFICATE

8         I, CASSY KERR, Federal Official Court Reporter in

9    and for the United States District Court for the Western

10   District of Oklahoma, do hereby certify that, pursuant to

11   Title 28, Section 753, United States Code, the foregoing is a

12   true and correct transcript of the stenographically reported

13   proceedings held in the above-entitled matter, and the

14   transcript page format is in conformance with the regulations

15   of the Judicial Conference of the United States.

16        DATED THIS 19th day of August, 2023.

17        /s/Cassy Kerr
          Cassy Kerr, CSR, CCR, RPR, CRR, CRC, NP-OK
18        Oklahoma CSR License No. 1367
          Federal Official Court Reporter

19

20

21

22

23

24

25